# EXHIBIT 5

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- X

SHORELINE AVIATION, INC.,                           Case No.: 2:20-cv-02161-JMA-SIL

                        Plaintiff,

       -against-

CYNTHIA L. HERBST, SOUND AIRCRAFT FLIGHT
ENTERPRISES, INC., and RYAN A. PILLA,

                        Defendants.

---------------------------------------------------------------- X

**PLAINTIFF'S AMENDED OBJECTIONS AND RESPONSES TO FIRST SET OF
INTERROGATORIES TO PLAINTIFF BY DEFENDANTS CYNTHIA L.
HERBST, SOUND AIRCRAFT FLIGHT ENTERPRISES, INC., AND RYAN A. PILLA**

       Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure ("FRCP") and the

Local Civil Rules of the United States District Court for the Southern and Eastern District of

New York ("Local Rules"), Plaintiff Shoreline Aviation, Inc. ("Shoreline Aviation"), by and

through its attorneys Kriegsman PC, hereby amends its objections and responses to the First Set

of Interrogatories to Shoreline Aviation by Defendants Cynthia L. Herbst ("Herbst"), Sound

Aircraft Flight Enterprises, Inc. ("SAFE"), and Ryan A. Pilla ("Pilla"), dated October 28, 2020,

(each, an "Interrogatory" and collectively, the "Interrogatories") as follows:

**GENERAL OBJECTIONS**

       Shoreline Aviation's specific objections to each Interrogatory are in addition to the

general limitations and objections set forth in this section. These limitations and objections form

a part of the response to each Interrogatory and are set forth herein to avoid the duplication and

repetition of restating them for each response. The absence of a reference to a general objection

should not be construed as a waiver of the general objection as to the specific Interrogatory.

1.      Shoreline Aviation objects to the Interrogatories in their entirety to the extent that they are overbroad or purport to impose obligations upon Shoreline Aviation that exceed those required or permitted by the FRCP, the Local Rules, applicable case law, or this Court's orders or Individual Rules. Shoreline Aviation will respond to the Interrogatories in accordance with the requirements of the FRCP and the Local Rules.

2.      Shoreline Aviation objects to the Interrogatories in their entirety to the extent that they purport to call for the disclosure of information that are subject to the attorney work product protection, the attorney-client privilege, or any other applicable privilege, doctrine, or immunity. Shoreline Aviation asserts such privileges and objects to the provision of information subject thereto.

3.      Shoreline Aviation objects to the Interrogatories in their entirety to the extent that they use undefined terms and/or are vague, compound, ambiguous, confusing, and otherwise imprecise. To the extent that an Interrogatory is vague or ambiguous, Shoreline Aviation has responded to the best of its ability but has not attempted to speculate as to the meaning thereof.

4.      Shoreline Aviation objects to the Interrogatories in their entirety to the extent that they seek information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case.

5.      Shoreline Aviation objects to the Interrogatories in their entirety to the extent that they (a) seek information (a) not within Shoreline Aviation's possession, custody, or control; (b) within Defendants' possession, custody, or control; and/or (c) at least as available to Defendants as the information is to Shoreline Aviation.

6.      Shoreline Aviation objects to the Interrogatories in their entirety insofar as (a) the information sought by any Interrogatory is oppressive, unduly burdensome, unreasonably

cumulative or duplicative, or is obtainable from another source that is more convenient, less burdensome, or less expensive; or (b) the burden or expense of any Interrogatory outweighs its likely benefit.

7.     Shoreline Aviation's Objections and Responses to the Interrogatories shall not be construed as: (i) an admission as to the relevance, admissibility, or materiality of any such information or its subject matter; or (ii) a waiver or abridgment of any applicable privilege.

8.     Shoreline Aviation reserves all its rights, including its right to supplement, amend, clarify, and/or correct any of its Objections and Responses to the Interrogatories and its right to object to the admissibility of any part of any information disclosed in response to any Interrogatory.

<u>**SPECIFIC OBJECTIONS AND RESPONSES TO THE INTERROGATORIES**</u>

<u>**Interrogatory No. 1**</u>**:**  Set forth all terms including the parties, dates, duration, payment obligation, and consideration concerning the allegation that Shoreline Aviation contracted services with Herbst.

