# EXHIBIT 7



# TOWN OF EAST HAMPTON

159 Pantigo Road
East Hampton, New York 11937

**TOWN ATTORNEY**
CYNTHIA AHLGREN SHEA

**DEPUTY TOWN ATTORNEY**
JOHN C. JILNICKI

(516) 324-8787

June 3, 1994

John Kelly, President
Shoreline Aviation, Inc.
P.O. Box 120187
East Haven, Connecticut 06512

      Re: 1994 Operating Agreement-
          Town of East Hampton Airport

Dear Mr. Kelly:

    I am enclosing a fully executed original Agreement as referenced above for your files.

                              Very truly yours,

                              Patricia A. Field
                              Town Attorney's Office

/pf/
cc: Steven Tuma, President
    Sound Aircraft Services, Inc.
enc.

## OPERATING AGREEMENT

## East Hampton Town Airport

THIS OPERATING AGREEMENT ("Agreement") among the TOWN OF EAST HAMPTON ("Town"), a municipal corporation with its offices at Town Hall, 159 Pantigo Road, East Hampton, Suffolk County, New York; Shoreline Aviation, Inc. (the "Operator") a Connecticut corporation with offices at New Haven, Connecticut, and a mailing address at P.O. Box 120187, East Haven, Connecticut 06512; and Sound Aircraft Services, Inc. ("Sound"), a New York corporation with offices at Wainscott, New York, and a mailing address at P.O. Box 438, Wainscott, New York 11975, is made and entered into this /0'" day of May 1994, to be effective the 15th day of May, 1994:

## W I T N E S S E T H

**WHEREAS**, the Town owns, controls and operates, for the use and benefit of the public, the East Hampton Airport ("Airport"), located at (no #) Daniels Hole Road, Wainscott, East Hampton, New York; and,

**WHEREAS**, FAR Part 135 AIR CARRIER services at the Airport are essential to users of the Airport, to the continued viability of the Airport, and to the economic well-being and convenience of the citizens and residents of the area served by the Airport; and,

**WHEREAS**, the Town in recognition of the foregoing, desires to make such services available at the Airport; and,

**WHEREAS**, the Operator is engaged in the air transport of passengers and freight and desires to make such services available at the Airport and to use Airport facilities in connection therewith; and,

**WHEREAS**, on May 6, 1994, the Town conducted a public hearing to solicit comments on this Agreement in accordance with the provisions of the General Municipal Law, Section 352; and,

**WHEREAS**, a generic environmental impact statement ("GEIS") was prepared in 1988 by the Town in connection with the 1989 East Hampton Town Master Plan Update for the Airport and the activity of air transportation of passengers and freight was addressed in said GEIS and Master Plan Update. The Town's review shows that the activity of air transport of passengers and freight as proposed in this Operating Agreement shall not have a significant adverse effect on the environment and does not require any other determination or procedure pursuant to the New York State Environmental Quality Review Act; and,

1

WHEREAS, on April 7, 1992, in accordance with the provisions of the General Municipal Law, Section 352, and Town Law, Section 130, subsection 22, the Town duly adopted revised Minimum Standards for Airport Aeronautical Services, as advised by the Federal Aviation Administration, and has duly adopted and revised Chapter 36, "Airport," of the Code of the Town of East Hampton, all the applicable provisions of which, now or in the future, regardless of any other effect of said standards or local laws, shall be binding upon the Operator as material conditions of this Agreement, are attached hereto as Exhibits "A" and "B", respectively, and are incorporated herein; and,

WHEREAS, the Town has adopted a revised Master Plan for the Airport, including the preparation and incorporation of an Environmental Impact Statement on said revised Master Plan, all the applicable provisions of which, as adopted and as duly amended in the future, shall be binding upon the Operator under the terms of this Agreement and are incorporated by reference herein;

NOW, THEREFORE, in consideration of the foregoing and pursuant to Section 352 of the General Municipal Law and a resolution of the Town Board, the parties hereto covenant and agree for themselves, their agents, successors, legal representatives, and assignees as follows:

1. **PURPOSE.**

The purpose of this Agreement is to set forth the standards and conditions for the safe and orderly conduct of the Operator's air carrier operations to and from the Airport. Due to the equipment employed by the Operator and the space constraints found at the Airport, the Town and the Operator desire to formally establish procedures to be followed to insure the safe, orderly and compatible conduct of the Operator's operation, including the ground operation services to be provided by Sound, one of the Airport's fixed based operators.

