# EXHIBIT 8

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------- X

SHORELINE AVIATION, INC.,                                    Case No.: 2:20-cv-02161-JMA-SIL

                              Plaintiff,

         -against-

CYNTHIA L. HERBST, SOUND AIRCRAFT FLIGHT
ENTERPRISES, INC., and RYAN A. PILLA,

                             Defendants.

-------------------------------------------------------------------- X

**PLAINTIFF'S OBJECTIONS AND RESPONSES**
**TO DEFENDANTS CYNTHIA L. HERBST, SOUND AIRCRAFT FLIGHT**
**ENTERPRISES, INC., AND RYAN F. PILLA'S REQUESTS FOR ADMISSION**

      Pursuant to Rules 26 and 36 of the Federal Rules of Civil Procedure ("FRCP") and the
Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of
New York ("Local Rules"), Plaintiff Shoreline Aviation, Inc. ("Shoreline Aviation"), by and
through its attorneys Kriegsman PC, hereby objects and responds to the Requests for Admission
by Defendants Cynthia L. Herbst ("Herbst"), Sound Aircraft Flight Enterprises, Inc. ("SAFE"),
and Ryan Pilla ("Pilla"), dated April 30, 2022, (each, a "Request" and collectively, the
"Requests") as follows:

**GENERAL OBJECTIONS**

      Shoreline Aviation's specific objections to each Request are in addition to the general
limitations and objections set forth in this section. These limitations and objections form a part of
the response to each Request and are set forth herein to avoid the duplication and repetition of
restating them for each response. The absence of a reference to a general objection should not be
construed as a waiver of the general objection as to the specific Request.

1.      Shoreline Aviation objects to the Requests in their entirety to the extent that they are overbroad or purport to impose obligations upon Shoreline Aviation that exceed those required or permitted by the FRCP, the Local Rules, or applicable case law. Shoreline Aviation will respond to the Requests in accordance with the requirements of the FRCP and the Local Rules.

2.      Shoreline Aviation objects to the Requests in their entirety to the extent that they purport to call for the disclosure of information that are subject to the attorney work product protection, the attorney-client privilege, or any other applicable privilege, doctrine, or immunity. Shoreline Aviation asserts such privileges and objects to the provision of information subject thereto.

3.      Shoreline Aviation objects to the Requests in their entirety to the extent that they use undefined terms and/or are vague, compound, ambiguous, confusing, and otherwise imprecise. To the extent that a Request is vague or ambiguous, Shoreline Aviation has responded to the best of its ability but has not attempted to speculate as to the meaning thereof.

4.      Shoreline Aviation objects to the Requests in their entirety to the extent that they seek information that is neither relevant to any party's claim or defense in this action nor proportional to the needs of the case.

5.      Shoreline Aviation objects to the Requests in their entirety to the extent that they (a) seek information (a) not within Shoreline Aviation's possession, custody, or control; (b) within Defendants' possession, custody, or control; and/or (c) at least as available to Defendants as the information is to Shoreline Aviation.

6.      Shoreline Aviation objects to the Requests in their entirety insofar as (a) the information sought by any Request is oppressive, unduly burdensome, unreasonably cumulative or duplicative; or (b) the burden or expense of any Request outweighs its likely benefit.

7.     Shoreline Aviation's Objections and Responses to the Requests shall not be construed as: (i) an admission as to the relevance, admissibility, or materiality of any such information or its subject matter; or (ii) a waiver or abridgment of any applicable privilege.

8.     Shoreline Aviation reserves all its rights, including its right to supplement, amend, clarify, and/or correct any of its Objections and Responses to the Requests and its right to object to the admissibility of any part of any information disclosed in response to any Request.

## SPECIFIC OBJECTIONS TO DEFINITIONS

**Definition No. 1:** "Shoreline", "You", or "Your" mean Plaintiff Shoreline Aviation, Inc. and its officers, directors, managers, employees, and agents.

**Objections to Definition No. 1**

Shoreline Aviation objects to Definition No. 1 to the extent that it is overbroad and purports to impose obligations upon Shoreline Aviation that exceed those required or permitted by Local Rule 26.3(c)(5). In responding to the Requests, Shoreline Aviation will construe the definition of "Shoreline," "You," or "Your" to be Shoreline Aviation and "its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates" in accordance with Local Rule 26.3(c)(5).

