# EXHIBIT 10

In the past Shoreline Aviation has allowed Sound Aircraft Services to retain 10% of all commuter sales, both prepaid and POS. This is a departure from our standard procedure of only allowing commission on the Flight Charges, net of Landing Fees, Taxes and other expenses (Launch service, etc.). We have also allowed Sound to collect 3.5% on all Credit Card transactions, a fee to which no other broker is entitled.

For this 13.5% of the gross, we have received an array of services which have included Commuter Reservations, charter bookings and fee collections, along with the preparation of flight manifests, check in services, baggage handling and expedited fueling for all our flights into and out of East Hampton.

In turn, we have promoted Sound Aircraft Services in all our marketing, featuring your telephone number and contact information in our advertising, and granting you exclusive rights to book seats on our commuter flights. We even pay you a full commission on commuter seats booked internally for our aircraft owners and regular clients.

As a result of events of the past year which are totally unrelated to our operations, we find ourselves dealing with two separate entities, neither of which is providing service to the level that we have experienced in the past. In addition, we are being assessed a ramp fee of $50.00 per landing when we don't buy fuel. I know you don't see that the ramp fee is part of your problem, but in fact, the FBO personnel are an important part of the service equation, providing communications, passenger and baggage handling and aircraft support services. This was all included in the prior fee structure.

My initial suggestion was that we restructure the commission to adjust for the FET and landing fee costs, paying commission on the net flight charges. This was somewhat complicated due to the different pricing levels, and, as you were quick to point out could amount to as much as $25,000 shift in income over the course of the season. Your argument against this is that you were planning on that income. I understand that. Conversely, I was counting on a specific expense structure based on my past relationship with Sound Aircraft Services.

As a compromise, I am willing to grant you the full 10% commission on the prepaid commuter books (you have continued to take the full commission on the retail sales) if you are willing to absorb the ramp fees I am being charged so that my fee structure remains the same. This will come out to significantly less cost to you than restructuring the commission.

For example, during the period from 5/23 through 7/17 We would pay Sound Aircraft Flight Enterprises a full commission on 528 tickets at $53.50 ($28,248.00) and 152 tickets at $56.50 ($8,588.00) for a total of $36,836.00, less a deduction of $6,400.00 for ramp fees assessed during the same period. If this is acceptable to you, I will cut you a check for $30,436.00 for commission through 7/17. WE cn settle weekly from then on.

After consulting with Stan Mickett, I have agreed to deduct 16 hours of labor ($1,520.00) from the bill for the Annual Inspection, Wing Bolt AD, and Engine change. I know this was a large bill, but it encompassed three expensive events that, from a budgeting prospective, perhaps should not have been done all at once. We bent over backwards to get this airplane done and out in close to the required time and your lack of appreciation has been duly noted. I think perhaps after the season you should find another place to do your maintenance if you haven't managed to sell your business by then.

**Shoreline <sadispatch@aol.com>**  Jan 7

to me

I think Sound has imploded.

Sent from my iPhone

> On Jan 5, 2018, at 4:36 PM, Cindy Herbst <cindy@soundaircraft.com> wrote:
>
> Hi Joan! Happy New Year!
>
> I just want to let you know that for January and February. You can always reach me on my cell or via email if necessary.
>
> Thank you!
>
> Cindy

**John Kelly <jkelly@shorelineaviation.com>**  Jan 7

to Shoreline

No. Probably her playboy boyfriend with the cars and the jet has taken her away for the winter. Eduardo must be running the show! Hopefully Maureen is still around.

Sent from my iPhone

**Shoreline <sadispatch@aol.com>**  Jan 7

to me

I heard a rumor that Eduardo and Katherine are gone. Just Maureen and Cindy now.

Sent from my iPhone

**John Kelly <jkelly@shorelineaviation.com>**  Jan 7

SAI000035

to Eric, me

Hi John,

We have been in the process of developing a new custom reservation program for 2018.
The same software developer that wrote the original program is writing this program as well. It will have some great new bells and whistles.

I'll keep you posted on the progress.

I hope your somewhere warm!

Enjoy!

