# EXHIBIT 14

10/5/21, 1:56 PM                                         Gmail - NDA

                                     John Kelly <jkelly208@gmail.com>

## NDA
5 messages

**Mike Migliore** <Mike.Migliore@capeair.com>                              Wed, Nov 8, 2017 at 9:47 AM
To: "jkelly208@gmail.com" <jkelly208@gmail.com>

Hi John,

Thanks again for making the trip yesterday, we thought it was a great meeting and look forward to further discussions.

Attached is our general NDA, feel free to modify as needed.

Let me know if you have any questions.

Thanks

Mike

Michael A Migliore

Chief Financial Officer

*Cape Air*

660 Barnstable Road

Hyannis, MA 02601

(O) 508.862.9771

(F) 508.957.6971

mike.migliore@capeair.com



📄 **NDA Template.doc**
47K

**John Kelly** <jkelly208@gmail.com>                                       Fri, Nov 10, 2017 at 4:14 PM
To: Mike Migliore <Mike.Migliore@capeair.com>

Confidential Pursuant to Protective Order                SAI005163

Hi Mike;

Thanks for your hospitality the other day. I took the liberty of completing most of the NDA and have attached a signed copy. Feel free to change anything. Please send me back a signed copy from your end. I'll give you a call when I receive it to discuss next steps.

Best Regards,

John D. Kelly
Director of Operations
Shoreline Aviation, Inc.
office: 203-267-1818
dispatch: 800-468-8639
cell: 203-215-9028

[Quoted text hidden]
--
John D. Kelly
Director of Operations
Shoreline Aviation, Inc.
office: 203-267-1818
dispatch: 800-468-8639
cell: 203-215-9028

---

**John Kelly** <jkelly208@gmail.com>                                                Fri, Nov 10, 2017 at 4:16 PM
To: Mike Migliore <Mike.Migliore@capeair.com>

Hi Mike;

Thanks for your hospitality the other day. I took the liberty of completing most of the NDA and have attached a signed copy. Feel free to change anything. Please send me back a signed copy from your end. I'll give you a call when I receive it to discuss next steps.

Best Regards,

John D. Kelly
Director of Operations
Shoreline Aviation, Inc.
office: 203-267-1818
dispatch: 800-468-8639
cell: 203-215-9028
.
PS - works better when I attach the file.

On Wed, Nov 8, 2017 at 9:47 AM, Mike Migliore <Mike.Migliore@capeair.com> wrote:
[Quoted text hidden]

[Quoted text hidden]


**Cape Air NDA Signed.pdf**
131K

---

**Mike Migliore** <Mike.Migliore@capeair.com>                                        Mon, Nov 13, 2017 at 7:12 PM
To: John Kelly <jkelly208@gmail.com>

Hi John,

Thanks for quick turnaround on the NDA.  Sorry I didn't get back to you sooner.   We have a board meeting tomorrow that has been taking up most of my time.

Confidential Pursuant to Protective Order                                    SAI005164

Case 2:20-cv-02161-NJC-SIL   Document 153-19   Filed 12/18/23   Page 4 of 9 PageID #: 2461

I'll get you a signed copy on Wednesday and we can discuss next steps.

Thanks

Mike

[Quoted text hidden]

---

**Mike Migliore** <Mike.Migliore@capeair.com>                                                   Wed, Nov 15, 2017 at 3:15 PM
To: John Kelly <jkelly208@gmail.com>

Hi John,

Attached is the signed NDA.  Give me a call when get a chance and we can discuss next steps.

