# EXHIBIT 16

Hyannis Air Service, Inc.<br>
660 Barnstable Road<br>
Hyannis, MA 02061<br>
_____, 2018

PRIVATE AND CONFIDENTIAL
John D. Kelly
Andrea Collingwood
60 Thompson Avenue, Hangar #3
East Haven, CT 06512

Re: <u>Shoreline Aviation, Inc. (the "Company")</u>

Dear John and Andrea:

This letter confirms your and our mutual intention to enter into good faith negotiations with a view to entering into an agreement for the acquisition by Hyannis Air Service, Inc. (the "Buyer") of the Company, of which John D. Kelly and Andrea Collingwood are the sole stockholders (collectively, the "Stockholders"). Although the final structure of the transaction will be determined by the parties after diligence, you have advised us that the Company envisions creating an employee stock ownership plan (the "Shoreline ESOP") prior to the transaction and that therefore a merger of the Company into the Buyer would be your preferred structure.

1. <u>Price and Terms</u>. Subject to diligence, we envision that the principal terms of the proposed transaction would be substantially as follows:

(a) <u>Merger</u>. The Company would merge into the Buyer, with the Buyer being the surviving entity (the "Merger"). All of the shares of stock of the Company would be extinguished in the Merger.

(b) <u>Consideration</u>. The consideration (the "Consideration") to be paid to the stockholders of the Company in the Merger would be an aggregate of $5,000,000, consisting of $3,000,000 of either cash, or the assumption of indebtedness at the closing, and $2,000,000 payable over five (5) years on terms to be determined. Any debt to be assumed pursuant to the immediately preceding sentence shall not be deemed to include any financing owed on the Company's aircraft and obligations under the existing Tweed N. H. airport lease, and shall be limited, subject to completion of the Buyer's diligence, to shareholder loans. Any indemnification obligations of the Stockholders, after verification, shall be adjusted against the Buyer's obligations under the purchase money Note. As a post-closing adjustment, there will be a net working capital adjustment (either positive or negative) on a dollar-for-dollar basis to reflect the variation of the net working capital as of the closing date from an agreed upon target to be determined during the diligence process. For purposes of the net working capital adjustment, current assets shall exclude accounts receivable over 90 days, and current liabilities shall include prepaid tickets.

1

EXHIBIT
Exhibit 2

(c)  **Obligations to be Extinguished.**  Prior to or simultaneously with the closing, the Company would extinguish all of its debts other than (i) trade payables, (ii) indebtedness on terms satisfactory to the Buyer, not to exceed $1,5000,000, resulting from the Shoreline ESOP, and (iii) the financing on the Company's aircraft. All related party contracts would be terminated, and any loans or advances from the Company to either Stockholder shall be repaid.

(d)  [**Retained Assets and Liabilities.**  The Stockholders shall retain the balance sheet assets and liabilities as indicated on Exhibit A.] TBD

(e)  **Employment.**  John D. Kelly will enter into a three-year employment agreement with the Buyer and will be paid a salary of ___TBD___ annually. He will also be entitled to receive such benefits as are customarily provided from time-to-time to senior management employees of the Buyer. Following the three-year employment term, he will be engaged as a consultant for two (2) years on terms to be mutually agreed upon. It is understood that his employment shall be full time from May 1 to Sept 30 of each year with 3-4 months off during the winter months.

Andrea Collingwood shall also be employed in her current capacity for a minimum of three years from the date of sale at a salary of ___TBD___ annually.

(f)  **Non-Competition.**  As part of the Consideration otherwise payable hereunder, the Stockholders will execute and deliver to the Buyer a non-competition agreement for a term of five (5) years following the closing date. Agreement to be conditioned upon and subject to Buyer's performance under deferred consideration payment obligation and employment agreement.

(g)  **Due Diligence Review.**  Promptly following the execution of this letter of intent, the Stockholders and the Company will cooperate with the Buyer and will allow the Buyer full access upon reasonable notice and during normal business hours to the Company's facilities, and to meet with the Company's employees, to examine the Company's financial, accounting and other records, to examine the contracts and other legal documents affecting the Company, and generally to conduct a commercial, accounting and legal investigation of the Company. All results of such due diligence reviews must be satisfactory to the Buyer.

The Non-disclosure agreement previously executed by Buyer shall survive and remain in full force and effect during this process.

(h)  **Third-party Consents and Approvals.**  The Company shall obtain all third-party consents necessary for the Merger without giving any such third-party default or termination rights, all in form and substance satisfactory to the Buyer.

(i)  **Conduct in Ordinary Course.**  The Company shall conduct its business in the ordinary course during the period between the date of this letter of intent and the closing date.

