# EXHIBIT 21

Message

| | |
|---|---|
| **From**: | Cynthia Herbst [cleeh824@yahoo.com] |
| **Sent**: | 5/7/2018 7:17:18 PM |
| **To**: | Melissa Tomkiel [melissa@flyblade.com]; Rob Wiesenthal [rob@flyblade.com]; Ryan Pilla [ryanpilla@yahoo.com] |
| **CC**: | Cynthia Herbst [cleeh824@yahoo.com] |
| **Subject**: | Signed agreement |
| **Attachments**: | Executed Contract Blade-SAFE.pdf |

Melissa/Rob;

Attached please find the signed agreement.

I am happy to be part of the Blade Team. We are excited for what the future brings.

Best,
Cindy

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                                                              BLADE 0000609

*CONFIDENTIAL*

# MEMORANDUM OF TERMS
## FOR TRANSACTION
## BETWEEN
## FLY BLADE, INC.
## AND
## SOUND AIRCRAFT FLIGHT ENTERPRISES, INC.

### May 4, 2018

This Memorandum of Terms supersedes any and all prior representations and agreements, whether written or oral, between Blade and SAFE with respect to the subject matter hereof; *provided, however*, except for the Binding Provisions, this Memorandum of Terms shall not constitute a binding legal obligation of either Blade or SAFE or any other party, or a draft agreement or an agreement to agree. Neither Blade, SAFE, nor any other party shall have any liability or obligation under the proposed terms contained herein prior to the execution of a definitive agreement. This Memorandum of Terms is intended to define the provisions of an agreement that may be deemed acceptable to both parties. Both Blade and SAFE acknowledge that these proposed terms are subject to changes, additions and deletions, including those required as a result of Blade's due diligence prior to the execution of the definitive agreement and does not cover all essential terms and conditions of the transactions contemplated hereby. Notwithstanding the foregoing, this paragraph and the Non-Compete (during the No Shop Period), No Shop, Non-Disclosure, Expenses, and Miscellaneous sections shall be binding on each party and its representatives (the "***Binding Provisions***").

**Parties; Definitions:** Sound Aircraft Flight Enterprises, Inc. ("***SAFE***") and Fly Blade, Inc., a Delaware corporation, or a subsidiary thereof ("***Blade***") and Cindy Herbst ("***Founder***").

"***EH-BTS Flight***" means an Exclusive Charter that is (i) a by the seat aircraft seat sales (including helicopter, airplane, seaplane, turbo prop, jet or other aircraft charters) and (ii) for the route to and from the East Hampton Airport to New York City.

"***Exclusive Charter***" includes without limitation all sales by SAFE, any SAFE employee or any affiliate, or any sales originating at the SAFE Kiosk, of by the seat aircraft seat sales and charter sales (including helicopter, airplane, seaplane, turbo prop, jet or other aircraft charters) (the "***Blade Service***"), but <u>excludes</u> SAFE's twin engine charter operation under its Part 135 Certificate, any other aircraft under SAFE's Part 135 Certificate, the overflow charters SAFE books with Action Airlines and SAFE's flight school business.

**Customer List:** In and subject to the terms and conditions of the Purchase Agreement, SAFE will deliver, sell and assign to Blade the exclusive right, title and interest in and to SAFE's list of Exclusive Charter customers (including EH-BTS Flight Customers) and all associated information (including contact information, flight history, and other information requested by Blade), free and clear of any encumbrances (the "***SAFE Customer List***") in exchange for $175,000.

**Consulting Agreement:** SAFE will be a consultant of Blade pursuant to Blade's standard at-will consulting agreement between Blade and SAFE (the "***Consulting Agreement***"), which contains customary non-competition, non-disclosure, employee/customer non-solicitation and other customary provisions.

Under the Consulting Agreement, SAFE will:

(i) permit and provide reasonable access to an employee of Blade (or any other designee of Blade at Blade's discretion) (the "***Blade Rep***") to occupy a desk or other space located at SAFE's kiosk at the East Hampton Airport and direct and refer all inquiries (with the same level of care and professionalism, but no less than reasonable care, that SAFE has used in the past for direct inquiries by SAFE customers) for any EH-BTS Flight to the

1

Blade Rep (the "*EH-BTS Referrals*");

(ii) use the Blade platform to book any Exclusive Charter (excluding any EH-BTS Flight) for passengers booked on such Exclusive Charters (excluding any EH-BTS Flight)(the "*Blade Platform Bookings*");

(iii) provide check-in services for any EH-BTS Referrals or Blade Platform Bookings on the day of the related flights (with the same level of care and professionalism, but no less than reasonable care, that SAFE has used in the past for SAFE customers) (the "*Check-In Services*");

(iv) cause Founder to continue providing services to and for SAFE in the same roles and responsibilities Founder had as of the date hereof, except as otherwise provided herein; and

(v) otherwise continue to operate in the ordinary course of business consistent with past practices, except as otherwise provided herein.

