# EXHIBIT 26

COOLEY DRAFT 5.17.18

# NON-COMPETITION AND NON-SOLICITATION AGREEMENT

THIS NON-COMPETITION AND NON-SOLICITATION AGREEMENT (this "*Agreement*") is entered into as of May __, 2018, by and between FLY BLADE, INC. ("*Buyer*") and RYAN PILLA ("*Principal*"). Capitalized terms not otherwise defined herein have the meaning set forth in Article 1.

## BACKGROUND

A.  Pursuant to that certain Asset Purchase Agreement by and between Buyer and Sound Aircraft Flight Enterprises, Inc. ("*Seller*") dated as of even date herewith (as amended from time to time, the "*Asset Purchase Agreement*"), Buyer is acquiring the Assets (as defined below) from Seller.

B.  Principal is affiliated with Seller, has acquired substantial experience, knowledge and expertise in the Seller's business, and will derive significant benefits from the consummation of the transactions contemplated under the Asset Purchase Agreement.

C.  As a condition precedent to the consummation of the transactions contemplated under the Asset Purchase Agreement, including without limitation Buyer's purchase of the Assets and based on Buyer's legitimate business interest in protecting its business, the acquired trade secrets, confidential business and professional information, customer relationships and goodwill conveyed as a part thereof, Buyer is requiring Principal to enter into this Agreement.

NOW, THEREFORE, for and in consideration of the foregoing and $500.00 to be paid by Buyer to Principal upon execution of this Agreement on the date hereof and their mutual covenants and agreements set forth below, the receipt and sufficiency of which are hereby acknowledged, the parties, intending to be legally bound, hereby agree as follows:

## ARTICLE 1
## DEFINITIONS

1.1  "*Affiliate*" means, with respect to any Person, any other Person that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with, such Person, and the term "control" (including the terms "controlled by" and "under common control with") means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of such Person, whether through ownership of voting securities, by Contract or otherwise.

1.2  "*Assets*" has the meaning set forth in Section 1.2 of the Asset Purchase Agreement.

1.3  "*Competitive Business*" means any Person that is in the business of by the seat aircraft sales or charter sales (including, but not limited to, helicopter, seaplane, turbo prop, jet or other aircraft charters), but excluding (A) Seller's twin engine charter operation under its Part 135 Certificate, (B) any other aircraft under Seller's Part 135 Certificate, (C) the overflow charters Seller books with Action Airlines and (D) Seller's flight school business (in each case, as it exists or operates on the date hereof).

1.4  "*Contract*" means any written, oral, implied or other agreement, contract, understanding, arrangement, instrument, note, guaranty, indemnity, representation, warranty, deed, assignment, power of attorney, certificate, purchase order, work order, insurance policy, benefit plan, commitment, covenant, assurance or undertaking of any nature.

1.5  "*Person*" means any individual, entity or governmental body.

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                          BLADE 0006363

    **1.6**    *"Restricted Territory"* means each and every country, province, state, city, or other political subdivision of the world in which Buyer or any of its subsidiaries or Affiliates is currently engaged, or currently plans to engage in a Competitive Business, or otherwise distributes, licenses or sells its products in connection with the Competitive Business as of the date hereof..

    **1.7**    *"Specified Employee"* means any individual who is an employee of the Buyer on the date of this Agreement, or is or becomes an employee of Buyer or any subsidiary of Buyer during the Restricted Period.

ARTICLE 2
NON-COMPETITION AND NON-SOLICITATION

    **2.1**    **Non-Competition and Non-Solicitation.**

    **(a)**    From and after the date of this Agreement and until [_____], 2020 (the "***Restricted Period***"), Principal (including his successors and his Affiliates) will not, directly or indirectly, whether on such Person's own behalf or on behalf of some other Person, whether as an officer, director, employee, equity holder, partner, consultant, advisor, creditor or otherwise: (i) (A) operate or otherwise provide, (B) serve as a partner, principal, licensor, licensee, employee, consultant, officer, director, manager, agent, affiliate, representative, advisor, promoter, associate, investor, or otherwise, for any business that operates or otherwise provides, (C) own, purchase, organize or take preparatory steps for the organization of, or (D) build, design, finance, acquire, lease, operate, manage, control, invest in, work or consult for or otherwise join, participate in or affiliate myself with, any business whose business, products or operations operate or otherwise provide, a service that is a Competitive Business in the Restricted Territory; (ii) encourage, induce, attempt to induce, solicit or attempt to solicit any (A) customer of Buyer or any subsidiary of Buyer, to cease its customer relationship with Buyer or any subsidiary of Buyer, or (B) Specified Employee to leave his or her employment with Buyer or any subsidiary of Buyer (it being understood that the placement of general advertisements that may be targeted to a particular geographic or technical area but which are not targeted directly or indirectly towards a Specified Employee, shall not be deemed to be a breach of this Section 2.1(a)).

