# EXHIBIT 27

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

SHORELINE AVIATION, INC.,

        Plaintiff,

-against-

CYNTHIA L. HERBST, SOUND AIRCRAFT
FLIGHT ENTERPRISES, INC., RYAN A. PILLA,
BLADE URBAN AIR MOBILITY, INC. a/k/a
FLY BLADE, INC., MELISSA TOMKIEL, and
ROBERT S. WIESENTHAL,

        Defendants.

----------------------------------------------------------------X

Case No.: 2:20-cv-02161-JMA-SIL

**AFFIDAVIT OF
CAMILLE R. MURPHY**

STATE OF CONNECTICUT    )
                             ) ss.: Branford
COUNTY OF NEW HAVEN   )

        Camille R. Murphy, being duly sworn, deposes and says:

        1.    I am a resident of the State of Connecticut, in the County of New Haven.

        2.    I am a certified public accountant with the accounting firm Murphy & Company, LLC in Branford, Connecticut.

        3.    I have served as the accountant for Shoreline Aviation, Inc. ("Shoreline") for more than 30 years, preparing its annual tax returns and financial statements.

        4.    In 2017 and 2018, Shoreline was preparing to launch an Employee Stock Ownership Plan ("ESOP").

        5.    In 2018, Shoreline participated in negotiations to sell the company to Hyannis Air Service, Inc. d/b/a Cape Air ("Cape Air"). I assisted Shoreline in responding to due diligence request lists from Cape Air and advised Shoreline as to the tax implications of the transaction structures considered.

1

6. Initially, the parties contemplated a stock sale whereby Cape Air would purchase Shoreline's stock and merge Shoreline's ESOP into the ESOP Cape Air had in place.

7. The stock sale, incorporating Shoreline's ESOP, would have allowed Shoreline to sell its entire business to Cape Air and avoid having to pay any taxes on the transaction.

8. In August 2018, Cynthia L. Herbst ("Herbst") and Sound Aircraft Flight Enterprises, Inc. ("SAFE"), Shoreline's former booking agent, sued Shoreline and John Kelly, Shoreline's president, alleging more than $2,000,000 in damages.

9. Upon information and belief, because of this suit, Cape Air requested that the stock sale be restructured as an asset sale.

10. The filing of Herbst and SAFE's lawsuit also prevented Shoreline from implementing the ESOP because the ESOP trustee, Duane Tolander, did not want to proceed with the valuation process until he had a better understanding of the lawsuit's implications, which could not be accomplished before the closing of the Cape Air transaction.

11. Shoreline was a C corporation, a legal structure for a corporation in which the owners, or shareholders, are taxed separately from the entity. C corporations are also subject to corporate income taxation.

12. Shoreline's shareholders were Kelly and Andrea Collingwood ("Collingwood").

Confidential Pursuant to Protective Order                                    SAI007876

13. Because the Cape Air transaction was ultimately structured as an asset sale all of the gain was taxed as ordinary income for Shoreline, and again when income was "passed," or distributed, to Kelly and Collingwood.

14. Because the ESOP was not put in place, and because the Cape Air transaction proceeded as an asset sale, Shoreline had to pay taxes on the proceeds of the sale to Cape Air and was not able to take advantage of any tax savings that would have applied if the transaction had been structured as originally contemplated.

15. As a result, Shoreline sold its assets to Cape Air for $5,305,413.45 but was required to pay taxes in the amount of $513,425.00 Annexed hereto as Exhibit A is a true and correct copy of the 2018 tax return for Shoreline. In addition, Shoreline's shareholders, John Kelly and Andrea Collingwood, also incurred tax liability on the sale in the amount of $1,120,933.00

16. If Shoreline had completed the transaction as a stock sale, with the ESOP in place, as originally contemplated before the Herbst lawsuit was filed, the taxes on the sale would have been avoided by both Shoreline, as well as Kelly and Collingwood.

17. Shoreline's revenues from charter and rental income for the year ended September 30, 2015 was $6,266,288. Annexed hereto as Exhibit B is a true and correct copy of Shoreline's financial statement for the years ended September 30, 2015 and 2014.

18. Shoreline's revenues from charter and rental income for the year ended September 30, 2016 was $6,183,190. Shoreline's revenues from charter and rental income for the year ended September 30, 2017 was $6,019,491. Annexed hereto as

Confidential Pursuant to Protective Order                                    SAI007877

Exhibit C is a true and correct copy of Shoreline's financial statement for the years ended September 30, 2017 and 2016.

19. Shoreline's revenues from charter and rental income for the year ended September 30, 2018 was $5,305,812. Thus, in 2018, Shoreline's revenues from commuter sales decreased by $713,679. Annexed hereto as Exhibit D is a true and correct copy of Shoreline's financial statement for the years ended September 30, 2018 and 2017.

20. In 2019, Shoreline's revenues from commuter sales continued to decrease.

_____
Camille R. Murphy

Sworn to before me on the
31 day of January, 2022

_____
Notary Public

**BEVERLY JOHNSON**
*NOTARY PUBLIC*
MY COMMISSION EXPIRES APR. 30, 2023

4