UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK
――――――――――――――――――――――X

| | | |
|---|---|---|
| SHORELINE AVIATION, INC., | : | Case No. 2:20-cv-02161-NJC-SIL |
| | | Judge Nusrat Jahan Choudhury |
| *Plaintiff*, | : | |
| v. | : | |
| CYNTHIA L. HERBST and SOUND AIRCRAFT FLIGHT ENTERPRISES, INC., | : : | |
| *Defendants*. | : | |

――――――――――――――――――――――X

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S PRE-TRIAL MEMORANDUM OF LAW**


**FIRESTONE GREENBERGER PLLC**

Michael J. Firestone (mjf@firegreenlaw.com)
Jordan Greenberger (jg@firegreenlaw.com)
Callie J. Kramsky (ck@firegreenlaw.com)
104 West 40th Street, 4th Floor
New York, New York, 10018
Tel: (212) 597-2255

*Attorneys for Defendants Cynthia L. Herbst and Sound Aircraft Flight Enterprises, Inc.*

1

Defendants Cynthia Herbst ("Herbst") and Sound Aircraft Flight Enterprises, Inc. ("SAFE," and with Herbst, the "Defendants"), submit this response in opposition to the legal arguments set forth in Plaintiff Shoreline Aviation, Inc.'s ("Shoreline," or "Plaintiff") pre-trial brief pursuant to Rule 7.2.2 of the Court's Individual Rules for Civil and Criminal Cases.

This action arises out of an oral agreement negotiated by two people in 1993: Defendant Cynthia Herbst and the late John Kelly ("Kelly"), a principal of Shoreline who passed away in 2019. It is undisputed that Herbst and Kelly agreed that SAFE would be paid a 10% commission for booking passengers on Shoreline. Plaintiff, however, premises its claim for breach of contract on the existence of additional disputed contractual terms, and asserts that Defendants owed Shoreline (and breached) a fiduciary duty. Plaintiff cannot meet its burden of proof at trial on these points. Similarly, Plaintiff cannot establish that the customer information which Defendants sold to a third party was in fact Plaintiff's property and a "trade secret," or that Defendants tortiously interfered with prospective business relationships. Given the already extensive briefing of the legal issues by Defendants in their summary judgment motion and motion *in limine* [Docket Nos. 153-1; 155; 159-1; 161; 173-1), Defendants offer this limited response in opposition to Plaintiff's Pre-Trial Brief (the "Br.").[1]

A.  Plaintiff Cannot Prove the Disputed Contractual Terms

Plaintiff argues that it will succeed on its breach of contract claim by proving that the oral contract between the parties included requirements that (i) Defendants book customers exclusively on Shoreline and (ii) Defendants mail coupon books to customers. *See* Br., at 6. There is no written agreement or admissible evidence to support the existence of these terms.

---

[1] Plaintiff's damages arguments are addressed in Defendants' previously filed motion *in limine*. Defendants reserve the right to cite additional cases and raise additional legal arguments at trial.

2

Herbst denies that they existed and Kelly only mentioned them in emails that he sent to Herbst at a time when their relationship was breaking down and litigation seemed possible, if not probable. *See* Motion *in Limine*, at 20.

Realizing that they have no extrinsic evidence with which to establish these purported contractual terms, Plaintiff makes clear that it intends to rely instead on a "course of conduct" argument at trial. *See* Br., at 6-8. But in these circumstances, "course of conduct" will not be enough to establish, by a preponderance of evidence, that these were agreed upon contractual terms – especially when there is countervailing evidence to explain why Defendants' conduct was not undertaken because of a contractual requirement, but rather because it was in their own best interests.

Indeed, Defendants will demonstrate at trial that Shoreline was the sole seaplane operator servicing the Hamptons and that SAFE's practice of "exclusively" booking passengers on Shoreline was therefore entirely by default and does not prove a meeting of the minds concerning exclusivity. Similarly, SAFE mailed the coupon books to customers because it was in its economic interest to do so (i.e., when coupons were purchased, it generated commissions for Defendants), not because they were required to do so. Accordingly, Plaintiff cannot succeed on its claim for breach of contract.

B.  Plaintiff Cannot Prove the Existence of a Fiduciary Duty

Plaintiff cannot meet its burden of proving that Defendants owed it a fiduciary duty, thus vitiating its claims that Defendants breached their fiduciary duty and violated the faithless servant doctrine. *See* Br. at 14. The relationship between the parties – while certainly important to their respective businesses – was a purely arm's length business relationship governed by the original oral agreement negotiated by Herbst and Kelly in the early 1990s and did not create a

3

fiduciary relationship. *See Brasport, S.A. v. Hoechst Celanese Corp.*, 747 F. Supp. 199, 202 (S.D.N.Y. 1990) (a commissioned sales arrangement is a "commercial relationship, pure and simple" that is not accompanied by special duties or obligations). A fiduciary relationship must be created by "mutual consent" of the agent to act on the principal's behalf. *In re Roman Cath. Diocese of Rockville Ctr.*, New York, 651 B.R. 399, 428 (Bankr. S.D.N.Y. 2023) (citation omitted). *See also Samba Enters., LLC v. iMesh, Inc.*, 2009 WL 705537, at *7 (S.D.N.Y. March 17, 2009) (finding agency relationship where both parties manifested intent for one to act on behalf of the other). There is no evidence of any such mutual consent here.