<u>**Objections and Response to Interrogatory No. 1**</u>

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 1 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case; and (b) is overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 1 because the undefined terms "all terms," "payment obligation," "consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 1 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that, based on Shoreline Aviation's present knowledge, Shoreline Aviation contracted with Herbst d/b/a SAFE and Sound Aircraft Services, Inc. ("SAS") in 1994, pursuant to which Herbst agreed to provide ticketing, check-in, baggage handling, and related customer services to Shoreline Aviation. Herbst was responsible for broker services for Shoreline Aviation, exclusively booking Shoreline Aviation's seaplane commuter flights to and from the East Hampton Airport through SAS/SAFE. Under the agreement, Herbst/SAFE received a 10% commission on each commuter seat and charter flight booked. Either party could terminate the agency relationship with reasonable notice to the other party. As Shoreline Aviation's exclusive booking agent for seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan, Herbst and SAFE handled Shoreline Aviation's reservation requests, payment processing, customer communications, correspondence, flight manifests, and passenger check-in procedures at East Hampton Airport. Herbst's administrative duties for Shoreline Aviation included mailing out a letter to Shoreline Aviation customers, once in December and again in March of each year, asking them to buy books of ten tickets to receive a 10% discount in December and a 5% discount in March for purchasing ahead of the summer season. Customers were required to pay Shoreline Aviation by check or wire transfer. Herbst had access to Shoreline Aviation's proprietary customer, pricing, and business practices information and was obligated to guard the secrecy of this information. The contract was unilaterally terminated by Herbst and SAFE without reasonable notice to Shoreline Aviation in April or May 2018.

**Interrogatory No. 2:**  Set forth all terms including the parties, dates, duration, payment obligation, and consideration concerning the allegation that Shoreline Aviation contracted services with SAFE.

**Objections and Response to Interrogatory No. 2**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 2 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case; and (b) is overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 2 to the extent that it is unreasonably cumulative or duplicative of Interrogatory No. 1. Shoreline Aviation further objects to Interrogatory No. 2 because the undefined terms "all terms," "payment obligation," "consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 2 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that, based on Shoreline Aviation's present knowledge, Shoreline Aviation contracted with Herbst d/b/a SAFE and SAS in 1994, pursuant to which Herbst agreed to provide ticketing, check-in, baggage handling, and related customer services to Shoreline Aviation. Herbst was responsible for broker services for Shoreline Aviation, exclusively booking Shoreline Aviation's seaplane commuter flights to and from the East Hampton Airport through SAS/SAFE. Under the agreement, Herbst/SAFE received a 10% commission on each commuter seat and charter flight booked. Either party could terminate the agency relationship with reasonable notice to the other party. As Shoreline Aviation's exclusive booking agent for seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan, Herbst and SAFE handled Shoreline Aviation's reservation requests, payment processing, customer communications, correspondence, flight manifests, and passenger check-in procedures at East Hampton Airport. SAFE's administrative duties for Shoreline Aviation included mailing out a

letter to Shoreline Aviation customers, once in December and again in March of each year, asking them to buy books of ten tickets to receive a 10% discount in December and a 5% discount in March for purchasing ahead of the summer season. Customers were required to pay Shoreline Aviation by check or wire transfer. SAFE had access to Shoreline Aviation's proprietary customer, pricing, and business practices information and was obligated to guard the secrecy of this information. The contract was unilaterally terminated by Herbst and SAFE without reasonable notice to Shoreline Aviation in April or May 2018.

**Interrogatory No. 3:**  Set forth all terms including the parties, dates, duration, payment obligation, and consideration concerning the allegation that Shoreline Aviation contracted services with Sound Aircraft Services, Inc.