2. **TERM OF AGREEMENT.**

The term of this Agreement shall be for a period of one (1) year, commencing on the fifteenth (15th) day of May 1994, and continuing through the fourteenth (14th) day of May 1995, unless earlier terminated under the provisions of this Agreement.

3. **OPERATING RIGHTS AND OBLIGATIONS.**

   A. Authorized Services.

   (1) Subject to the terms, conditions and covenants of this Agreement, the Town hereby grants to the Operator the non-

SAI000360

exclusive right and privilege to offer and to provide air transportation of passengers and freight as a FAR Part 135 AIR CARRIER.

B. Ground Operations.

(1) The Operator shall engage the services of Sound, one of the Airport's fixed based operators to supervise, facilitate and control its activities on the ground. The Town, the Operator and Sound agree that Sound's responsibilities under this Agreement shall include, but not be limited to the following: directing aircraft into parking position on the ramp; ensuring that adequate clearance is maintained from any obstacles; providing a fixed parking space approved by the Airport Manager on the ramp and ensuring that the same is s suitably designated and available for all arriving flights; providing passenger escort to and from the from the aircraft and terminal gate for all flights; fueling of aircraft; and the provision of ticketing, check-in, baggage handling, and related customer services.

(2) Operator and Sound shall comply with all reasonable orders and directives of the Airport Manager to avoid terminal building overcrowding and exceeding maximum occupancy.

(3) All arrivals and departures of the Operator shall be announced on Unicom using frequency 122.7 mz.

(4) Operator shall conduct its activities on and around the Airport premises so as not to endanger any person or property thereon or nearby.

(5) Operator shall purchase fuel whenever necessary from a fixed base operator authorized to provide fuel from the Town owned fuel facility at the Airport.

C. Operating Standards. In providing the authorized services specified above, Operator shall operate for the use and benefit of the public and shall meet or exceed the following standard:

3

      (1) Operator shall furnish its services in a good, prompt, efficient manner adequate to meet all the demands for its services at the Airport.

      (2) Operator shall fully comply with the Town's Minimum Standards for Airport Aeronautical Services, attached hereto as Exhibit "A," and Chapter 36, "Airport" of the Town Code, attached hereto as Exhibit "B," and any other State and federal laws, rules and regulations that are applicable to each of Operator's activities.

      (3) Operator shall provide, at its sole expense, a sufficient number of employees to provide in a good, prompt and efficient manner the services authorized by this Agreement.

      (4) Operator shall control the conduct, demeanor and appearance of its employees, who shall be trained by Operator and who shall possess such technical qualifications and hold such certificates as may be required by any governmental authority in carrying out assigned duties. It shall be the responsibility of Operator to maintain close supervision over its employees to assure a high standard of service to Operator's customers.

   D. Charges, Prices and Fees. Operator shall furnish services on a fair, reasonable and non-discriminatory basis to all users of the Airport. Operator shall charge fair, reasonable and non-discriminatory prices for each unit of sale of service; provided, however, that Operator shall be allowed to make reasonable and non-discriminatory discounts, rebates or other similar types of price reductions to volume purchasers.

4. **APPURTENANT PRIVILEGES.**

In addition to the rights granted in Paragraph 3. above, Operator shall enjoy the following appurtenant rights and privileges:

   A. Use of Airport Facilities. Operator shall be entitled, in common with others so authorized, to use all Airport facilities of a public nature in accordance with their common usage which are now or may become part of the Airport including but not limited to: terminal building, parking lot, roads, driveways aircraft aprons, runways, taxiways, navigational

SAI000362

aids, and other Airport facilities to the extent reasonably required under this Agreement.

B. Use of Equipment. Operator shall have the right to operate, place, install, maintain, repair, and store, subject to the approval of the Airport Manager in the interests of safety and proper Airport operation, all equipment necessary for the conduct of Operator's operations.

5. **FEES AND CHARGES.**

A. Landing Fees. Operator shall not be required to pay East Hampton Airport landing fees on flights by any aircraft which has been designated by the Operator pursuant to Section 7.A. as based at the East Hampton Airport. Operator shall pay the Town landing fees for each of its other flights landing at the Airport according to the following schedule:

| | |
|---|---|
| Single Engine | $8.00 plus $1.00 per passenger |
| Twin engine less than 12,500 pounds gross weight: | $12.00 plus $1.00 per passenger |
| Twin engine equal to or greater than 12,500 pounds gross weight: | $18.00 plus $1.00 per passenger |

B. Overtime Fees: The Operator shall pay the Town for any overtime incurred by Airport personnel who work beyond their normal working hours in order to service Operator's flights operating into or out of the Airport. The fee for such overtime shall be TWENTY-FIVE ($25.00) DOLLARS per hour, per person, including any part of an hour. The normal working hours of Airport personnel shall be provided to the Operator by the Airport Manager.