**Definition No. 2:** "Blade" means Fly Blade, Inc. a/k/a Blade Urban Air Mobility, Inc. and its officers, directors, managers, employees, and agents.

**Objections to Definition No. 2**

Shoreline Aviation objects to Definition No. 2 to the extent that it is overbroad and purports to impose obligations upon Shoreline Aviation that exceed those required or permitted by Local Rule 26.3(c)(5). In responding to the Requests, Shoreline Aviation will construe the definition of "Blade" to be Fly Blade, Inc. a/k/a Blade Urban Air Mobility, Inc. and "its officers,

directors, employees, partners, corporate parent, subsidiaries or affiliates" in accordance with Local Rule 26.3(c)(5).

**Definition No. 8:** "Supplemental Operating Agreement" means Exhibit B to the Amended Complaint.

**Objection to Definition No. 8**

Shoreline Aviation objects to Definition No. 8 to the extent that it is mischaracterizes Exhibit B to the Amended Complaint as a "Supplemental Operating Agreement."

**Definition No. 10:** "Draft Asset Purchase Agreement" means Exhibit L to the Amended Complaint.

**Objection to Definition No. 10**

Shoreline Aviation objects to Definition No. 10 to the extent that it mischaracterizes Exhibit L to the Amended Complaint as a "Draft Asset Purchase Agreement."

**Definition No. 11:** "Draft Stock Purchase Agreement" means Exhibit J to the Amended Complaint.

**Objection to Definition No. 11**

Shoreline Aviation objects to Definition No. 11 to the extent that it mischaracterizes Exhibit J to the Amended Complaint as a "Draft Stock Purchase Agreement."

**Definition No. 12:** "Void Stock Purchase Agreement" means Exhibit K to the Amended Complaint.

**Objection to Definition No. 12**

Shoreline Aviation objects to Definition No. 12 to the extent that it mischaracterizes Exhibit K to the Amended Complaint as a "Void Stock Purchase Agreement."

**Definition No. 14:** "Stock Purchase Agreement" means the document produced by Blade as BLADE0006408-BLADE0006412.

**Objection to Definition No. 14**

Shoreline Aviation objects to Definition No. 14 to the extent that it mischaracterizes the document produced by Blade as BLADE 0006408 – BLADE 0006412 as a "Stock Purchase Agreement."

**Definition No. 15:**  "Termination Email" means the document produced by Shoreline as SAI000047-48.

**Objection to Definition No. 15**

Shoreline Aviation objects to Definition No. 15 to the extent that it mischaracterizes the document produced by Shoreline Aviation and bearing the Bates stamps SAI000047 and SAI000048 as a "Termination Email."

**Definition No. 16:**  "Booking Arrangement" means a 1993 or 1994 discussion Kelly and Herbst had regarding the latter booking seaplane flights for Shoreline in exchange for commissions.

**Objection to Definition No. 16**

Shoreline Aviation objects to Definition No. 16 to the extent that it (a) mischaracterizes the agreement between Shoreline Aviation and Herbst, SAS, and SAFE and (b) refers to a "1993 or 1994 discussion," which is vague, imprecise, and insufficiently identified.

**Definition No. 17:**  "Confidential Information" means customer information held on computer systems controlled by SAS or the Herbst Defendants.

**Objection to Definition No. 17**

Shoreline Aviation objects to Definition No. 17 to the extent that it mischaracterizes customer information held on computer systems controlled by SAS or the Herbst Defendants and suggests that such information was kept confidential from Shoreline Aviation.

**Definition No. 18:**  "Cape Air Transaction Analyses" means calculations that Shoreline performed regarding what Shoreline and its shareholders would receive before and after taxes in a transaction with Cape Air, and include, but are not limited to, documents produced by Cape Air as HAS0002268 and HAS0002287.

**Objection to Definition No. 18**

Shoreline Aviation objects to Definition No. 18 because it is vague, imprecise, and fails to adequately identify all documents that fall under the definition.

## SPECIFIC OBJECTIONS TO INSTRUCTIONS

**Instruction No. 3:**  If a Request is objected to, the reason for the objection must be stated, with reasonable particularity, in lieu of a response. If any part of a Request is objected to, then a response must be provided for any unobjectionable portion.

### Objection to Instruction No. 3

Shoreline Aviation objects to Instruction No. 3 to the extent that it purports to impose obligations upon Shoreline Aviation that exceed those required or permitted by FRCP 36(a)(5). In objection to any Request, Shoreline Aviation will state the "grounds for objection to a request" in accordance with FRCP 36(a)(5).