### ohn Kelly <jkelly@shorelineaviation.com>

Mar 20

to Melanie, info

Good afternoon,

If you are looking for seats on our NYC - Hamptons commuter service, they are booked through Sound Aircraft Services in East Hampton. I will forwarded your request to them. If you are looking for private charter service between NYC and the Hamptons, you can send us your dates about a week in advance and we can schedule them for you.

Best regards,

John Kelly
Shoreline Aviation

### John Kelly <jkelly@shorelineaviation.com>

Mar 20

to Cindy

### Joan Gitlin <joan@shorelineaviation.com>

Apr 6

to Cindy, Karen, General

Hello Karen,

The only scheduled flights we offer on a per seat basis are in and out of East Hampton Airport.

If you are looking for returns back to East 23rd Street and the East River in NYC, we run the Commuters from East Hampton Airport on Sunday afternoons at 4:30 and 6:30pm, and Monday mornings at 7:30 and 9:15am. We also can add an 11:00am return if there is a demand for it.

The cost per seat is $675.

Eric Weaver, Chief Pilot
Shoreline Aviation, Inc.
Meeting Notes

4/6 Meeting with Blade, Cindy Tuma, Melissa Tomkiel, Ryan Pilla and Rob W

Meeting took place at FOK conference room

Meeting opened with Melissa pandering to John's ego to which John responded to the effect "It's getting deep in here"

Ryan followed those comments with the goal of this is to "Make things better" for everyone especially Cindy. She "Works too much". Etc.

The first topic discussed is that Blade would not require SAI to brand its aircraft as Blade contractors. There was discussion about why and that it was a deal-breaker if that was a requirement. Ryan informed us, during the meeting, that he had prearranged that.

Rob and Melissia went on to explain that they want to purchase all the lift that SAI has to offer at a price to be negotiated then they threw out a number between $2000 and 2400.00 per round trip from HTO – 6N7 and it's inverse. There was a long discussion about these numbers with John not committing anything but to think about it.

Rob offered that this was a solution to all our problems that they (Blade) would handle all the interaction with commuter and charter customers. He said that they were going to handle how to compensate Cindy and we would not be responsible for that. It had not been determined that if it was a commission or if she was to become an employee of Blade.

There was discussion about SAI's longtime customers that have been flying with SAI before Sound or Blade existed. During the course of this discussion John discussed openly that SAI has been paying SAFS a commission on customers getting off at HTO, both commuter and charter, that book directly with our staff or through Sound. The discussion involved into what was the expectation of Blade/SAFS with customers that book directly with SAI staff. There was no conclusion or agreement. Part of that conversation involved that John felt that he had been paying commissions for charter and commuter clients that were not being handled by SAFS.

John informed the company present that SAI had made significant investments into our own online booking portal to which Cindy would have access to book and manage passengers. Ryan then stated that Cindy had also made some investments into software. It was unclear if this was with Blade or another independent system. John communicated that there was no desire to change the commission arrangement with SAFS even if customers booked on the SAI hosted system.

There was a discussion that the commission unlike the past when SAFS and SAS were one and the same where ramp fees were not charged to SAI and since the split of the companies that SAI was now paying both commissions and ramp fees. The discussion broadened to how would Blade and SAFS would handle the ramp fees and who was responsible. It also was discussed the collection of FET and other applicable taxes and how they would be handled and who would be paying and filing. There was no resolution.

There was a long and somewhat contentious discussion about Melissa's position as Blade Aqua's President/Legal Counsel and her position as a shareholder in one of SAI direct competitors Fly the Whale/Lima Corp a part 135 certificate holder. We were told by her that her position as a minority shareholder had no impact on the amount of business that Blade would direct to SAI. We did not agree with her conclusion and were reaffirmed when they informed us that Fly the Whale/Lima Corp had recently acquired a S-76 from a Blade acquired investor and placed on the Lima Corp certificate.

There was a copious amount of Rob, Melissa and Ryan selling us on how much more money we could make. Our response was that at the number they are proposing that we would fly more for the same or less money.

It was discussed at length about the presold "commuter books" that Cindy had sold on the behalf of Shoreline. It was discussed that those customers had already directly paid Shoreline and the Shoreline had already paid a commission on those pre-sold tickets. There was an assurance from Rob and Melissa that they would "Work it out with Cindy" and that it was "Not SAI's problem".

It was expressed that the level of service the prior year had not been what SAI was used to. Customers were complaining and a general level of disorganization at SAFS. There were assurances that Blade and SAFS staff would be collectively working to handle the passengers and check-in.