Thanks

Mike

508.862.9771

**From:** John Kelly [mailto:jkelly208@gmail.com]
**Sent:** Friday, November 10, 2017 4:17 PM
**To:** Mike Migliore <Mike.Migliore@capeair.com>
**Subject:** Re: NDA

Hi Mike;

[Quoted text hidden]
[Quoted text hidden]

📄 **NDA 11-15-17.pdf**
277K

Confidential Pursuant to Protective Order                                                                    SAI005165

# NON-DISCLOSURE AGREEMENT

**THIS NON-DISCLOSURE AGREEMENT** (hereinafter "Agreement") is effective upon the date of execution by the last Party hereto ("Effective Date"), by and between **HYANNIS AIR SERVICE, INC. d/b/a Cape Air & Nantucket Airlines**, organized and existing under the laws of the Commonwealth of Massachusetts, having its principal offices at 660 Barnstable Road, Hyannis, Massachusetts 02601 (hereinafter, "CapeAir"), and _____, with offices located at _____ (hereinafter, the "Company"). For purposes of this Agreement, CapeAir and Company may, from time to time, be referred to individually as a "Party" and collectively as the "Parties".

WHEREAS, CapeAir is a certificated FAR Part 121 / 135 air carrier, providing scheduled air service to various locations throughout the United States; and

WHEREAS, Company is engaged in _____; and

WHEREAS, the Parties are desirous of entering into confidential discussions regarding _____ (hereinafter referred to as the "Purpose"); and

WHEREAS, pursuant to the foregoing and in furtherance of the Purpose, the Parties may be required to disclose confidential and/or proprietary information regarding the operations, finances, business plans, of their respective business.

NOW THEREFORE, in consideration of the premises, covenants and agreements hereinafter set forth, the Parties hereby agree as follows:

1. "Proprietary Information" is defined as information which the disclosing Party at the time of disclosure identifies in writing as proprietary and confidential and shall be so indicated by means of a proprietary or confidential legend, marking, stamp or other positive written notice identifying the information to be proprietary or confidential. In order for information disclosed orally or visually by a Party to this Agreement to be Proprietary Information, the disclosing Party shall identify the information as proprietary or confidential at the time of the disclosure and, within thirty (30) days after such oral or visual disclosure, reduce the subject matter of the disclosure to writing, properly stamped with the proprietary or confidential legend, marking, stamp or other positive written notice and submit it to the receiving Party.

2. A receiving Party may only use Proprietary Information disclosed to it hereunder by the disclosing Party in discussions with the disclosing Party regarding the Purpose.

3. It is agreed that, for a period of **five (5) years** following the receipt of Proprietary Information, the receiving Party will use such information only for the purpose set forth in Paragraph 2 above and shall make reasonable efforts to preserve in confidence such Proprietary

--

Information and prevent disclosure thereof to third parties. Each of the Parties agrees that it will use the same efforts to protect the other's Proprietary Information as are used to protect its own proprietary or confidential information, but in no event shall it use less than reasonable care.

4. The obligation to protect Proprietary Information, and the liability for its unauthorized disclosure or use, shall not apply with respect to such information which:

   a. is lawfully published or is otherwise lawfully in the public domain at the time of its disclosure, or

   b. is lawfully known to the receiving Party prior to disclosure by the disclosing Party, or

   c. is disclosed with the prior written approval of the disclosing Party, or

   d. is independently developed by the receiving Party without use of such Proprietary Information, or

   e. is lawfully known or available to the receiving Party for use without restriction from a third party, or

   f. becomes part of the public domain without improper means, or breach of this Agreement by the receiving Party, or

   g. is disclosed as required by judicial action after all available legal remedies to maintain the Proprietary Information in secret have been exhausted; provided that advance notice of such judicial action was timely given to the disclosing Party.

5. This Agreement shall expire **one (1) year** after the Effective Date hereof, but may be terminated earlier by either Party for cause or convenience giving thirty (30) days advance notice in writing to the other Party of its intention to terminate. Neither expiration nor termination of this Agreement shall, however, affect the rights and obligations contained herein with respect to Proprietary Information disclosed hereunder prior to such expiration or termination.

6. Upon termination or expiration of this Agreement each Party will, upon written request, within a reasonable period of time thereafter, return all Proprietary Information received from the other Party under this Agreement and copies made thereof by the receiving Party, or certify by written memorandum that all such Proprietary Information has been destroyed, except that each Party may retain an archival copy to be used only in case of a dispute concerning this Agreement.