CONFIDENTIAL

HAS0002245

2. <u>Definitive Agreement</u>. All of the terms and conditions of the proposed transaction would be stated in a definitive written agreement (the "Definitive Agreement") containing, among other things, customary representations and warranties by the Stockholders concerning the Company's business, and customary provisions for setoff and indemnification by the Stockholders, all to be negotiated, agreed to and signed by the Company, the Stockholders and the Buyer. The Definitive Agreement will include as a condition to the Buyer's obligation to consummate the Merger that all governmental approvals necessary for the Buyer to operate a scheduled seaplane service from Boston to New York City shall have been obtained and not be subject to further appeal.

3. <u>Exclusive Negotiating Rights</u>. In order to induce the Buyer to commit the resources, forego other potential opportunities, and incur the legal, accounting and incidental expenses necessary properly to evaluate the possibility of acquiring the Company, and to negotiate the terms of, and consummate, the transaction contemplated hereby, the Stockholders and the Company agree that for a period of ninety (90) days after the date of your acceptance of this letter of intent (a) none of the Stockholders or the Company, nor any of their representatives, shall, directly or indirectly, negotiate or offer to negotiate or discuss with, solicit or initiate, or entertain or encourage submission of inquiries, proposals or offers from any third party with respect to the disposition of the stock of the Company, the Company's business or any portion thereof, whether by the sale of such stock, sale of assets, merger or some other means that results in a change of control of the Company, its business or its assets (an "Acquisition Proposal") and (b) the Stockholders and the Company shall promptly notify the Buyer of the terms of any inquiry or proposal that any of the Stockholders or the Company may receive with respect to any Acquisition Proposal and of the Stockholders' or the Company's response thereto. The ninety (90) day period may be extended by the Buyer for an additional fifteen (15) day period as long as the Buyer has completed a substantial amount of its due diligence and integrative planning, and the Definitive Agreement has been substantially negotiated. The Buyer will use its best efforts to complete all due diligence within sixty (60) days from when the Buyer receives all due diligence information requested, and all parties hereto will use their best efforts to negotiate and agree upon the terms of the Definitive Agreement within sixty (60) days and to close the acquisition within ninety (90) days from the date hereof.

The Stockholders and the Company represent that none of them is currently bound by any contract or understanding with any other third party concerning an Acquisition Proposal and that the execution and delivery of this letter of intent by them does not violate any other obligations or commitments currently binding on them.

4. <u>Expenses</u>. The Buyer and the Seller shall each be responsible for their respective expenses incident to this letter of intent, the Definitive Agreement and the transaction contemplated hereby and thereby.

5. <u>Public Announcements</u>. Neither party will make any disclosure of the transaction contemplated by this letter of intent without the prior written approval of the other, which approval will not be unreasonably withheld or delayed, except that either party may make such

3

disclosure, without the consent of the other party, if, in the opinion of such party's counsel, disclosure is required by law or regulatory rules governing disclosure of information by such party. Notwithstanding the foregoing, the parties shall have the right to disclose the terms of this transaction to their respective attorneys, accountants, lenders, advisors, stockholders, officers, employees, directors and agents on a need-to-know basis.

6. **Broker's Fees**. The Stockholders and the Buyer have represented to each other that no brokers or finders have been employed who would be entitled to a fee by reason of the transaction contemplated by this letter of intent.

7. **No Binding Obligation**. Except for the provisions of Subsection 1(g) (Due Diligence Review), Section 3 (Exclusive Negotiating Rights), Section 4 (Expenses), Section 5 (Public Announcements) and Section 6 (Broker's Fees), this letter of intent does not constitute or create, and shall not be deemed to constitute or create, any legally binding or enforceable obligation on the part of any party to this letter of intent. No such obligation shall be created, except by the execution and delivery of the Definitive Agreement containing such terms and conditions of the proposed transaction as shall be agreed upon by the parties, and then only in accordance with the terms and conditions of such Definitive Agreement.

8. **Assignment**. The Buyer may assign its rights hereunder to an affiliate but all post-closing obligations owed to Stockholders shall be guaranteed by Buyer.

This letter will automatically expire and be of no further force or effect at 5:00 p.m. E.S.T. on _____, 2018 if not accepted by the Stockholders and the Company prior to that time. If the foregoing terms and conditions are acceptable to you, please so indicate by signing the enclosed copy of this letter and returning it to the attention of the undersigned.

Very truly yours,

HYANNIS AIR SERVICE, INC.

By: _____ *(signed: mike.migliore@capeair.com 2018.03.05 16:47:25 -05'00')*
Name: Michael A Migliore
Title: CFO

4

CONFIDENTIAL                                                                                           HAS0002247

ACCEPTED AND AGREED ON _5 March_, 2018:

_____
John D. Kelly

_____
Andrea Collingwood

SHORELINE AVIATION, INC.

By: _____
Name: John D. Kelly
Title: President

5

CONFIDENTIAL
HAS0002248

Exhibit A
[Retained assets and liabilities]

3787911.5

6

CONFIDENTIAL

HAS0002249