Under the Consulting Agreement, Blade will:

(i) pay SAFE 10% of the after tax proceeds received by Blade for the flights resulting from the EH-BTS Referrals during the period starting May 7, 2018 and ending May 10, 2019 (the "*The 2018 Period*");

(ii) pay SAFE 10% of the after tax proceeds received by Blade for the flights resulting from the Blade Platform Bookings during The 2018 Period and during the period starting May 11, 2019 and ending May 12, 2020 (the "*The 2019 Period*");

(iii) pay SAFE $20,000 for the Check-In Services for the period starting May 15, 2018 and ending September 15, 2018 (the "*Summer 2018 Period*") and $20,000 for the Check-In Services for the period starting May 15, 2019 and ending September 15, 2019 (the "*Summer 2019 Period*"), in each case payable on a weekly basis in accordance with the Company's standard payment policies; *provided, however*, the Check-In Services and any related payment obligations may be terminated by either SAFE or Blade in their discretion if either determines that such Check-In Services are reasonably likely to materially and adversely (x) endanger SAFE's or Blade's ability to operate at the East Hampton airport or (y) harm the other aspects of SAFE's or Blade's businesses;

(iv) grant Founder an option to purchase a total of 60,000 shares of Blade common stock as provided on Exhibit A; and

(v) permit Founder and Ryan Pilla to fly on Blade arranged flights on a stand-by basis, subject to existing Blade policies with respect to Blade employees.

Additionally, Founder and Blade will explore the possibility of Founder becoming a full time employee of Blade at a future date, subject to mutually agreeable terms, including that each party determines that such employment relationship is not reasonably likely to materially and adversely impact either SAFE's or Blade's business.

**Non-Compete:** SAFE, including its employees and affiliates and Founder (as defined below), will not, directly or indirectly, (i) operate or otherwise provide, (ii) serve as a partner, principal, licensor, licensee, employee, consultant, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, or otherwise, for any business that operates or otherwise provides, (ii) own, purchase, organize or take preparatory steps for the organization of, or (iii) build, design, finance,

2

acquire, lease, operate, manage, control, invest in, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations operate or otherwise provide, a service that is competitive with the Blade Service for two (2) years from the Closing Date (the "*Non-Compete*").

| | |
|---|---|
| **Conditions:** | The transactions contemplated hereby will be subject to the satisfaction or waiver of customary terms and conditions, including (i) satisfactory completion of Blade's legal and other due diligence prior to execution of the Purchase Agreement; (ii) approvals of the transactions contemplated hereby and the Purchase Agreement by the applicable governing bodies of the parties hereto; (iii) execution and delivery of 2-year non-competition and non-solicitation agreements by SAFE, Founder, Ryan Pilla and each of SAFE's stockholders; (iv) SAFE having executed the Consulting Agreement; and (v) delivery of the SAFE Customer List in form and substance acceptable to Blade. |
| **Purchase Agreement:** | Execution and delivery of a Purchase Agreement (the "*Purchase Agreement*") among the parties subject to Blade's satisfactory completion of due diligence containing representations, warranties, covenants, releases, conditions, indemnities and other provisions customary in transactions of this nature, including the Non-Compete. The parties expect to sign the Purchase Agreement and Consulting Agreement (and any related documents) within 5 business days of the date hereof. |
| **Due Diligence:** | SAFE will grant Blade reasonable access including during business hours to SAFE's records, advisors, employees, officers, customers, facilities and partners to facilitate Blade's due diligence. |
| **No Shop:** | During the 5-day period commencing on the date that SAFE returns an executed copy of this Memorandum of Terms to Blade (the "*No Shop Period*"), Founder and SAFE shall not, and shall cause her and its subsidiaries, officers, directors, owners, stockholders, employees, members, partners, managers, affiliates, representatives or agents (collectively, "*SAFE Affiliates*") not to, directly or indirectly, through any SAFE Affiliate or otherwise, take any action to solicit, initiate, seek, entertain, knowingly encourage, support, assist, participate in any negotiations regarding or cooperate with, any inquiry, proposal or offer from, or furnish any information to, any third party regarding: (i) a transaction that is the same as, or substantially similar to, any of the transactions contemplated hereby; or (ii) any other arrangement that would prevent any of the transactions contemplated hereby, or have a material negative impact on the value thereof to Blade (each of the foregoing in clauses (i) through (ii), a "*Material Transaction*"); *provided, however*, that Blade shall have the option to extend the No Shop Period for additional period of five days by delivery of written notice to SAFE. Founder and SAFE shall suspend, and shall cause SAFE Affiliates to suspend, any such negotiations in progress as of the date hereof and shall promptly notify Blade of the receipt of any inquiry, proposal or offer for a Material Transaction or any request for information that could relate to a Material Transaction, including the material terms of any such inquiry, proposal, offer or request, the identity of the person or entity making such inquiry, proposal, offer or request and the circumstances leading to such inquiry, proposal, offer or request. If Founder, SAFE or any SAFE Affiliate breaches any obligations under this provision during the No Shop Period, Blade shall have the right of first offer before SAFE enters into a definitive agreement with respect to a Material Transaction on substantially the same terms as set forth in such definitive agreement, which right of first offer shall survive the No Shop Period. |
| **Non-Disclosure:** | No announcement regarding the Transaction shall be made without the prior written consent of Blade. In addition, this Memorandum of Terms will be Confidential Information under the Mutual Non-Disclosure Agreement by and between Blade and SAFE dated [   ]. |
| **Expenses:** | SAFE shall pay all of its expenses, including legal, tax, accounting, advisor (including any to Ryan Pilla) and investment banking fees, and change of control payments or bonuses incurred in connection with this Memorandum of Terms and the Transaction, regardless of whether the Transaction is consummated. |