    **(b)**    Notwithstanding the foregoing, Section 2.1(a) shall not restrict Principal or its Affiliates from passively owning (directly or indirectly through a mutual fund or similar common investment vehicle) less than one percent (1.0%) of any securities of any Person that has any securities registered under Section 12 of the Securities Exchange Act of 1934, as amended, treating for such purposes any securities owned by an Affiliate of Principal as owned by Principal.

    **(c)**    The covenants contained in Section 2.1 shall be construed as a series of separate covenants, one for each country, province, state, city or other political subdivision of the Restricted Territory. Except for geographic coverage, each such separate covenant shall be deemed identical in terms to the covenant contained in Section 2.1. The parties agree that in the event of a breach or threatened breach by Principal of any of the covenants set forth in Section 2.1, monetary damages alone would be inadequate to fully protect Buyer from, and compensate Buyer for, the harm caused by such breach or threatened breach. Accordingly, Principal agrees that if it breaches or threatens breach of any provision this Section 2.1, Buyer shall be entitled to, in addition to any other right or remedy otherwise available, the right to injunctive relief restraining such breach or threatened breach and to specific performance of any such provision of Section 2.1, and Buyer shall not be required to post a bond in connection with, or as a condition to, obtaining such relief before a court of competent jurisdiction.

176972520 v4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER     BLADE 0006364

**(d)** Principal acknowledges that (i) the goodwill associated with the existing business, customers, and the Assets prior to the date hereof are an integral component of the value of the Assets to Buyer and is reflected in the value of the purchase price paid for the Assets, and (ii) Principal's agreement as set forth in Section 2.1 is necessary to preserve the value of the Assets for Buyer following date hereof. Principal also acknowledges that the limitations of time, geography and scope of activity agreed to in Section 2.1 are reasonable because, among other things, (A) Buyer and Seller are engaged in a highly competitive industry and (B) Principal is receiving significant benefits in connection with the consummation of the transactions contemplated by the Asset Purchase Agreement.

## ARTICLE 3
## MISCELLANEOUS PROVISIONS

**3.1** **Further Assurances**. Principal agrees that it will, at the request of Buyer, take such actions and execute and deliver to the Buyer such further documents, in the reasonable opinion of counsel for the Buyer, may be necessary to assure, complete and evidence the full and effective implementation and consummation of this Agreement.

**3.2** **Publicity.** Principal agrees that, on and at all times after the date of this Agreement: (a) no press release, public announcement or other publicity concerning any of the transactions contemplated by this Agreement, the Asset Purchase Agreement or the transactions contemplated hereby or thereby shall be issued or otherwise disseminated by it or on its behalf without Buyer's prior written consent and (b) it shall continue to keep the terms of this Agreement, the Asset Purchase Agreement and the existence of the transactions contemplated hereby and thereby strictly confidential and shall not disclose the terms of this Agreement, the Asset Purchase Agreement and the existence of the transactions contemplated hereby and thereby to any Person without the prior written consent of Buyer, except as such terms may be required to be disclosed to Principal's professional advisors (i.e. attorneys, accountants, financial advisors) (who shall be under similar confidentiality obligations).

**3.3** **Miscellaneous**. If any portion of this Agreement is held to be unenforceable, the remainder of this Agreement will remain valid. This Agreement may not be assigned by Principal without Buyer's prior written consent, and any unauthorized assignment shall be void. Subject to the preceding sentence, this Agreement will inure to the benefit of the parties' successors and assigns. All notices must be sent registered or certified mail, return receipt requested, or served personally. This Agreement shall be governed by the laws of the State of New York without regard to any otherwise applicable rules of conflicts of laws. Principal hereby consents to the jurisdiction of the federal and district courts of the Borough of Manhattan, New York, New York with regard to any dispute concerning this Agreement, shall not object to service of process in regard to any such dispute at the above address and shall not object to venue in any such court in the Borough of Manhattan. The terms and conditions of this Agreement constitute the entire Agreement between the parties and supersede all previous agreements, whether oral or written, between the parties with respect to the subject matter hereof. No amendment or waiver of this Agreement will be binding unless it has been assented to in writing by both parties. Each party shall bear and pay all fees, costs and expenses that it incurs with respect to this Agreement and the consummation of the transactions contemplated hereby.

[Signature Page Follows]

176972520 v4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                                                        BLADE 0006365

**IN WITNESS WHEREOF**, the parties hereto have executed this Non-Competition and Non-Solicitation Agreement to be signed effective as of the date first above written.

| **PRINCIPAL:** | **BUYER:** |
|---|---|
| **RYAN PILLA** | **FLY BLADE, INC.**<br>a Delaware corporation |
| By: _____<br>Address: | By: _____<br>Name:<br>Its:<br>Address: |
| Email: | |

4

176972520 v4

CONFIDENTIAL PURSUANT TO PROTECTIVE ORDER                                                                                 BLADE 0006366