The fact that Defendants were referred to as a "booking agent" (Br. at 13), does not mean that an actual principle-agent relationship existed between them. *See World Wrestling Ent., Inc. v. Jakks Pac., Inc.* 530 F. Supp. 2d 486, 504 (S.D.N.Y. 2007) ("the dispositive issue of fiduciary-like duty or no such duty is determined not by the nomenclature 'finder' or 'broker' or even 'agent,' but instead by the services agreed to under the contract between the parties.") (citations omitted); *see also Reed v. LuxuryVacation Home*, LLC, 2022 WL 4624839, at *19 (S.D.N.Y. Sep. 30, 2022) (dismissing breach of fiduciary duty claim based on allegation that defendants were "booking agents"); *Rosenblatt v. Christie, Manson &Woods*, 2005 WL 2649027, at *10 (S.D.N.Y. Oct. 14, 2005) (rejecting argument that payment of commissions created a fiduciary relationship). Similarly irrelevant is the fact that Shoreline maintained some control over "flight operations, ticket prices, and communications" Br. at 16. It is beyond obvious that Shoreline, as the airline company on which Defendants booked passengers, would determine these matters and that its "booking agent" would simply follow whatever policy Shoreline determined.

4

C.     <u>Plaintiff Cannot Prove that the Customer List is a "Trade Secret"</u>

Plaintiff cannot meet its burden of proving that the "customer list" sold by SAFE to Shoreline's competitor, Blade Urban Air Mobility, Inc. ("Blade") is Shoreline's trade secret. *See* Br. at 24. Absent the existence of a trade secret, Plaintiff's claims for unfair competition, misappropriation, and DTSA violations must fail.

Plaintiff admitted that the customer list was created by Defendants and held solely by Defendants. *See* Collingwood Dep., 230:6-19 (identifying the customer list at issue as residing on Defendants' computer system). There is no evidence that Plaintiff did anything to protect its purported interest in the customer list, such as requiring Defendants to enter into a confidentiality agreement. In the absence of evidence that Shoreline sought to maintain the secrecy of its customer list, it cannot argue the list was a "trade secret." *See Lehman v. Dow Jones & Co.*, 783 F. 2d. 285, 298 (2d Cir. 1986) (holding that the most important consideration in determining if information is trade secret is "whether the information was secret"); *Big Vision Priv. Ltd. v. E.I. DuPont De Nemours & Co.*, 1 F. Supp. 3d 224, 267 (S.D.N.Y. 2014) (plaintiff must demonstrate that it took "substantial measures to protect the secret nature of its information.").

Moreover, in April 2018, Plaintiff sought to purchase the customer list from Defendants. *See* SAI000041 (offering Herbst $325,000 in return for SAFE's assets, including its "customer lists, booking records and accounting records . . . for the last 5 years."). Plaintiff would not have tried to purchase something it believed was its property.

D.     <u>Plaintiff Cannot Prove that Defendants Intentionally Interfered with Plaintiff's Business Relationship with its Passengers</u>

In order to succeed on its claim for tortious interference, Plaintiff must prove that Defendants engaged in "criminal or independently tortious" conduct. SJ Order at 35 [Docket No. 165]. Plaintiff cannot meet this burden.

5

Plaintiff argues that Defendants acted tortiously by not booking passengers in April for flights that would take place in the summer. *See* Br. at 21. But there was no requirement or need to book passengers in April for flights that would take place months later. While Plaintiff might have preferred that those seats be filled immediately, Defendants' failure to do so does not constitute an independent tort because there was still ample time to book those passengers – regardless of whether Defendants and Plaintiff decided to continue or terminate their business arrangement.[2] Indeed, while Plaintiff outlines instances of the parties competing for business with each other (*see* Br., 21-22), such competition is not an independent tort. In short, there is no evidence to support the commission of an independent tort by Defendants such that it interfered with Plaintiff's relationship with its customers.

Dated: July 30, 2025
New York, New York

FIRESTONE GREENBERGER PLLC

/s/ *Michael J. Firestone*
Michael J. Firestone
Jordan Greenberger
Callie J. Kramsky
104 W. 40th St., 4th Floor
New York, NY 10018
(212) 597-2255
mjf@firegreenlaw.com

*Attorneys for Defendants*

---

[2] For the same reason, not booking these passengers for summer flights in March and April did not violate the booking agreement between SAFE and Shoreline because there was no obligation to book them immediately.