**Objections and Response to Interrogatory No. 3**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 3 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case; and (b) is overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 3 because the undefined terms "all terms," "payment obligation," "consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 3 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that, based on Shoreline Aviation's present knowledge, Shoreline Aviation contracted with Herbst d/b/a SAFE and SAS in 1994, pursuant to which Herbst/SAS/SAFE agreed to provide ticketing, check-in, baggage handling, and related customer services to Shoreline Aviation. Herbst was

responsible for broker services for Shoreline Aviation, exclusively booking Shoreline Aviation's seaplane commuter flights to and from the East Hampton Airport through SAS until her divorce in April 2017, at which time she transitioned to SAFE. Under the agreement, Herbst/SAFE received a 10% commission on each commuter seat and charter flight booked. Either party could terminate the agency relationship with reasonable notice to the other party. As Shoreline Aviation's exclusive booking agent for seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan, Herbst/SAFE/SAS handled Shoreline Aviation's reservation requests, payment processing, customer communications, correspondence, flight manifests, and passenger check-in procedures at East Hampton Airport. Herbst's administrative duties for Shoreline Aviation included mailing out a letter to Shoreline Aviation customers, once in December and again in March of each year, asking them to buy books of ten tickets to receive a 10% discount in December and a 5% discount in March for purchasing ahead of the summer season. Customers were required to pay Shoreline Aviation by check or wire transfer. Herbst had access to Shoreline Aviation's proprietary customer, pricing, and business practices information and was obligated to guard the secrecy of this information. The contract was unilaterally terminated by Herbst and SAFE without reasonable notice to Shoreline Aviation in April or May 2018.

Other terms in the agreement between Shoreline Aviation and SAS, to the extent they are relevant to this action, are contained in (1) the operating agreement, dated May 12, 1994, annexed as Exhibit A to the amended complaint filed by Shoreline Aviation on April 1, 2021 (the "Amended Complaint") and (2) the operating agreement, dated July 16, 1996, annexed as Exhibit B to the Amended Complaint.

**Interrogatory No. 4:**  Set forth all terms including the parties, dates, duration, payment

7

Case 2:20-cv-02161-NJC-SIL   Document 153-10   Filed 12/18/23   Page 9 of 23 PageID #: 2232

obligation, and consideration concerning the allegation that Shoreline Aviation contracted services with Pilla.

**Objections and Response to Interrogatory No. 4**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 4 to the extent that it mischaracterizes the allegations in the original complaint filed on May 13, 2020 (the "Original Complaint"). Shoreline Aviation further objects to Interrogatory No. 4 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case; and (b) is overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 4 because the undefined terms "all terms," "payment obligation," "consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 4 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that neither the Original Complaint nor the Amended Complaint alleges that Shoreline Aviation "contracted services with Pilla." Shoreline Aviation did not have a contractual relationship with Pilla.

**Interrogatory No. 5:**  Set forth all terms including the parties, dates, duration, payment obligation, and consideration concerning the alleged promise of Herbst to act as exclusive booking agent for Shoreline Aviation.

**Objections and Response to Interrogatory No. 5**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 5 to the extent that it is unreasonably

8

cumulative or duplicative of Interrogatory No. 1. Shoreline Aviation further objects to

Interrogatory No. 5 to the extent that it (a) seeks information that is neither relevant to any

party's claim or defense in this action nor proportional to the needs of the case; and (b) is

overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to

Interrogatory No. 5 because the undefined terms "all terms," "payment obligation,"

"consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise

imprecise. Shoreline Aviation further objects to Interrogatory No. 5 because it seeks information

already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation incorporates by

reference its response to Interrogatory No. 1 and further responds that, based on Shoreline

Aviation's present knowledge, Herbst agreed to act as exclusive booking agent for Shoreline

Aviation's seaplane commuter flights between East Hampton Airport and the 23rd Street

Seaplane Base in Manhattan in return for a 10% commission.

**Interrogatory No. 6:**  Set forth all terms including the parties, dates, duration, payment
obligation, and consideration concerning the alleged promise of SAFE to act as exclusive
booking agent for Shoreline Aviation.

**Objections and Response to Interrogatory No. 6**

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 6 to the extent that it is unreasonably

cumulative or duplicative of Interrogatory Nos. 1, 2, and 5. Shoreline Aviation further objects to

Interrogatory No. 3 to the extent that it (a) seeks information that is neither relevant to any

party's claim or defense in this action nor proportional to the needs of the case; and (b) is

overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to

Interrogatory No. 6 because the undefined terms "all terms," "payment obligation,"

"consideration," and "contracted services" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 6 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation incorporates by reference its response to Interrogatory No. 2 as if fully set forth herein and further responds that, based on Shoreline Aviation's present knowledge, SAFE agreed to act as exclusive booking agent for Shoreline Aviation's seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan in return for a 10% commission.