6. **TIME AND PLACE OF PAYMENT.**

A. The fees specified in Paragraph 5.A. and 5.B., above, shall be paid to the Town on or before the twentieth (20th) day following the end of each month such fees are owing.

B. All payments due to the Town from Operator shall be delivered to the office of the Airport Manager or mailed to the East Hampton Town Airport, P.O. Box 836, East Hampton, New York 11937.

5

7.  **REPORTS:**

    A.  Monthly Reports. On or before the twentieth (20th) day following the end of each month, Operator shall submit a written report, certified by an officer of the Operator as to its accuracy, to the Airport Manager. Said monthly report shall contain the following information:

        (1) The total number of flights, categorized by the type of aircraft used;

        (2) The total number of passengers transported; and

        (3) The total number of Operator's aircraft based at the East Hampton Airport, along with the the aircraft registration number of each aircraft so based.

        The Operator shall keep and maintain such monthly reports for a period of three (3) years from the date the record is made.

    B.  Annual Report. Operator shall report its air carrier activity for the calendar year 1994 by submitting FAA Form 1800-31, "Airport Activity Survey," a copy of which is attached hereto as Exhibit "C," to both the FAA and the Town.

8.  **CERTIFICATION.**

    Operator shall supply written certification to the Airport Manager that all pilots conducting flights to and from the Airport on behalf of Operator have read and will comply with the terms of this Agreement, particularly the procedures set forth in Section 3.B., "Ground Operations", Section 3.C., "Operating Standards," and Section 12., "Noise Abatement."

9.  **INDEMNIFICATION AND INSURANCE.**

    A.  Indemnification. Operator shall assume all risks incident to, or in conjunction with, its business to be conducted hereunder and shall be solely responsible for all accidents or injuries of whatever nature or kind to persons or property caused by its operations at the Airport. The Operator shall indemnify, defend, and hold harmless the Town, its officers, agents and employees, from any penalties for violation of any law, ordinance or regulation affecting its operation, and from any and all claims, whatsoever, for injury to or death of any person, or any loss, damage or destruction of any property arising out of the operation of such

6

SAI000364

business, or resulting from the carelessness, negligence, or improper conduct of the Operator or any of its directors, officers, agents or employees. The Operator, at its own cost and expense, shall take out and carry throughout the term of this Agreement, a standard form policy or policies of insurance in such amounts and with such company or companies affording adequate protection against the foregoing liability in any of the matters contemplated by this section of the Agreement.

B. Insurance Policies. All insurance required by this Agreement shall be maintained with insurance underwriters authorized to do business in the State of New York. All policies shall name the Town as an additional insured. The Operator shall furnish the Town with certificates of insurance evidencing that such insurance coverages are in effect.

C. Aircraft Liability. The Operator shall, at its sole cost and expense, obtain and maintain continuously in effect at all times during the term of this Agreement, aircraft liability insurance in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS per occurrence, combined single limit.

D. Passenger Liability. The Operator shall, at its sole cost and expense, obtain and maintain continuously in effect at all times during the term of this Agreement, passenger liability insurance in the amount of FIVE HUNDRED THOUSAND ($500,000.00) DOLLARS per seat.

10. **NON-HYPOTHECATION.**

It is understood by both parties that the Town has been induced to enter into this Agreement by certain representations of fact and intention on the part of the Operator, its principals, officers, directors, and controlling shareholders concerning the nature and manner of business to be carried on by the Operator, its qualifications to do business, and its financial resources. The Operator covenants and agrees that it shall not at any time during the term of this Agreement assign, hypothecate, or transfer this Agreement or any interest therein without the prior written consent of the Town, which consent shall not be unreasonably withheld or delayed.

11. **ENVIRONMENTAL PROTECTION.**

Both the Town and the Operator hereby recognize and agree that the subject premises, as well as the Airport property as a whole, lie within and are a part of the Town's Water Recharge

Overlay District which is an area of critical concern to the Town

in its desire to maintain the high quality of its ground and surface waters.