**Instruction No. 6:**  The response to each Request shall take into account such information as is within Your custody, possession, or control, or that of Your attorneys, investigators, trustees, employees, experts retained by You or Your attorneys or other representatives and agents, and not merely information within Your personal knowledge.

### Objections to Instruction No. 6

Shoreline Aviation objects to Instruction No. 6 to the extent that it is (a) overbroad, oppressive, and unduly burdensome; (b) not proportional to the needs of the case; and (c) purports to impose obligations upon Shoreline Aviation that exceed those required or permitted by FRCP 36(a)(4). In responding to each Request, Shoreline Aviation will base its response on the information it knows or can readily obtain in accordance with FRCP 36(a)(4).

## SPECIFIC OBJECTIONS AND RESPONSES TO THE REQUESTS

**Request No. 1:**  Admit that Shoreline is not seeking lost profits in this action.

### Objections and Response to Request No. 1

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 1 because the undefined term "lost profits" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 1.

**Request No. 2:**  Admit that Shoreline has not identified any profits it allegedly lost as a result of the Herbst Defendants' conduct.

**Objections and Response to Request No. 2**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 2 because the undefined terms "identified" and "profits" are vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 2.

**Request No. 3:**  Admit that Shoreline was more profitable in 2018 than 2017.

**Objections and Response to Request No. 3**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 3 to the extent that it seeks information that is not relevant to any party's claim or defense in this action and because the undefined term "profitable" is vague, ambiguous, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 3.

**Request No. 4:**  Admit that the Booking Arrangement was never formally memorialized, written or otherwise.

**Objections and Response to Request No. 4**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 4 because the definition of "Booking Arrangement" (a) mischaracterizes the agreement between Shoreline Aviation and Herbst, SAS, and SAFE and (b) refers to a "1993 or 1994 discussion," which is vague, imprecise, and insufficiently identified. Shoreline Aviation further objects to Request No. 4 because the undefined term "formally memorialized" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 4.

**Request No. 5:**  Admit that the Booking Arrangement was for an indefinite period of time.

**Objections and Response to Request No. 5**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 5 because the definition of "Booking Arrangement" (a) mischaracterizes the agreement between Shoreline Aviation and Herbst, SAS, and SAFE and (b) refers to a "1993 or 1994 discussion," which is vague, imprecise, and insufficiently identified. Subject to and without waiving the preceding objections, Shoreline Aviation admits that the booking services agreement between Shoreline Aviation and Herbst, SAS, and SAFE did not specify a termination date.

**Request No. 6:**  Admit that Herbst providing [sic] booking services to Shoreline as an employee of SAS until such time as she began to provide such services as an employee of SAFE.

**Objections and Response to Request No. 6**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 6 because the undefined term "booking services" is vague, ambiguous, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation admits that Herbst provided booking services for Shoreline Aviation's seaplane commuter flights between East Hampton Airport and the 23rd Street Seaplane Base in Manhattan between 1994 and April 2018 but denies the remainder of Request No. 6.

**Request No. 7:**  Admit that Herbst has never had an ownership interest in SAS.

**Objections and Response to Request No. 7**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 7 because the undefined term "ownership interest" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 7.

**Request No. 8:**  Admit that the Town of East Hampton, Shoreline, and SAS entered into the Operating Agreement on or about May 12, 1994.

**Objections and Response to Request No. 8**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No. 8.

**Request No. 9:**  Admit that the Operating Agreement was for a term of one year and was renewed annually for the first few years and every three years in subsequent years.

**Objections and Response to Request No. 9**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No. 9.

**Request No. 10:**  Admit that pursuant to the Operating Agreement, SAS agreed to provide ticketing, check-in, baggage handling, and related customer services to Shoreline.

**Objections and Response to Request No. 10**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No. 10.

**Request No. 11:**  Admit that Shoreline clearly understood and agreed that nothing in the Operating Agreement would be construed to grant or authorize the granting of an exclusive right to Shoreline.

**Objections and Response to Request No. 11**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 11 (a) to the extent that it purports to characterize the provisions of the Operating Agreement and (b) because the undefined term "exclusive right" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 11.

**Request No. 12:**  Admit that the Operating Agreement contained the complete understanding of Shoreline and SAS and could only be modified by a resolution of the Town Board.