Conclusions that were discussed in private after the meeting:

It appeared that the deal with Blade was already in progress and that we were just invited over to be informed of the new status quo.

We had a secondary possibility that if the merger/operating agreement with SAFS had not been codified that since we had no desire to work for Blade that SAI make an attempt to purchase SAFS.

There was also a discussion that SAFS was going to sell out to Blade regardless of our decision taking both her and our customer list. (Which we assume have overlap) it was unclear to us who was only on our list but we were sure that she held our entire list of customers because

she and SAFS had been doing our booking for many years. We also had been promoting her phone number in most of the marketing for many years.

There was a lot of discussion post meeting as to what the motives, advantages and disadvantages would be. I did not record these

How would we recover the pre-paid commissions from customers that paid us for commuter books?

Main takeaway from the meeting was that we were being strong-armed into working with a booking agent that we did not want to work with. Particularly since Blade's leadership and one of the other operators shared a mutual owner/officer.

One of the primary questions was how we could solve Cindy's problems as identified by Ryan: Works too much. Not enough time for family, etc. QOL issues.
  One of the solutions that we discussed was that Shoreline should acquire SAFS. There was a long discussion about how to value her assets, IP and good will. No conclusion was reached.

SAI000039

4/11/2018

Cindy Herbst

Sound Aircraft Flight Enterprises

Blade:

After speaking to several operators that have worked with Blade over the last two or three years, we have found no one that has been satisfied with their experience.

Blade's offer at our recent meeting was for approximately $3,000 per trip out of which we would have to pay the landing fees/ ramp fees of about $400 per trip, leaving us a net of $2600 per trip. Gross revenues for a full commuter flight (8 passengers) at $675.00 is $5,400. Using last year's retail rate of $595.00, the gross was $4,760. For charter services, at last year's rate of $3695, after deducting Sound's commission, FET, CC Fees and landing fees, Shoreline netted $2,620. In other words, Blade is willing to match the net price on the least profitable trips we did at last years prices, for all the trips we do for them for the coming year.

As we mentioned in our meeting, when using a managed airplane, our cost (lease fee to the owner and pilot pay) for a single trip is $2,500. Even if we do four trips in the same day using a managed airplane, the cost per trip still averages about $2,200. Not much of a profit margin to play with there.

In addition, once they have established themselves with our customers and adapted them to their booking system Blade would have no incentive to continue to work with either Sound or Shoreline. Their profitability, built on our activity, history and reputation would allow them to buy, or convince investors to buy additional airplanes and helicopters to put on the Lima certificate to replace our aircraft and drive us out of business. We would essentially be giving our business to our competition. This would not be good business at any price.

Likewise, once the bulk of the Sound contact list was converted to Blade's marketing platform, there would be no need for Sound's services. At that point, any contract you might have with them is only valuable in that it gives you the right to sue them when they fail to honor their commitments. I thought by now you would have had enough of lawsuits.

Status Quo:

For twenty-four years we have operated under an arrangement where Sound Aircraft was the exclusive agent for Shoreline Aviation's seaplane commuter services and Shoreline Aviation was the exclusive operator for Sound's seaplane customers. We have paid Sound a commission for every commuter passenger carried through East Hampton or Shelter island regardless of whether the booking came through your offices or not. Although this has been a successful agreement for many years, it seems to us that you are not interested in maintaining the status quo for the coming season. You have asked us, instead, to work with Blade, which we consider to be a competitor. Our second letter for advance-purchase coupons has yet to go out. Everything seems to be on hold for the moment, awaiting our answer on Blade. I can understand that you might not want to go through another season like the last one. It was frustrating for all of us.

Offer to Purchase:

Shoreline is wiling to purchase some of the Assets of Sound Aircraft Flight Enterprises. Our offer is this:

As part of the purchase, we would take over your lease of the offices at the East Hampton Airport Terminal, and be responsible for negotiating any lease extension, renewals, etc. The purchase would include all the equipment (furniture, fixtures, telephones, computers and other electronic equipment) contained within those offices, except for personal property. The purchase would include all customer lists, contact information, booking records and accounting records for the charter and seaplane booking segment of your business for the last 5 years. At our sole discretion, we would offer to employ any staff member that might be interested in continuing to work for Shoreline.