7. With respect to any exchange of Proprietary Information under this Agreement the Parties agree that only employees and engaged third parties directly participating in the Purpose and having a need to know shall be authorized to receive and disclose Proprietary Information

--

under this Agreement on behalf of its respective Party. It is mutually agreed and understood by each Party hereto that all employees and third parties who are granted access to any Proprietary Information disclosed by either Party pursuant to this Agreement shall be subject to its terms and conditions and each Party shall be responsible and take all necessary actions to bind its respective third parties accordingly.

8. Except as expressly provided herein, neither the execution and delivery of this Agreement nor the furnishing of any Proprietary Information shall be construed as granting either expressly or by implication, estoppel or otherwise, any license under any invention, improvement, discovery or patent now or hereafter owned or controlled by a Party disclosing Proprietary Information hereunder.

9. Each Party warrants and represents it has the right to disclose the Proprietary Information to the other Party hereunder. **NO OTHER WARRANTIES ARE MADE BY EITHER PARTY, EITHER EXPRESS OR IMPLIED, UNDER THIS AGREEMENT. PROPRIETARY INFORMATION IS PROVIDED "AS IS" WITH NO WARRANTY AS TO ITS ACCURACY OR COMPLETENESS.**

10. Neither Party shall export, directly or indirectly, any Proprietary Information disclosed under this Agreement to any country for which, at the time of export, the U.S. Government requires an export license or other Government approval without first obtaining such license or approval.

11. This Agreement, and the rights and obligations hereunder, may not be transferred or assigned by one Party without the prior written approval of the other Party hereto.

12. This Agreement shall not be construed as a teaming, joint venture or other such arrangement; rather, the Parties hereto expressly agree that this Agreement is for the purpose of protecting Proprietary Information only.

13. This Agreement shall be deemed to be a contract made under the laws of the Commonwealth of Massachusetts and for all purposes it, plus any related supplemental documents and notices, shall be construed in accordance with, and governed by, the substantive laws of Massachusetts.

14. This Agreement contains the entire understanding between the Parties relative to the protection of Proprietary Information and supersedes all prior and collateral communications, reports, and understandings between the Parties in respect thereto. No change, modification, alteration, or addition to any provision hereof shall be binding unless in writing and signed by authorized representatives of both Parties.

15. In the event that any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality

--

or unenforceability shall not affect any other provision hereof, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision or provisions had never been contained herein.

16.   IN NO EVENT ARISING FROM OR CONNECTED WITH THIS AGREEMENT OR THE INFORMATION DISCLOSED HEREUNDER SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INCIDENTAL, CONSEQUENTIAL, SPECIAL, EXEMPLARY OR INDIRECT DAMAGES.

17a.   As provided for in Sub-Article 17b of this Agreement, all official notices, consents, requests, instructions, approvals and other communications provided for herein shall be deemed to have been properly disseminated, made and/or served if in writing and delivered by overnight express mail, with delivery deemed received two (2) days from the date of deposit with the overnight carrier for delivery to the recipient.  Forwarding of routine correspondence not deemed to be official or otherwise constituting a material change to any provision of this Agreement via electronic mail shall be authorized, provided that any official notices required pursuant to this Agreement initially sent by electronic mail are supplemented by overnight express mail delivery.

17b.   If to CapeAir, addressed to:

    Hyannis Air Service d/b/a CapeAir
    Attention: _____
    660 Barnstable Road
    Hyannis, Massachusetts 02601
    E-Mail:_____

If to Company, addressed to:

    _____
    Attention: _____
    _____
    _____
    E-Mail: _____

18.   The Parties warrant and represent to each other that they have caused this Agreement to be executed by their respective duly authorized representatives.

19.   This Agreement may be executed electronically and in two or more counterparts, each of which will be deemed to be an original, but all of which together shall constitute one and the same instrument.

**(CapeAir)**                                                                      **(Company)**

--

**HYANNIS AIR SERVICE, INC.**  _____
**d/b/a Cape Air & Nantucket Airlines**

_____   _____

Printed Name: _____   Printed Name: _____

Title: _____   Title: _____

Date:  _____, 201\_   Date:  _____, 201\_

--