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                                                                    BLADE 0000612

**Miscellaneous:** This Memorandum of Terms and the definitive agreements shall be governed by the law of the State of New York, without giving effect to conflicts of law provisions therein. The word including shall be deemed to be followed by "without limitation." This Memorandum of Terms may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Counterparts may be delivered via facsimile, electronic mail (including pdf or any electronic signature complying with the U.S. federal ESIGN Act of 2000, Uniform Electronic Transactions Act or other applicable law) or other transmission method and any counterpart so delivered shall be deemed to have been duly and validly delivered and be valid and effective for all purposes. In the event that any provision of this Memorandum of Terms is determined to be illegal or unenforceable, that provision shall be limited or eliminated to the minimum extent necessary so that this Memorandum of Terms shall otherwise remain in full force and effect and enforceable. Any notice shall be given in writing by first class mail, fax or electronic mail and addressed to the party to be notified at the address below, or at such other address, fax number or e-mail address as the party may designate to the other parties by 10 days' advance written notice to the other parties.

(Signature Page Follows)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                           BLADE 0000613

This Memorandum of Terms will expire at 5:00 p.m. ET on May 8, 2018 if SAFE has not returned an executed copy to Blade by that time.

**FLY BLADE, INC.**

By: _____
Name: _____
Title: _____

Address:

Email:

**SOUND AIRCRAFT FLIGHT ENTERPRISES, INC.**

By: *Cynthia L Herbst*
Name: Cynthia L Herbst
Title: President
Dated: 5/7/18

Address: PO Box 438
Wainscott NY 11975

Email: cindy@soundaircraft.com

**CINDY HERBST**

By: *Cynthia L Herbst*
Name: Cynthia L Herbst
Dated: 5/7/18

Address: PO Box 565
Sag Harbor NY 11963

Email: cynthia.herbst@yahoo.com

174112160 v9

*CONFIDENTIAL*

## EXHIBIT A

| Optionee | Options[1] | Vesting Commencement Date | Vesting Schedule |
|---|---|---|---|
| Cindy Herbst | 30,000 | Closing Date | Standard |
| Cindy Herbst | 30,000 | 1st Anniversary of Closing Date | Standard |

[1] Subject to approval of Blade's Board of Directors and execution of Blade's form of option agreement, following the Closing Date, each optionee will be granted an option to purchase shares of the Company's Common Stock (an "*Option*") under the Company's 2015 Equity Incentive Plan (as amended, the "*Plan*") to such optionee for the purchase of up to that number of shares of the Company's common stock indicated next to each such optionee's name at the fair market value on the date of grant.

"*Standard*" means that one-quarter (1/4) of the shares subject to the Option shall vest on the first anniversary of the Vesting Commencement date, and one forty-eighth (1/48th) of the shares subject to the Option shall vest each month thereafter, on the same day of the month as the Vesting Commencement Date (of if there is no corresponding day, on the last day of the month), subject to the optionee continuing to be a Service Provider (as defined in the Plan) through each such date.

174112160 v9

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                                                                   BLADE 0000615

Sound Aircraft Flight Enterprises, Inc.
PO Box 438
Wainscott, NY 11975

Bank Wire Instructions:
BNB Bank
Montauk Highway
Bridgehampton, NY 11932
6315378834

Routing Number
021406667
Account Number
0100155126

*Cynthia A Herbst* (signature)

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                BLADE 0000616