**Interrogatory No. 7:**  Identify in detail the nature of Herbst's interference to the exclusion of Shoreline Aviation's right to the $65,522.00 paid by Shoreline Aviation to Herbst.

**Objections and Response to Interrogatory No. 7**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 7 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action; and (b) purports to require Shoreline Aviation to provide information of which Shoreline Aviation has no knowledge. To the extent Interrogatory No. 7 is based on Count III of the Original Complaint, Interrogatory No. 7 is now moot because the Amended Complaint does not bring a conversion claim against Herbst and SAFE. Shoreline Aviation further objects to Interrogatory No. 7 because the undefined terms "interference" and "exclusion" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 7 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that the Complaint does not allege that Herbst's failure to return Shoreline Aviation's $65,522.00 advance commission payment was a form of "interference." As had been the practice in prior years, in January, February, and March of 2018, Shoreline Aviation paid Herbst her 10% commission in advance for customer booking and handling on the upcoming 2018 summer season in the amount of $65,522.00 for 1,100 seats sold. Because Herbst stopped booking seats for Shoreline Aviation in April or May 2018 and never earned those commissions, Shoreline Aviation asked that she refund that amount on April 23, 2018. Herbst never returned to Shoreline Aviation the $65,522.00 in pre-paid and unearned commissions.

**Interrogatory No. 8:**  Identify in detail the nature of SAFE's interference to the exclusion of Shoreline Aviation's right to the $65,522.00 paid by Shoreline Aviation to Herbst.

**Objections and Response to Interrogatory No. 8**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 8 to the extent that it is unreasonably cumulative or duplicative of Interrogatory No. 7. Shoreline Aviation further objects to Interrogatory No. 8 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action; and (b) purports to require Shoreline Aviation to provide information of which Shoreline Aviation has no knowledge. To the extent Interrogatory No. 8 is based on Count III of the Original Complaint, Interrogatory No. 8 is now moot because the Amended Complaint does not bring a conversion claim against Herbst and SAFE. Shoreline Aviation further objects to Interrogatory No. 8 because the undefined terms "interference" and "exclusion" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation

further objects to Interrogatory No. 8 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that the Complaint does not allege that SAFE's failure to return Shoreline Aviation's $65,522.00 advance commission payment was a form of "interference." As had been the practice in prior years, in January, February, and March of 2018, Shoreline Aviation paid Herbst her 10% commission in advance for customer booking and handling on the upcoming 2018 summer season in the amount of $65,522.00 for 1,100 seats sold. Because Herbst and SAFE stopped booking seats for Shoreline Aviation in April or May 2018 and never earned those commissions, Shoreline Aviation asked that Herbst refund that amount on April 23, 2018. Herbst and SAFE never returned to Shoreline Aviation the $65,522.00 in pre-paid and unearned commissions.

**Interrogatory No. 9**:  Identify the basis for Shoreline Aviation's alleged right to possession of the $65,522.00.

**Objections and Response to Interrogatory No. 9**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 9 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action; and (b) purports to require Shoreline Aviation to provide information of which Shoreline Aviation has no knowledge. To the extent Interrogatory No. 9 is based on Count III of the Original Complaint, Interrogatory No. 9 is now moot because the Amended Complaint does not bring a conversion claim against Herbst and SAFE. Shoreline Aviation further objects to Interrogatory No. 9 because the undefined terms "right" and "possession" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 9 because it seeks

information already known to Defendants or at least as available to Defendants as it is to

Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that, as

had been the practice in prior years, in January, February, and March of 2018, Shoreline

Aviation paid Herbst her 10% commission in advance for customer booking and handling on the

upcoming 2018 summer season in the amount of $65,522.00 for 1,100 seats sold. Because Herbst

and SAFE stopped booking seats for Shoreline Aviation in April or May 2018 and never earned

those commissions, Shoreline Aviation asked that Herbst refund that amount on April 23, 2018.

Herbst and SAFE never returned to Shoreline Aviation the $65,522.00 in pre-paid and unearned

commissions.