    A.    The Operator shall not discharge, nor permit or suffer to be discharged, any toxic substances into the air and shall not discharge, nor permit or suffer to be discharged, on or into the ground any substance that may endanger or pollute the groundwater supply.

    B.    The Operator shall comply with all statutes, ordinances, rules, orders, regulations and requirements, in parti- Article Twelve of the Suffolk County Sanitary Code (Handling and Storage of Hazardous and Toxic Materials) and Chapter 104 of the East Hampton Town Code (Natural Resources Law), and any and all of their departments or bureaus having jurisdiction over the Airport for the correction, prevention, and abatement of pollution and use of the premises during the term of this Agreement.

12. **NOISE ABATEMENT.**

The Operator hereby expressly agrees to abide by all present or future noise laws, ordinances and regulations duly adopted by the Town Board or other agency of the Town, County, State, or Federal government, and to use all possible noise abatement practices in the operation of owned, leased or chartered aircraft, including:

    A.    Operating during normal waking hours (6:00 a.m. to 10:00 p.m.);

    B.    Flying at maximum altitudes;

    C.    Adhering to National Business Aircraft Association (NBAA) Takeoff and Landing Noise Abatement Procedures to minimize noise impacts to residential areas; and

    D.    Performing all aircraft run-ups in an area specified by the Airport Manager.

13. **ELECTRICAL INTERFERENCE.**

The Operator shall not create any electrical, electronic or radio interference that may interfere with or tend to interfere with aircraft navigation or communications between aircraft or ground control.

8

14. **NONDISCRIMINATION.**

Notwithstanding any other provision of this Agreement, the Operator for itself, its directors, officers, agents and employees, and its successors in interest and assigns, as part of the consideration of the Agreement, does hereby covenant and agree that:

A.  No person shall be excluded from participation in or denied the benefits of the use of the Airport or the Operator's services on the basis of race, religion, color or national origin.

B.  In the furnishing of services, no person shall be excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination on the basis of race, religion, color or national origin.

C.  The Operator shall provide services pursuant to this Agreement in compliance with all other requirements imposed by or pursuant to Title 49, Code of Federal Regulations ("CFR"), Department of Transportation, Subtitle A, Office of the Secretary, Part 21, entitled: "Nondiscrimination in Federal Assisted Programs of the Department of Transportation -- Effectuation of Title VI of the Civil Rights Act of 1964," and as said regulations may be amended.

15. **REMEDIES.**

A.  If the Operator is not reasonably performing under all other terms and conditions of this Agreement in a satisfactory manner, the Town, or its representative, shall notify the Operator in writing of the items constituting nonsatisfactory conditions and/or performance. If the Operator so requests, the Town, or its representative, and the Operator shall confer with in an effort to eliminate or cure all items or matters constituting non-satisfactory conditions and/or performance. If the Operator fails within twenty (20) days of receipt of the notice to confer with the Town and to correct, or to begin and diligently pursue correction on a timetable satisfactory to the Town, the Town may declare the Operator in default or breach and terminate this Agreement.

B.  The Operator agrees that in the event of breach of any of the nondiscrimination covenants contained herein, the Town shall have the right to terminate this Agreement immediately.

9

SAI000367

C. The rights and remedies hereunder are cumulative and the use of one remedy shall not exclude or waive the right to the use of another. The failure of the Town to notify the Operator of any default or breach hereunder shall in no way operate as a bar or waiver waiver of any rights or remedies on the part of the Town to seek to cure or redress of any and all defaults or breaches under the terms of this Agreement.

16. **RESERVED RIGHTS.**

   A. It is clearly understood by the Operator that no right or privilege has been granted which would operate to prevent any person, firm, or corporation operating aircraft on the Airport from performing any services on its own aircraft with its own regular employees (including, but not limited to, maintenance and repair) that it may choose to perform.

   B. It is clearly understood and agreed that nothing in this Agreement shall be construed to grant or authorize the granting of an exclusive right to the Operator.

   C. The Town reserves the right to further develop or improve the landing area of the Airport as it deems fit, regardless of the desires or views of the Operator and without interference or hindrance.

   D. The Town reserves the right, but shall not be obligated to the Operator to maintain and keep in repair the landing area of the Airport and all publicly owned facilities of the Airport, together with the right to direct and control all activities of the Operator in this regard.