**Objections and Response to Request No. 12**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 12 (a) to the extent that it purports to characterize the provisions of the Operating Agreement and (b) because the undefined term "complete understanding" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 12.

**Request No. 13:**  Admit that Shoreline and SAS entered into the Supplemental Operating Agreement on or about July 16, 1996.

**Objections and Response to Request No. 13**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to the definition of "Supplemental Operating Agreement" to the extent that it mischaracterizes Exhibit B to the Amended Complaint. Subject to and without waiving the preceding objections, Shoreline Aviation admits that it entered into an operating agreement with SAS on or about July 16, 1996.

**Request No. 14:**  Admit that Shoreline and SAS agreed in the Supplemental Operating Agreement that SAS would continue providing flight booking services to Shoreline in accordance with the Operating Agreement.

**Objections and Response to Request No. 14**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 14 (a) to the extent that it purports to characterize the provisions of the operating agreement contained in Exhibit B to the Amended Complaint and (b) because the definition of "Supplemental Operating Agreement" mischaracterizes Exhibit B to the Amended Complaint.

Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents

of Request No 14.

**Request No. 15:**  Admit that prior to the filing of this lawsuit Shoreline never stated in written correspondence with the Herbst Defendants that any of the Herbst Defendants had a contract with Shoreline to provide exclusive booking services.

**Objections and Response to Request No. 15**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 15 because the undefined term "exclusive booking services" is vague,

ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections,

Shoreline Aviation denies the contents of Request No. 15.

**Request No. 16:**  Admit that prior to the filing of this lawsuit Shoreline never stated in oral correspondence with the Herbst Defendants that any of the Herbst Defendants had a contract with Shoreline to provide exclusive booking services.

**Objections and Response to Request No. 16**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 16 because the undefined term "exclusive booking services" is vague,

ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections,

Shoreline Aviation denies the contents of Request No. 16.

**Request No. 17:**  Admit that Shoreline worked with booking agents for seaplane commuter flights other than SAS or the Herbst Defendants during the period of 1994 to 2018.

**Objections and Response to Request No. 17**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 17 because the undefined term "seaplane commuter flights" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 17.

**Request No. 18:**  Admit that neither SAS nor any of the Herbst Defendants was the exclusive booking agent for Shoreline's seaplane commuter flights during the period of 1994 to 2018.

**Objections and Response to Request No. 18**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 18 because the undefined term "seaplane commuter flights" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 18.

**Request No. 19:**  Admit that prior to the filing of this lawsuit Shoreline never stated in written correspondence with the Herbst Defendants that it owned the Confidential Information.

**Objections and Response to Request No. 19**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 19 to the extent that the definition of "Confidential Information" mischaracterizes customer information held on computer systems controlled by SAS or the Herbst Defendants and suggests that such information was kept confidential from Shoreline Aviation. Shoreline Aviation further objects to Request No. 19 because the undefined term "owned" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections,

Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge

or information sufficient to enable it to admit or deny the contents of Request No 19.

**Request No. 20:**  Admit that prior to the filing of this lawsuit Shoreline never stated in oral
correspondence with the Herbst Defendants that it owned the Confidential Information.

**Objections and Response to Request No. 20**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 20 to the extent that the definition of "Confidential Information" mischaracterizes

customer information held on computer systems controlled by SAS or the Herbst Defendants and

suggests that such information was kept confidential from Shoreline Aviation. Shoreline

Aviation further objects to Request No. 20 because the undefined term "owned" is vague,

ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections,

Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge

or information sufficient to enable it to admit or deny the contents of Request No 20.

**Request No. 21:**  Admit that prior to the filing of this lawsuit Shoreline never asked the Herbst
Defendants in written correspondence for access to the Confidential Information.

**Objections and Response to Request No. 21**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 21 to the extent that the definition of "Confidential Information" mischaracterizes

customer information held on computer systems controlled by SAS or the Herbst Defendants and

suggests that such information was kept confidential from Shoreline Aviation. Shoreline

Aviation further objects to Request No. 21 because the undefined term "access" is vague,

ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 21.

**Request No. 22**:  Admit that prior to the filing of this lawsuit Shoreline never asked the Herbst Defendants in oral correspondence for access to the Confidential Information.