We would require a non-compete agreement which would restrict you from owning, operating or serving as an employee or agent for any company involved in seaplane charter or commuter operations for a period of 3 years. You would agree not to release your customer list to any other person or business entity.

This offer does not include any of the aircraft or the flight school operations. We would like to continue to accommodate Richard Schaps and his airplane for parking and access through the north ramp, if possible.

Terms:

$375,000 paid over 3 years at 3.5% interest. The $65,000 in coupon book commissions paid to Sound (but not yet earned) in 2018 would serve as a down payment. The balance of $310,000 would be paid in 36 equal installments of $9,084 per month.

We could have an agreement drawn up and executed within 15 to 30 days.

SAI000041

April 20th, 2018

Cindy Herbst

Sound Aircraft Flight Enterprises

Daniels Hole Road,

East Hampton, New York

Delivered by E-mail.

Offer to Purchase:

Shoreline Aviation, Inc. hereby offers to purchase select Assets of Sound Aircraft Flight Enterprises.

We offer to buy the charter reservations, booking and handling services that you have been providing to us and to other operators over the past several years. This would include your lease of the offices at the East Hampton Airport Terminal. We would be responsible for negotiating any lease extension, renewals, etc. The purchase would include all the equipment (furniture, fixtures, telephones, telephone numbers, computers and other electronic equipment) contained within those offices, all customer lists, contact information, booking records and accounting records for the charter and seaplane booking segment of your business for the last 5 years. Personal property would be excepted. At our sole discretion, we would offer to employ any staff member that might be interested in continuing to work for Shoreline.

We would require a non-compete agreement which would restrict you from owning, operating or serving as an employee or agent for any company involved in seaplane charter or commuter operations for a period of 3 years. You would agree not to release your customer list to any other person or business entity.

This offer does not include any of the aircraft or flight school operations. We would like to continue to accommodate one of our Management Clients and his airplane for parking and access through the north ramp, if possible.

Terms:

$375,000 paid over 3 years at 3.5% interest. The ~ $65,000 in coupon book commissions paid to Sound (but not yet earned) in 2018 would serve as a down payment. The balance of ~ $310,000 would be paid in 36 equal installments of ~ $9,084 per month.

We could have an agreement drawn up and executed in a matter of days.

This offer expires at 5pm EDT Wednesday, April 26th, 2018.


Sincerely,


John D. Kelly, President

## Offer
Inbox x

John Kelly <jkelly@shorelineaviation.com>                              Apr 23

to Cindy

Hi Cindy;

Attached is our offer as presented on April 16th. I have tried to reach you on several occasions to follow up and Ryan has left a few messages for me, but my call backs have gone unanswered.

As you know, we are already at a point in the season where, according to our longstanding exclusive agreement, you should be booking passengers, yet Eduardo, in your office, says he has not been authorized to do so. In addition, the second Coupon Book letter which was to go out in early April has yet to be sent. Shoreline Aviation has sent Sound Aircraft Flight Enterprises more than $65,000 in advance commissions for customer booking and handling for the 2018 season. If you are not going to book our passengers, please send me formal notification of that fact and refund these commissions. Your delay in implementing the processes that have been in place for more than 20 years has caused irreparable harm to both our companies.

Please review the attached offer and give me your decision as to whether or not you have any interest in proceeding with this. If I do not here from you by 5 pm EDT on Wednesday, April 25, 2018, the offer will be withdrawn and we will take appropriate legal action to protect our interests.

Attachments area

**shorelineaviation**

John Kelly <jkelly@shorelineaviation.com>

## Offer
8 messages

---

**John Kelly** <jkelly@shoreline aviation.com>       Mon, Apr 23, 2018 at 1:06 PM
To: Cindy Herbst <cindy@soundaircraft.com>

Hi Cindy;

Attached is our offer as presented on April 16th. I have tried to reach you on several occasions to follow up and Ryan has left a few messages for me, but my call backs have gone unanswered.