**Interrogatory No. 10:**  Identify in detail the nature of any alleged fiduciary duty between Pilla,
Herbst, SAFE and Shoreline Aviation.

**Objections and Response to Interrogatory No. 10**

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 10 to the extent that it (a) seeks

information that is neither relevant to any party's claim or defense in this action; (b) purports to

require Shoreline Aviation to provide information of which Shoreline Aviation has no

knowledge; and (c) is oppressive and unduly burdensome. Shoreline Aviation further objects to

Interrogatory No. 10 because it seeks information already known to Defendants or at least as

available to Defendants as it is to Shoreline Aviation. Shoreline Aviation further objects to

Interrogatory No. 10 because it does not specify which party owes and which party is owed a

fiduciary duty, causing the Interrogatory to be vague, ambiguous, confusing, and otherwise

imprecise.

Subject to and without waiving the above objections, Shoreline Aviation responds that it placed trust and confidence in Herbst and SAFE, who were the exclusive booking agent for Shoreline Aviation for seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan. By virtue of Herbst and SAFE's agency relationship with Shoreline Aviation, they owed a fiduciary duty to Shoreline Aviation, including the duties of care, loyalty, good faith, trust, confidence, and candor; a duty to safeguard Shoreline Aviation's trade secrets and other confidential, proprietary information; and a duty to act in Shoreline Aviation's best interests.

**Interrogatory No. 11:**  Set forth all terms including the parties, dates, duration, payment obligation, nature, scope and consideration concerning any alleged agency relationship between Pilla, Herbst, SAFE, and Shoreline Aviation.

**Objections and Response to Interrogatory No. 11**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 2 to the extent that it is unreasonably cumulative or duplicative of Interrogatory Nos. 1, 2, 5, 6, and 10. Shoreline Aviation further objects to Interrogatory No. 11 to the extent that it (a) seeks information that is neither relevant to any party's claim or defense in this action; (b) purports to require Shoreline Aviation to provide information of which Shoreline Aviation has no knowledge; and (c) is overbroad, oppressive, and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 11 because the undefined terms "all terms," "payment obligation," "consideration" and "agency relationship" are vague, ambiguous, confusing, and otherwise imprecise. Shoreline Aviation further objects to Interrogatory No. 11 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation. Shoreline Aviation further objects to Interrogatory No. 11 because it does not specify which party is the agent and which

party is the principal, causing the Interrogatory to be vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the above objections, Shoreline Aviation incorporates by reference its responses to Interrogatory Nos. 1, 2, 5, 6, and 10 as if fully set forth herein.

**Interrogatory No. 12:**  Identify in detail each and every alleged written or verbal communications [sic] relied upon for the basis of the allegation that Herbst and SAFE "secretly" worked with Blade to the detriment of Shoreline Aviation.

**Objections and Response to Interrogatory No. 12**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 12 to the extent that it (a) purports to quote from a source but does not identify the source; (b) is unreasonably cumulative and duplicative of Defendants' Document Request No. 24; and (c) is oppressive and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 12 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation. Shoreline Aviation further objects to Interrogatory No. 12 because the undefined term "communications" is vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the above objections, Shoreline Aviation responds that, while it was not privy to private communications between and among Herbst, SAFE, and Blade Urban Air Mobility, Inc. a/k/a Fly Blade, Inc. ("Blade"), Shoreline Aviation relied upon (1) multiple communications from its customers forwarding or referring to communications from Herbst, SAFE, and Blade attempting to solicit the customers' business from May 2018 through April 2020; (2) the May 7, 2018 email from Herbst to Shoreline Aviation customers, annexed as Exhibit P the Amended Complaint; and (3) communications between and among Herbst, SAFE,

Jim Brundige, and the East Hampton town attorney to support Shoreline Aviation's allegations

that Herbst and SAFE secretly worked with Blade to the detriment of Shoreline Aviation.

**Interrogatory No. 13:**  Identify in detail each and every specific damage to Shoreline Aviation
to reach the alleged total of $10,000,000.00 in damages to Shoreline Aviation.

## Objections and Response to Interrogatory No. 13

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 13 to the extent that it is unreasonably

cumulative and duplicative of Defendants' Document Request No. 25.