   E. During the time of war or national emergency, the Town shall have the right to lease the landing area or any part thereof to the United States government for military use, and, if such lease is executed, the provisions of this Agreement, insofar as they are inconsistent with the provisions of this Agreement insofar as they are inconsistent with the provisions of the lease to the government, shall be suspended.

   F. The Town reserves the right to take any action it deems necessary to protect the aerial approaches of the Airport against obstruction.

   G. This Agreement shall be subordinate to the provisions of any existing or future lease or Agreement between the Town and the United States relative to the operation or maintenance of the Airport, the execution of which

SAI000368

maintenance of the Airport, the execution of which has been or may be required as a condition precedent to the expenditure of federal funds for the development of the Airport.

17. **FORCE MAJEURE.**

Neither party shall be held to be in breach of this Agreement because of any failure to perform any of its obligations hereunder if said failure is due to any act of God, fire, flood, accident, strike, riot, insurrection, war or any other cause over which that party has no control; provided, however, that the foregoing provision shall not apply to failures by the Operator to pay fees, or other payments to the Town; and provided further that both parties shall have an affirmative obligation to take all reasonable measures to mitigate the effects and duration of any non-performance caused by force majeure.

18. **MODIFICATIONS.**

This Agreement contains the complete understanding of the parties and may be modified only by written endorsement pursuant to a resolution of the Town Board.

19. **NOTICES.**

All notices hereunder shall be sent by certified mail, return receipt requested, as follows:

In the case of the Town:

> Town of East Hampton
> 159 Pantigo Road
> East Hampton, NY   11937
> Attn:  Pat Ryan, Airport Manager

In the case of the Operator:

> Shoreline Aviation, Inc.
> P.O. Box 120187
> East Haven, Connecticut 06512
> Attention: John Kelly, President

The parties may designate other respective addresses from time to time by written notice.

11

20. **SECTION HEADINGS.**

The section headings appearing herein shall not be deemed to govern or limit the scope, meaning or intent of the provisions of this Agreement.

21. **GOVERNING LAW.**

This Agreement shall be construed and enforced in accordance with the laws and courts of the State of New York.

22. **SEVERABILITY.**

Should any provision of this Agreement be determined by a court of competent jurisdiction to be void, then such determination shall not affect any other provision and all such other provisions shall remain in full force and effect.

**IN WITNESS WHEREOF,** the parties hereto have signed this Lease as of the day and year first written above.

TOWN OF EAST HAMPTON

By: _____
    Tony Bullock, Supervisor


SHORELINE AVIATION, INC.

By: _____
    John Kelly, President


SOUND AIRCRAFT SERVICES, INC.

By: _____
    Steven Tuma, President


12

SAI000370

STATE OF ~~NEW YORK~~ CONNECTICUT ) ss: NEW HAVEN
COUNTY OF ~~SUFFOLK~~ NEW HAVEN )

On this 15th day of MAY, 1994, before me personally came John Kelly, who, being duly sworn, did depose and say that he is the President of Shoreline Aviation, Inc., Ltd., the organization described in the foregoing Agreement, and that he is duly authorized to execute the foregoing Agreement.

_____
NOTARY PUBLIC
My commission expires APRIL 30 1996

STATE OF NEW YORK ) ss:
COUNTY OF SUFFOLK )

On this 26th day of MAY, 1994, before me personally came Tony Bullock who, being duly sworn, did depose and say that he is the Supervisor of the Town of East Hampton, the TOWN described in the foregoing Agreement; that he has been duly authorized to execute the foregoing Agreement on behalf of the Town by Town Board resolution #424, dated MAY 6th; and that he executed the foregoing instrument pursuant to such authorization and on behalf of the Town.

_____
NOTARY PUBLIC
JEAN R. HORNECK
NOTARY PUBLIC
STATE OF NEW YORK
#4773499
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES MARCH 30, 1996

STATE OF NEW YORK ) ss:
COUNTY OF SUFFOLK )

On this 10th day of MAY, 1994, before me personally came Steven Tuma who, being duly sworn, did depose and say that he is the President of Sound Aircraft Services, Inc. the organization described in the foregoing Agreement, and that he is duly authorized to execute the foregoing Agreement.

_____
NOTARY PUBLIC

JEAN R. HORNECK
NOTARY PUBLIC
STATE OF NEW YORK
#4773499
QUALIFIED IN NASSAU COUNTY
COMMISSION EXPIRES MARCH 30, 1996

13