**Objections and Response to Request No. 22**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 22 to the extent that the definition of "Confidential Information" mischaracterizes customer information held on computer systems controlled by SAS or the Herbst Defendants and suggests that such information was kept confidential from Shoreline Aviation. Shoreline Aviation further objects to Request No. 22 because the undefined term "access" is vague, ambiguous, and otherwise imprecise. Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 22.

**Request No. 23**:  Admit that Shoreline attempted to purchase SAFE's assets, including the Confidential Information, in 2018.

**Objections and Response to Request No. 23**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 23 to the extent that the definition of "Confidential Information" mischaracterizes customer information held on computer systems controlled by SAS or the Herbst Defendants and suggests that such information was kept confidential from Shoreline Aviation. Shoreline

Aviation further objects to Request No. 23 because the undefined term "assets" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation admits that it offered to purchase select assets of SAFE by letter dated April 20, 2018 but denies the remainder of Request No. 23.

**Request No. 24:**  Admit that there is no contract between Shoreline and any of the Herbst Defendants related to the Confidential Information.

**Objections and Response to Request No. 24**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 24 to the extent that the definition of "Confidential Information" mischaracterizes customer information held on computer systems controlled by SAS or the Herbst Defendants and suggests that such information was kept confidential from Shoreline Aviation. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 24.

**Request No. 25:**  Admit that Shoreline publicly displayed its pricing for charter and commuter flights.

**Objections and Response to Request No. 25**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 25 because the undefined term "pricing" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation admits that some of its advertisements contained the price of one-way fares for commuter flights but denies the remainder of Request No. 25.

**Request No. 26**:  Admit that Shoreline publicly advertised its pricing for charter and commuter flights.

**Objections and Response to Request No. 26**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 26 because the undefined term "pricing" is vague, ambiguous, and otherwise imprecise. Subject to and without waiving the preceding objections, Shoreline Aviation admits that some of its advertisements contained the price of one-way fares for commuter flights but denies the remainder of Request No. 26.

**Request No. 27**:  Admit that prior to the filing of this lawsuit Shoreline did not provide Herbst with a copy of the Employee Handbook.

**Objections and Response to Request No. 27**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No 27.

**Request No. 28**:  Admit that Herbst was never an employee of Shoreline.

**Objections and Response to Request No. 28**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No 28.

**Request No. 29**:  Admit that Shoreline created the Cape Air Transaction Analyses.

**Objections and Response to Request No. 29**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 29 because the definition of "Cape Air Transaction Analyses" is vague,

imprecise, and fails to adequately identify all documents that fall under the definition.

Subject to and without waiving the preceding objections, Shoreline Aviation admits that

it created the documents produced by Cape Air as HAS0002268 and HAS0002287 but lacks

knowledge or information sufficient to enable it to admit or deny the remainder of Request No

29.

**Request No. 30:**  Admit that Shoreline did not produce the Cape Air Transaction Analyses in
this action.

**Objections and Response to Request No. 30**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 30 because the definition of "Cape Air Transaction Analyses" is vague,

imprecise, and fails to adequately identify all documents that fall under the definition.

Subject to and without waiving the preceding objections, Shoreline Aviation admits that

it did not produce in this action the documents produced by Cape Air as HAS0002268 and

HAS0002287 but lacks knowledge or information sufficient to enable it to admit or deny the

remainder of Request No 30.

**Request No. 31:**  Admit that Shoreline has not produced any documents showing what it
received net of taxes from the Cape Air transaction.

**Objections and Response to Request No. 31**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 31 to the extent that the definition of "Shoreline" includes Shoreline Aviation's officers and employees, causing the request to be compound, vague, ambiguous, and otherwise imprecise. In responding to this request, Shoreline Aviation will assume that "Shoreline" refers only to the corporate entity. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No 31.

**Request No. 32:** Admit that Shoreline has not produced any documents showing how much in taxes it paid on income it received from the Cape Air transaction.

**Objections and Response to Request No. 32**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 32 to the extent that the definition of "Shoreline" includes Shoreline Aviation's officers and employees, causing the request to be compound, vague, ambiguous, and otherwise imprecise. In responding to this request, Shoreline Aviation will assume that "Shoreline" refers only to the corporate entity. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No 32.

**Request No. 33:** Admit that Shoreline has not produced any documents showing how much in taxes Kelly paid on income received from Cape Air.

**Objections and Response to Request No. 33**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 33 because it seeks information that is not relevant to any party's claim or

defense in this action. Subject to and without waiving the preceding objections, Shoreline

Aviation admits the contents of Request No 33.