As you know, we are already at a point in the season where, according to our longstanding exclusive agreement, you should be booking passengers, yet Eduardo, in your office, says he has not been authorized to do so. In addition, the second Coupon Book letter which was to go out in early April has yet to be sent. Shoreline Aviation has sent Sound Aircraft Flight Enterprises more than $65,000 in advance commissions for customer booking and handling for the 2018 season. If you are not going to book our passengers, please send me formal notification of that fact and refund these commissions. Your delay in implementing the processes that have been in place for more than 20 years has caused irreparable harm to both our companies.

Please review the attached offer and give me your decision as to whether or not you have any interest in proceeding with this. If I do not here from you by 5 pm EDT on Wednesday, April 25, 2018, the offer will be withdrawn and we will take appropriate legal action to protect our interests.

--
John D. Kelly
President
Shoreline Aviation, Inc.
office: 203-267-1818
dispatch: 800-468-8639
cell: 203-215-9028

  **Sound offer 04202018.docx**
20K

---

**John Kelly** <jkelly@shorelineaviation.com>      Thu, May 17, 2018 at 11:38 AM
To: dtopper@generalatlantic.com

Dear Mr. Topper,

Thank you for your patience. I agree with your assessment that "someone is being very dishonest with their customer base." I also understand that it is difficult to sift through the contradictory information for the truth. Sound's recent announcement, that they are now booking with Blade and that this will provide a superior service to their previous arrangement, is filled with half-truths and misrepresentations that I would be happy to address at another time. I think it is more important that you understand how we got to this point. Please understand that Sound Aircraft Services, with whom we have worked for more than twenty years, is not the same "Sound" that you dealt with last year or this year. Sound Aircraft Flight Enterprises, Cindy's company, has only been providing the booking services since last year. When "Sound" split into two parts, long time employees such as Mike and Evan, stayed with the original company, and Cindy had to find new employees who did not have the experience or the training required to do the job. This was problematic last year, and clearly Cindy understood that it would continue to be problematic this year. Thus the appeal of having Blade take over the booking services. There are many reasons why we refuse to work with Blade, not the least of which is the economic impact. Blade spends the money it takes from its operators on lounges, cocktails and attractive CX (custom experience) representatives. We prefer to spend that money on maintenance, training and staff salaries. For Blade, the customer experience begins when you get to the airport, heliport or seaplane base and ends when you get on your helicopter or airplane to go to your destination. For Shoreline, the customer experience begins when you get on your aircraft and we take you safely to your destination. With Blade, you may be placed on a seaplane operated by any one of three seaplane operators, one of which was the operator that had the incident in the East River las year, and another of which only comes up to New York from Florida for July and August, with pilots who are qualified in the aircraft but have no operating

SAI000044

experience in the East River, NYC Airspace or Northern coastal weather. We have been doing this for 38 years and many of our pilots have 10 or more years experience in the river.

To help you assess who is dishonest and who is telling the truth, I have forwarded you just one of the many conversations we had with Cindy and her "boyfriend" Ryan ( I am not being catty here, he introduces himself as "Cindy's boyfriend"). I would appreciate it if you would treat this as confidential information as we would not want the terms of the deal we offered to become common knowledge.

Please let me know if you have any further questions.

Best Regards,


John D. Kelly
President
[Quoted text hidden]

---

**Sound offer 04202018.docx**
20K

---

**David Topper** <DTopper@generalatlantic.com>                                    Thu, May 17, 2018 at 12:00 PM
To: John Kelly <jkelly@shorelineaviation.com>


Thanks for the response and explanation. Is it true to say that nobody who wrote a check to Shoreline for 2018 ticket books is or will be receiving a refund?

[Quoted text hidden]

---

This e-mail (including all attachments) is confidential and may be privileged.
It is for the exclusive use of the addressee only. If you are not the addressee,
you are hereby notified that any dissemination of this communication is strictly
prohibited. If you have received this communication in error, please erase all
copies of the message and its attachments and notify us immediately at
help@generalatlantic.com. Thank You.

---

**John Kelly** <jkelly@shorelineaviation.com>                                      Thu, May 17, 2018 at 2:32 PM
To: David Topper <DTopper@generalatlantic.com>

Those tickets were sold by Shoreline with the understanding that they are non-refundable and had to be used during the 2018 season. We have frequently offered extensions to the following season under certain circumstances such as a change in job or housing requirements that kept a customer away from East Hampton area for a season. We have never been asked to, nor have we had to issue a refund.