Subject to and without waiving the above objections, Shoreline Aviation responds that it

seeks damages totaling at least $1,608,401.38, which amount includes, based on Shoreline

Aviation's present knowledge: (a) $839,848.51, the approximate amount of 2018 lost revenue as

a result of Defendants' actions; (b) $189,605.87, the approximate cost to replace SAFE's staff in

2018 and change Shoreline's advertising to remove references to SAFE and correct the contact

information; (c) $65,522.00, the amount of unearned commissions paid to Herbst and SAFE; and

(d) $513,425.00, the approximate amount of the loss of tax benefits to Shoreline Aviation from

the Employee Stock Ownership Plan that Shoreline Aviation could not implement in 2018 as a

result of the filing of Herbst and SAFE's frivolous suit against Shoreline Aviation.

**Interrogatory No. 14:**  Identify in detail the alleged improper means by which Herbst and SAFE
allegedly acquired the customer lists alleged to belong to Shoreline Aviation.

## Objections and Response to Interrogatory No. 14

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 14 to the extent that it (a) purports to

require Shoreline Aviation to provide information of which Shoreline Aviation has no

knowledge; and (b) is oppressive and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 14 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation has not alleged that Herbst and SAFE acquired Shoreline Aviation's customer lists through improper means. Rather, the Amended Complaint alleges that Herbst and SAFE had lawful access to Shoreline Aviation's customer lists, through Herbst and SAFE's agency relationship with Shoreline Aviation, but that they then tortiously, unfairly, faithlessly, impermissibly, or otherwise unlawfully stole, misappropriated, converted, and/or misused such customer lists.

**Interrogatory No. 15**:  Identify in detail how Herbst and SAFE allegedly used the customer lists in breach of an alleged agreement with Shoreline Aviation.

**Objections and Response to Interrogatory No. 15**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 15 to the extent that it (a) purports to require Shoreline Aviation to provide information of which Shoreline Aviation has no knowledge; and (b) is oppressive and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 15 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, upon information and belief, Herbst and SAFE abused their access to Shoreline Aviation's customer information by disclosing that information to Blade; entering into an asset purchase agreement with Blade, in or around May 2018, pursuant to which Blade purchased what was purported to be SAFE's customer list but was actually Shoreline Aviation's customer list; attempting to divert the customers to Blade and

its air carriers; communicating with the customers in efforts to divert them to Blade; advising

them to seek a refund from Shoreline Aviation for their pre-paid tickets, even though it was

Herbst and SAFE who had previously insisted on a no-refund policy for Shoreline Aviation

customers; and making false statements about Shoreline Aviation to its customers, all of which

were in violation of Herbst and SAFE's (a) fiduciary obligations to Shoreline Aviation and (b)

agreement to safeguard Shoreline Aviation's trade secrets and other confidential, proprietary

information.

**Interrogatory No. 16:**  Identify in detail Pilla's alleged use of the customer lists with respect to the allegation of unfair competition.

**Objections and Response to Interrogatory No. 16**

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 16 to the extent that it (a) purports to

require Shoreline Aviation to provide information of which Shoreline Aviation has no

knowledge; and (b) is oppressive and unduly burdensome. Shoreline Aviation further objects to

Interrogatory No. 16 because it seeks information already known to Defendants or at least as

available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, upon information and belief, Pilla

conspired with Herbst, SAFE, Blade, Melissa Tomkiel, and Robert S. Wiesenthal to

misappropriate Shoreline Aviation's customer information, attempt to divert Shoreline

Aviation's customers to Blade and its air carriers, and make false statements about Shoreline

Aviation to those customers. In addition, Pilla acted in furtherance of that agreement by taking

such actions.

**Interrogatory No. 17:**  Identify in detail Pilla's alleged actions that Shoreline Aviation is relying

upon to establish wrongful interference with Shoreline Aviation's business relationships with third parties.

**Objections and Response to Interrogatory No. 17**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 17 to the extent that it is oppressive and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 17 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation incorporates by reference its response to Interrogatory No. 16 as if fully set forth herein.