**Request No. 34:**  Admit that Shoreline has not produced any documents showing how much in taxes Collingswood [sic] paid on income received from Cape Air.

**Objections and Response to Request No. 34**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 34 because it seeks information that is not relevant to any party's claim or

defense in this action. Subject to and without waiving the preceding objections, Shoreline

Aviation admits the contents of Request No 34.

**Request No. 35:**  Admit that prior to this litigation, Shoreline did not disclose to the Herbst Defendants the existence of a 2018 letter of intent concerning a merger with Cape Air.

**Objections and Response to Request No. 35**

Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects

to Request No. 35 because it seeks information that is not relevant to any party's claim or

defense in this action. Subject to and without waiving the preceding objections, Shoreline

Aviation admits that, prior to this litigation, Andrea Collingwood did not disclose to the Herbst

Defendants the existence of a 2018 letter of intent concerning a merger with Cape Air, but, after

reasonable inquiry, Shoreline Aviation lacks knowledge or information sufficient to enable it to

admit or deny the remainder of Request No 35.

**Request No. 36:**  Admit that Cape Air made the decision to close Shoreline's seaplane operations.

**Objections and Response to Request No. 36**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No 36.

**Request No. 37:**  Admit that Cape Air made the decision to close Shoreline's seaplane operations because it was unable to get approval for a seaplane route between Boston and New York.

**Objections and Response to Request No. 37**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits that Mike Migliore of Cape Air testified in a deposition in this action that Cape Air shut down its seaplane operations based in part on Cape Air's inability to get approval for a seaplane route between Boston and New York, but Shoreline Aviation lacks knowledge or information, after reasonable inquiry, sufficient to enable it to admit or deny the remainder of Request No 37. Specifically, Shoreline Aviation lacks knowledge or information regarding whether Cape Air's inability to get approval for the seaplane route was the sole reason for its decision to close its seaplane operations.

**Request No. 38:**  Admit that Shoreline sent the Termination Email to its customers on either May 6, 2018 or May 7, 2018.

**Objections and Response to Request No. 38**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to objects to Request No. 38 to the extent that it mischaracterizes the document produced by

Shoreline Aviation and bearing the Bates stamps SAI000047 and SAI000048 as a "Termination Email."

Subject to and without waiving the preceding objections, Shoreline Aviation admits that it sent a letter and customer contact form, produced by Shoreline Aviation and bearing the Bates stamps SAI000047 and SAI000048, to its customers on May 7, 2018.

**Request No. 39:**  Admit that Shoreline provided the Herbst Defendants with no notice before it sent the Termination Email to its customers.

**Objections and Response to Request No. 39**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to objects to Request No. 39 to the extent that it mischaracterizes the document produced by Shoreline Aviation and bearing the Bates stamps SAI000047 and SAI000048 as a "Termination Email."

Subject to and without waiving the preceding objections, Shoreline Aviation admits that it did not notify the Herbst Defendants that it would be sending the letter and customer contact form, produced by Shoreline Aviation and bearing the Bates stamps SAI000047 and SAI000048, to its customers on May 7, 2018 prior to sending, but Shoreline Aviation denies that the Herbst Defendants had no prior notice of their unilateral decision to stop booking Shoreline Aviation flights.

**Request No. 40:**  Admit that the Herbst Defendants did not book any customers for Blade prior to May 7, 2018.

**Objections and Response to Request No. 40**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No. 40.

**Request No. 41:**  Admit that SAFE and Herbst executed the Asset Purchase Agreement with Blade on or about May 17, 2018.

**Objections and Response to Request No. 41**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No. 41.

**Request No. 42:**  Admit that SAFE and Herbst executed the Consulting Agreement with Blade on or about May 17, 2018.

**Objections and Response to Request No. 42**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 42 because the undefined term "Consulting Agreement" is vague, ambiguous, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation admits that SAFE and Herbst executed a consulting agreement with Blade, produced by Blade and bearing the Bates stamps BLADE 0000652 through BLADE 0000656, on or about May 17, 2018, but lacks knowledge or information sufficient to enable Shoreline Aviation to admit or deny the contents of Request No 42 to the extent it is referring to another "Consulting Agreement."