Sent from my iPhone
[Quoted text hidden]

---

**David Topper** <DTopper@generalatlantic.com>                                    Thu, May 17, 2018 at 3:26 PM
To: John Kelly <jkelly@shorelineaviation.com>

I specifically asking about this year and whether any of the customers who bought tickets in December and are upset about what's gone on between Shoreline and Sound have asked for and received refunds since the recent letters went out

Sent from my iPhone

David Topper
General Atlantic
(212) 715-4022

SAI000045

[Quoted text hidden]

---

**John Kelly** <jkelly@shorelineaviation.com>      Thu, May 17, 2018 at 3:40 PM
To: David Topper <DTopper@generalatlantic.com>

The answer is still no. We have not issued any refunds. While some people have mentioned that they were told by Cindy to ask for refunds, after hearing our side of the story, everyone has booked their dates as before. No one has actually asked for a refund and several customers have purchased addition discount ticket books.

Sent from my iPhone
[Quoted text hidden]

---

**David Topper** <DTopper@generalatlantic.com>      Thu, May 17, 2018 at 3:43 PM
To: John Kelly <jkelly@shorelineaviation.com>

Will you have as many planes going each day as last year? Typically last year each time slot on Thursdays had 2-3 planes

[Quoted text hidden]
[Quoted text hidden]

---

**John Kelly** <jkelly@shorelineaviation.com>      Thu, May 17, 2018 at 3:46 PM
To: David Topper <DTopper@generalatlantic.com>

We operate ten aircraft, thee of which are committed to the commuters for the entire season. On many flights we will have five or more aircraft dedicated to the commuters as demand dictates.
Sent from my iPhone
[Quoted text hidden]

SAI000046



*Sent 5/6/18*

Dear Shoreline Aviation Customer,

Beginning May 1st 2018, our seaplane commuter and charter customers will be able to book directly with Shoreline Aviation, using our website, email, or toll free 800 number.

Check-in for flights at 23rd Street Seaplane Base will be at the Shoreline Aviation Kiosk, located inside NY Skyport's building. At East Hampton, check-in staff will be at the Sound Aircraft Services booth located in the main terminal.

You will be able to book your "commuter" flights between New York City and East Hampton directly on our Website at **shorelineaviation.com** or **flysai.com**. Like many airline websites, you simply go on, select your flight, and enter your name and credit card information. Frequent flyers will be able to save their information on a secure portal which will eliminate the need to re-enter user information on subsequent log-ins.

You may also request information on charter bookings and commuter seats by emailing us at either **dispatch@flysai.com** or **info@flysai.com**. If you prefer to continue to speak to a real person to book your flights, you may call us at **800-468-8639**.

Customers who "Like" us and follow us on Facebook or Instagram, will be able to receive up-to-the-minute information on seat availability and last-minute discounts.

Shoreline Aviation will continue to offer one-way flights between 23rd Street and East Hampton Airport on Thursdays and Fridays at 1:00, 3:00, 5:00, and 7:00 p.m. On Sundays our one-way flights from East Hampton to 23rd Street will operate at 4:30 and 6:30 p.m. Monday morning flights between East Hampton and 23rd Street will operate at 7:30 and 9:15 a.m. We will also offer regular weekend service to Shelter Island (Sunset Beach) and Montauk. Other flights may be added subject to customer requests. Watch our website for new services to Cape Cod, Provincetown, Martha's Vineyard, Nantucket and other great destinations in New York and New England.

As we've done in the past, we are offering our loyal customers **Commuter Books** of **10 one-way tickets at a cost of $5,950**, an $800 savings over the single seat price of $675. To take advantage of this offer please contact us by email or by phone. This offer expires on May 31st.

Kindly return the enclosed contact form so that we may keep you informed by text or email of upcoming schedule additions, up-to-date flight information, and any last-minute seat availability. We thank you for flying with Shoreline Aviation and look forward to seeing you this summer season.

Sincerely,


John D. Kelly
President

SAI000047

# CUSTOMER CONTACT FORM

Lead Passenger Name: _____

Other frequent flyers: _____

_____

_____

Lead Passenger Cell Phone: _____

Booking Contact Name: _____

Contact Telephone: _____

Contact Cell Phone: _____

Contact E-Mail Address: _____

Street Address: _____

_____

_____

**Terms and Conditions**: All confirmed reservations for shared-charter (commuter) seats become non-refundable 48 hours prior to the scheduled departure time. All cancellations and/or flight changes are subject to a $75.00 cancellation/re-booking fee when made prior to 48 hours before the scheduled departure time.