**Interrogatory No. 18:**  Identify in detail each and every basis Shoreline Aviation is relying upon to establish that Herbst was working in an individual capacity, and not as an employee or owner of SAFE or Sound Aircraft Services.

**Objections and Response to Interrogatory No. 18**

Shoreline Aviation incorporates by reference its General Objections as set forth above. Shoreline Aviation further objects to Interrogatory No. 18 to the extent that it mischaracterizes the allegations in the Original Complaint. Shoreline Aviation further objects to Interrogatory No. 18 to the extent that it is oppressive and unduly burdensome. Shoreline Aviation further objects to Interrogatory No. 18 because it seeks information already known to Defendants or at least as available to Defendants as it is to Shoreline Aviation.

Subject to and without waiving the above objections, Shoreline Aviation responds that, upon information and belief, while Herbst purports to operate SAFE as a separate entity, it is in fact her alter ego, and she exercises complete domination and control over it. Upon information and belief, Herbst fails to observe corporate formalities and utilizes SAFE for personal purposes,

including by (1) shuttling funds between personal and corporate accounts; (2) utilizing a vehicle

owned or leased in the name of SAFE for personal errands, travel, or other purposes; (3) utilizing

a vehicle owned or lease in Herbst's name for business errands, travel, and other purposes; (4)

utilizing a phone number and/or email address established in the name of SAFE for Herbst's

personal use; and/or (5) otherwise operating SAFE as Herbst's own alter ego.

**Interrogatory No. 19:**  Set forth in detail each and every individual acting on behalf of Cape Air in connection with business transactions with Shoreline Aviation.

**Objections and Response to Interrogatory No. 19**

Shoreline Aviation incorporates by reference its General Objections as set forth above.

Shoreline Aviation further objects to Interrogatory No. 18 to the extent that it (a) purports to

require Shoreline Aviation to provide information of which Shoreline Aviation has no

knowledge; and (b) is oppressive and unduly burdensome. Shoreline Aviation further objects to

Interrogatory No. 19 because the undefined terms "acting on behalf of," "in connection with,"

and "business transactions" are vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the above objections, Shoreline Aviation responds that, in

negotiations to sell Shoreline Aviation's business to Cape Air, Shoreline Aviation dealt primarily

with Dan Wolf, Linda Markham, and Mike Migliore.

Dated:  April 13, 2022

KRIEGSMAN PC

By:    */s/  Alex Kriegsman*
Alex Kriegsman
279 Main Street
Sag Harbor, NY 11963
(631) 899-4826
(631) 919-5182 (fax)
alex@kriegsmanpc.com

*Attorneys for Plaintiff*

20

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X

SHORELINE AVIATION, INC.,                          Case No.: 2:20-cv-02161-JMA-SIL

              Plaintiff,

    -against-

CYNTHIA L. HERBST, SOUND AIRCRAFT FLIGHT
ENTERPRISES, INC., and RYAN A. PILLA,

              Defendants.

-------------------------------------------------------------------- X


## VERIFICATION

Andrea Collingwood verifies that she is an officer of the plaintiff in the above-captioned action, that she has read the foregoing Plaintiff's Amended Objections and Responses to First Set of Interrogatories to Plaintiff by Defendants Cynthia L. Herbst, Sound Aircraft Flight Enterprises, Inc., and Ryan A. Pilla and knows the contents thereof to be true to her own knowledge, except as to those matters herein stated upon information and belief, which matters she believes to be true. I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April \3 2022

                                Andrea Collingwood

22

## CERTIFICATE OF SERVICE

I, Alex Kriegsman, certify under penalty of perjury under the laws of the United States that, on April 18, 2022, I caused the foregoing Plaintiff's Amended Objections and Responses to First Set of Interrogatories to Plaintiff by Defendants Cynthia L. Herbst, Sound Aircraft Flight Enterprises, Inc., and Ryan A. Pilla to be served on the following attorneys of record:

Lindsey R. Skibell (rskibell@glennagre.com)
Jewel K. Tewiah (jtewiah@glennagre.com)
Glenn Agre Bergman & Fuentes LLP
55 Hudson Yards, 20th Floor
New York, NY 10001

Dated:  April 18, 2022

/s/  Alex Kriegsman
Alex Kriegsman