**Request No. 43:**  Admit that the Draft Asset Purchase Agreement was not executed by all of the parties.

**Objections and Response to Request No. 43**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 43 because it mischaracterizes Exhibit L to the Amended Complaint as a "Draft Asset Purchase Agreement." Shoreline Aviation further objects to Request No. 43 because the undefined term "parties" is vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation responds that, after reasonable inquiry, Shoreline Aviation lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 43.

**Request No. 44**:  Admit that the Draft Consulting Agreement was not executed by all of the parties.

**Objections and Response to Request No. 44**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 44 because the undefined terms "Draft Consulting Agreement" and "parties" are vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation responds that it lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 44.

**Request No. 45**:  Admit that the Void Stock Purchase Agreement was not executed by all of the parties.

**Objections and Response to Request No. 45**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Shoreline Aviation further objects to Request No. 45 because it mischaracterizes Exhibit K to the Amended Complaint as a "Void Stock Purchase Agreement." Shoreline Aviation further objects to Request No. 45 because the undefined term "parties" is vague, ambiguous, confusing, and otherwise imprecise.

Subject to and without waiving the preceding objections, Shoreline Aviation responds that, after reasonable inquiry, it lacks knowledge or information sufficient to enable it to admit or deny the contents of Request No 45.

**Request No. 46:** Admit that for the $65,522 that Shoreline claims Herbst and SAFE received in unearned commissions for tickets SAFE sold, Shoreline received $655,220 from customers for those tickets.

**Objections and Response to Request No. 46**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation admits the contents of Request No 46.

**Request No. 47:** Admit that the document produced by Cape Air as HAS0002268-2309 is a true and correct copy of an email dated July 19, 2021 and its attachments that Mike Migliore sent to Eric Magnuson and Stephen Patterson.

**Objections and Response to Request No. 47**

Shoreline Aviation incorporates by reference its General Objections and Specific Objections to Definitions and Instructions as set forth above. Subject to and without waiving the preceding objections, Shoreline Aviation denies the contents of Request No 47.

**Request No. 48:** Admit that the document produced by Cape Air as HAS0002268 is a true and correct copy of an Excel spreadsheet created by Shoreline.

**Objections and Response to Request No. 48**

      Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Subject to and without waiving the

preceding objections, Shoreline Aviation admits the contents of Request No 48.

**Request No. 49:**  Admit that the document produced by Cape Air as HAS0002287 is a true and correct copy of an Excel spreadsheet created by Shoreline.

**Objections and Response to Request No. 49**

      Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Subject to and without waiving the

preceding objections, Shoreline Aviation admits the contents of Request No 49.

**Request No. 50:**  Admit that the document produced by Blade as BLADE0006400-BLADE0006412 is a true and correct copy of an email May 18, 2018 [sic] and its attachments that Kathleen McCormack sent to Evan Licht, copying Melissa Tomkiel, Rob Wiesenthal, and Sean Grennan.

**Objections and Response to Request No. 50**

      Shoreline Aviation incorporates by reference its General Objections and Specific

Objections to Definitions and Instructions as set forth above. Subject to and without waiving the

preceding objections, Shoreline Aviation responds that, after reasonable inquiry, Shoreline

Aviation lacks knowledge or information sufficient to enable it to admit or deny the contents of

Request No 50.

Dated:  May 31, 2022

                        KRIEGSMAN PC

          By:    */s/  Alex Kriegsman*
                  Alex Kriegsman

279 Main Street
Sag Harbor, NY 11963
(631) 899-4826
(631) 919-5182 (fax)
alex@kriegsmanpc.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I, Alex Kriegsman, certify under penalty of perjury under the laws of the United States that, on May 31, 2022, a copy of the foregoing Plaintiff's Objections and Responses to Defendants Cynthia L. Herbst, Sound Aircraft Flight Enterprises, Inc., and Ryan F. Pilla's Requests for Admission was sent via electronic mail and first-class mail, postage prepaid, to counsel for Defendants Cynthia L. Herbst, Sound Aircraft Flight Enterprises, Inc., and Ryan F. Pilla:

>      Lindsey R. Skibell (rskibell@glennagre.com)
>      Jewel K. Tewiah (jtewiah@glennagre.com)
>      Glenn Agre Bergman & Fuentes LLP
>      55 Hudson Yards, 20th Floor
>      New York, NY 10001

Dated:  May 31, 2022

>                                   /s/  Alex Kriegsman
>                                   Alex Kriegsman