All confirmed reservations for charter flights become non-refundable 48 hours prior to the scheduled departure time.

On commuter flights the baggage limitation is 20 pounds per person. No golf clubs or other oversized items are permitted. All animals must be in a carrier for the entire flight. Infants or children under the age of two must have their own seats, with passenger-provided car seats if necessary. Infants in carriers attached to the body of a parent are permitted.

On charter flights, please inform us in advance of any oversized or non-standard luggage (including golf clubs).

A credit card or other method of confirmed payment is required for all bookings. Please contact our customer service representative at **dispatch@flysai.com** to arrange payment.

Shoreline Aviation is a non-carrier of Hazardous Materials. Some everyday products can be dangerous when carried in your luggage. Carriage of prohibited items may result in in fines or in certain cases imprisonment. Please ensure there are no forbidden hazardous materials in your baggage. If you have any questions concerning what qualifies as Hazardous Materials, please call us at **800-468-8639**.



Seaplane Services
Hangar 3 • 60 Thompson Avenue • East Haven, CT 06512

SAI000048

# Shoreline Aviation, Inc.
## Seaplane Services

May 14th, 2018

Cindy Herbst
Sound Aircraft Flight Enterprises
East Hampton Airport
East Hampton, NY.

Dear Cindy;

It has come to our attention that you are spreading inaccurate and accusatory information regarding the circumstances that led up to our decision to stop working with you and your organization. However you may choose to spin it, understand that this was solely a result of your failure to meet your obligations to book passengers wishing to use our services, and, most egregiously, your failure to service the customers that had already bought tickets from Shoreline Aviation through your agency.

At the beginning of April when you should have been booking passengers and sending out our Spring Discount offer, you asked us to meet with you and Blade to discuss a proposal from Blade for us all to do business together. We agreed to attend the meeting in Westhampton on April 6th, based on assurances you gave us concerning revenue and logistical issues which turned out to be inaccurate. The proposed deal would have given Blade control over the customer lists, the booking process, control over all of Shoreline's commuter inventory (purchased at about 70 cents on the dollar) and left you free to walk away with whatever compensation Blade had agreed to pay you, which was not divulged in the meeting. We declined to work with Blade and gave you notice that if you chose to proceed with that deal, we would not be a part of it.

We were willing to continue working as we had in the past. We offered you access to a dedicated booking portal to help process passengers and manage inventory more efficiently. We guaranteed you a commission for every passenger that got on or off a commuter in East Hampton, regardless of how they were booked, but you never even responded to that offer.

After some discussion we offered to take over your lease for the space at East Hampton, buy your reservations and booking system and all the hard assets associated with that office, and offer employment to your existing employees. Through a series of negotiations and excuses, you strung the process out to the end of April without ever giving us an answer.

When customers started complaining to us directly that you were not taking any reservations, a fact that was confirmed by your employees, we realized you had no intention of continuing to work with us. You left us no choice but to begin to explore other options. In fact, within a few days, your employees were observed working at the Blade counter and it became clear that with no prior notification to us, you had decided to unilaterally end our agreement.

**60 Thompson Avenue, East Haven, CT 06512**
**Tel: 800-468-8639 / Email: dispatch@flysai.com**

SAI000049

It has also come to our attention that you are suggesting to customers that they seek a refund from Shoreline for their commuter books so that they can book their seats through you. As you are aware, the books are not refundable.

You, however, have collected, in advance, commissions and handling fees on those seats that you have not earned and, in fact, can not earn since you are no longer servicing our customers.

We expect you to refund those prepaid commissions to us in full. An invoice in the amount of $65,517.00 is attached. Failure to refund these commissions will result in legal action to recover these funds.

I am truly sorry that you have chosen to take the path upon which you have embarked. We feel that you have betrayed a trust that has been in place for more than two decades. I frankly can't understand how you think you will be better off. Perhaps you are the victim of bad advice, or maybe the allure of being the newest Blade C/X girl was just too good to pass up.


Sincerely,

*John D Kelly*

John D. Kelly,
President