UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SHORELINE AVIATION, INC.,

                          Plaintiff,

        -against-

CYNTHIA L. HERBST, SOUND AIRCRAFT
FLIGHT ENTERPRISES, INC., and RYAN A.
PILLA,

                          Defendants.

Case No. 2:20-cv-02161-NJC-SIL

ORAL ARGUMENT REQUESTED

**PLAINTIFF'S OPPOSITION TO
DEFENDANTS' OMNIBUS MOTION *IN LIMINE***

Alex Kriegsman
Kriegsman PC
279 Main Street
Sag Harbor, NY 11963
(631) 899-4826
alex@kriegsmanpc.com

*Attorneys for Plaintiff*

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................ iii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ............................................................................................ 2

I.  This Court should deny the motion to preclude evidence related to Shoreline's damages and other relief sought because such issues are not ripe until liability has been determined ........................... 2

II.  This Court should deny the motion to preclude lost profits because Defendants had notice of the claim and its calculation during discovery ........................................................ 3

A.  Shoreline's lost profits claim was made known to Defendants during discovery .................................................. 4

B.  Shoreline's lost profits constitute general damages ......................... 8

C.  Shoreline's calculation of lost profits is based on evidence establishing loss causation ................................................. 10

D.  This Court's reasonable notice finding does not foreclose Shoreline's lost profits ..................................................... 14

E.  Should this Court preclude lost profits, Shoreline should be permitted to recover its lost revenues ..................................... 15

III.  This Court should deny the motion to preclude disgorgement because information related to the remedy was entirely in Defendants' possession and Defendants admitted that Herbst received compensation from Blade ................................................16

IV.  This Court should deny the motion to preclude Shoreline's attorney's fees because disclosure concerning them is irrelevant unless Shoreline prevails....................................................................21

V.  This Court should deny the motion to preclude John Kelly's statements because they are not hearsay and highly probative ................ 22

VI.  This Court should deny the motion to preclude evidence of the 2018 action because Defendants' sworn statements in that suit

i

constitute party admissions relevant to Shoreline's claims ……………...… 24

CONCLUSION.............................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                      **Page(s)**

*Access Point Med., LLC v. Mandell*,
    106 A.D.3d 40 (1st Dep't 2013) …………………………………………… 19 n.12

*Am. Fed. Group, Ltd. v. Rothenberg*,
    136 F.3d 897 (2d Cir. 1998) ………………………………………………….. 10, 13

*Antolini v. McCloskey*,
    335 F.R.D. 361 (S.D.N.Y. 2020) …………………………………………… 21

*Ashland Mgmt. Inc. v. Janien*,
    82 N.Y.2d 395 (1993) ………………………………………………………… 13-14

*Atias v. Sedrish*,
    133 Fed. Appx. 759 (2d Cir. 2005) ………………………………………… 10

*Atla-Medine v. Crompton Corp.*,
    2001 WL 1382592 (S.D.N.Y. Nov. 7, 2001) ……………………………….. 22

*Bank v. Pentagroup Fin., LLC*,
    2009 WL 1606420 (E.D.N.Y. June 9, 2009) ………………………………… 21

*Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*,
    22 N.Y.3d 799 (2014) …………………………………………………………... 9

*CARCO GROUP, Inc. v. Maconachy*,
    718 F.3d 72 (2d Cir. 2013) ………………………………………………… 3, 18-19

*DeFelice v. Am. Int'l Life Assurance Co. of New York*,
    1995 WL 753892 (S.D.N.Y. Dec. 19, 1995) ……………………………….. 21

*Deque Sys. Inc. v. BrowserStack, Inc.*,
    2005 WL 1165865 (E.D. Va. Jan. 13, 2025) …………………………. 18 n.9, 22 n.16

*Design Strategy, Inc. v. Davis*,
    469 F.3d 284 (2d Cir. 2006) …………………………………………….. 5-6

*Edelman v. NYU Langone Health Sys.*,
    2023 WL 4305446 (S.D.N.Y. 2023) ………………………………………… 3, 17, 24

*Emilio v. Sprint Spectrum L.P.*,
    2017 WL 946333 (S.D.N.Y. Feb. 1, 2017) ………………………………... 7-8

*Estate of Jaquez v. Flores*,
   2016 WL 1060841 (S.D.N.Y. Mar. 17, 2016) ……………………………………… 5 n.4

*Fabozzi v. Lexington Ins. Co.*,
   23 F. Supp. 3d 120 (E.D.N.Y. 2014) ………………………………………………….. 13

*Farrell v. Air & Liquid Sys., Corp.*,
   2013 WL 5549461 (E.D. Pa. Aug. 12, 2013) ………………………………………… 23 n.17

*F.T.C. v. Bronson Partners, LLC*,
   654 F.3d 359 (2d Cir. 2011) ………………………………………………………….. 19-20

*Gould Paper Corp. v. Madisen Corp.*,
   614 F. Supp. 2d 485 (S.D.N.Y. 2009) ……………………………………………….. 7

*Hudson Techs., Inc. v. RGAS, LLC*,
   716 F. Supp. 3d 327 (S.D.N.Y. 2024) ………………………………………..…… 2

*Juniper Entm't, Inc. v. Calderhead*,
   2012 WL 1106863 (E.D.N.Y. Feb. 16, 2012),
   *report accepted in part, rejected in part*,
   2012 WL 1106929 (E.D.N.Y. Mar. 31, 2012) ……………………………………….. 3

*Kenford Co. Inc. v. County of Erie*,
   67 N.Y.2d 257 (1986) …………………………………………………………… 10

*Kodak Graphic Commc'ns Canada Co. v. E.I. Du Pont de Nemours & Co.*,
   2013 WL 5739041 (W.D.N.Y. Oct. 22, 2013) ………………………………………… 7

*Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*,
   677 F.2d 251 (2d Cir. 1982) ……………………………………………………… 14

*Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*,
   2007 WL 950070 (S.D.N.Y. Mar. 30, 2007) ………………………………………….. 10

*MVP Health Plan, Inc. v. OptumInsight, Inc.*,
   765 Fed. Appx. 615 (2d Cir. 2019) …………………………………………………… 16

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*,
   2016 WL 3098842 (S.D.N.Y. June 1, 2016) ………………………………………….. 15

*N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*,
   998 F. Supp. 2d 301 (S.D.N.Y. 2014) ……………………………………………….. 7

*Pike Co., Inc. v. Universal Concrete Prods., Inc.*,
   2022 WL 2301780 (W.D.N.Y. June 27, 2022) ……………………………………... 8 n.6

iv

*Pittsfield Dev., LLC v. City of Chicago,*
2021 WL 8314423 (N.D.Ill. Nov. 15, 2021) …………………………………..…… 6-7

*Point Prods. A.G. v. Sony Music Entm't, Inc.,*
2002 WL 31856951 (S.D.N.Y. Dec. 19, 2002) …………………………………... 8 n.6

*Process Am., Inc. v. Cynergy Holdings, LLC,*
839 F.3d 125 (2d Cir. 2016) …………………………………………………….... 9, 12

*Quaker State Oil Ref. Corp. v. Kooltone, Inc.,*
649 F.2d 94 (2d Cir. 1981) ……………………………………………………….. 16

*Ream v. Hill,*
2018 WL 3579846 (S.D.N.Y. July 24, 2018) …………………………………… 23

*Ritani, LLC v. Aghjayan,*
970 F. Supp. 2d 232 (S.D.N.Y. 2013) …………………………………………… 16

*Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC,*
280 F.R.D. 147 (S.D.N.Y. 2012) ………………………………………………… 4, 21

*Samba Enters., LLC v. iMesh, Inc.,*
2009 WL 705537 (S.D.N.Y.. Mar. 19, 2009),
*aff'd sub nom. Samba Enters., Ltd. v. iMesh, Inc.,*
390 Fed. Appx. 55 (2d Cir. 2010) ……………………………………………... 19

*Sequeiros v. Latam Airlines Group, S.A.,*
2022 WL 2132675 (E.D.N.Y. May 24, 2022) …………………………………..…… 7

*Shred-It USA, Inc. v. Mobile Data Shred, Inc.,*
238 F. Supp. 2d 604 (S.D.N.Y. 2002) …………………………………………… 10

*Silicon Knights, Inc. v. Epic Games, Inc.,*
2012 WL 1596722 (E.D.N.C. May 7, 2012) …………………………………… 6-7

*Spotnana, Inc. v. Am. Talent Agency, Inc.,*
2010 WL 3341837 (S.D.N.Y. Aug. 17, 2010) …………………………………… 8 n.6

*Thieriot v. Jaspan Schlesinger Hoffman, LLP,*
2016 WL 6088302 (E.D.N.Y. Oct. 18, 2016) …………………………………… 16

*Timbie v. Eli Lilly & Co.,*
2009 WL 10676980 (D. Conn. Oct. 16, 2009) ………………………………... 21

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.,*

487 F.3d 89 (2d Cir. 2007) ………………………………………… 9, 9 n.7, 14

*U.S. v. Carneglia,*
    256 F.R.D. 384 (E.D.N.Y. 2009) …………………………………………… 23

*U.S. v. Dupree,*
    706 F.3d 131 (2d Cir. 2013) ……………………………………………….. 22, 24

*Wang v. XBB, Inc.,*
    2022 WL 912592 (E.D.N.Y. Mar. 29, 2022) ………………………………….. 19 n.11

| **Rules** | **Page(s)** |
|---|---|

Fed. R. Civ. P. 26(a)(1)(A)(iii) ……………………………………………….. 17

Fed. R. Civ. P. 26(e)(1)(A) …………………………………………………… 4

Fed. R. Civ. P. 37(c)(1) ……………………………………………………… 8

Fed. R. Evid. 403 ……………………………………………………… 23-24

Fed. R. Evid. 801(c)(2) ……………………………………………………… 22

Fed. R. Evid. 801(d)(2) ……………………………………………………… 25

Fed. R. Evid. 807(a) ………………………………………………………... 23

Plaintiff Shoreline Aviation, Inc. ("Shoreline") hereby opposes Defendants' Omnibus Motion *In Limine* dated July 23, 2025 and responds to their Memorandum of Law in Support (ECF No. 173-1) ("Motion").

## PRELIMINARY STATEMENT

The bulk of the Motion seeks to preclude Shoreline's claims for lost profits, attorney's fees, and disgorgement. This Court should deny those portions of the Motion because they are premature – resolving issues concerning damages and other relief prior to trial is a waste of judicial resources. But even if this Court were to consider the merits of the Motion, each of its arguments fails. As to lost profits, the Court should deny the Motion because (a) Shoreline provided ample and meaningful notice of its claim for lost profits and their calculation through the deposition testimony of its 30(b)(6) witness and its accountant; (b) even if such notice were to be deemed insufficient, Shoreline was substantially justified in believing that it had made known its intention to seek lost profits, and any failure to supplement was harmless; (c) the failure of Defendant Sound Aircraft Flight Enterprises, Inc. ("SAFE") to give reasonable notice of termination is not the basis of Shoreline's lost profits; and (d) Shoreline's calculation of lost profits is based not on speculation but on its actual lost profits in 2018 directly tied to Defendants' misconduct, easily meeting the standard for proving lost profits, whether they be characterized as general or consequential damages. This Court has already rejected Defendants' arguments concerning a lack of loss causation, and Defendants are improperly attempting to use the Motion to relitigate their failed summary judgment arguments.

As to the other issues, this Court should deny the motion to preclude (1) evidence concerning disgorgement because (a) Shoreline was not obligated to disclose the computation of an equitable remedy for which Defendants had all the information and (b) Defendants admitted

1

that Herbst received compensation from Blade Urban Air Mobility, Inc. ("Blade"); (2) Kelly's

statements because they are not hearsay and their high probative value is not outweighed by any

unfair prejudice; and (3) evidence relating to Defendants' 2018 lawsuit because the complaint in

that action contains their admissions that are highly probative as to whether the parties' contract

(the "Contract") was exclusive as to seaplane commuter flights, a hotly contested issue in this

case.

## ARGUMENT

**I.      This Court should deny the motion to preclude evidence related to Shoreline's
damages and other relief sought because such issues are not ripe until liability has
been determined.**

This Court should deny the Motion as to Shoreline's damages and other relief sought

because such a motion is premature at this stage of the proceedings. *See Hudson Techs., Inc. v.*

*RGAS, LLC*, 716 F. Supp. 3d 327, 338-39, 339 n.4 (S.D.N.Y. 2024) (denying as moot motion to

preclude argument, evidence, and testimony concerning certain damages theories, including lost

profits, because issue of damages is not ripe until liability has been adjudicated and may

ultimately be moot). Multiple courts have found that when liability has not yet been determined,

"any analysis of damages at that stage would be premature." *See id.* at 338 (collecting cases).[1]

Resolving a motion about damages prior to trial is premature, a waste of judicial resources, and

"tantamount to issuing advisory opinions." *See id.*

The impropriety and premature nature of the Motion is thrown into sharp relief when

examining Defendants' arguments regarding loss causation and analyzing the cases to which

they cite. In seeking to preclude evidence of lost profits, Defendants argue that Shoreline has not

---

[1] Throughout this brief, internal quotation marks have been omitted from quotations from court
opinions and otherwise cleaned up as needed to facilitate readability.

2

"proven" lost profit damages to a reasonable certainty. Putting aside for the moment that, as discussed below in Section II.B, that articulation of the burden of proof is erroneous, Shoreline should not be required to prove loss causation at this stage. This Court has already determined that Shoreline has "offered sufficient evidence for a reasonable jury to find" loss causation, and Defendants may not seek to relitigate their failed summary judgment arguments by way of motion *in limine. See Edelman v. NYU Langone Health Sys.*, 2023 WL 4305446, at *7 (S.D.N.Y. 2023) ("A party may not use a motion *in limine* as a disguised attempt for a second bite at the apple for summary judgment. … Having lost … a motion for summary judgment, the question of whether evidence is sufficient to support a claim for relief must await resolution at trial.").

Indeed, among the reasons the Motion's cited cases are distinguishable is that many of them contain determinations concerning loss causation and the viability of lost profits as damages after plaintiffs have been given the opportunity to present their evidence, either at trial or at an inquest on damages. *See, e.g.*, *CARCO GROUP, Inc. v. Maconachy*, 718 F.3d 72, 75 (2d Cir. 2013) (analyzing judgment after bench trial); *Juniper Entm't, Inc. v. Calderhead*, 2012 WL 1106863, at *3-4, 7-11 (E.D.N.Y. Feb. 16, 2012), *report accepted in part, rejected in part*, 2012 WL 1106929 (E.D.N.Y. Mar. 31, 2012) (determining that plaintiffs had not met their burden of establishing loss causation after an inquest hearing on damages after default judgment entered against defendants). This Court has already decided that loss causation is not speculative, and it makes no procedural or logical sense for Defendants to seek to preclude Shoreline from presenting evidence of their lost profits prior to trial by arguing that they have not yet proven such damages.

**II.    This Court should deny the motion to preclude lost profits because Defendants had notice of the claim and its calculation during discovery.**

Even if this Court were to consider the Motion on its merits, Shoreline should be permitted to pursue its $1,610,236.50 in lost profits in 2018 when customers flew with Blade instead as a direct result of Defendants' tortious conduct. As a case cited by Defendants states, "preclusion of evidence is a harsh remedy that should be imposed only in rare situations." *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012). As set forth below, this is not one of those rare situations because each of Defendants' arguments seeking to preclude lost profits falls flat.

**A. Shoreline's lost profits claim was made known to Defendants during discovery.**

Defendants argue that Shoreline's failure to amend its initial disclosures and interrogatory responses to reflect that Shoreline was seeking lost profits disqualifies them from seeking those damages, but that is not the law. Fed. R. Civ. P. 26(e)(1)(A) requires the supplementing or correcting of disclosures or responses only "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Shoreline provided notice of both its claim for lost profits and the method used for its computation (with supporting documents) in the course of discovery through the March 30, 2022 testimony of Andrea Collingwood ("Collingwood"), Shoreline's 30(b)(6) witness, and the July 21, 2022 testimony of Camille Murphy ("Murphy"), Shoreline's accountant, who provided a computation of Shoreline's revenues and expenses and testified extensively about them. (Collingwood Dep. 308:5–309:3, Mar. 30, 2022 (Ex. 1);[2] Murphy Dep. 156:6–163:18, July 21, 2022 (Ex. N);[3] Pl.'s Rule 56.1 Statement ("Pl.'s 56.1") (Ex. V) ¶¶ 47-49.)

---

[2] Numbered exhibits refer to the exhibits attached to the Declaration of Alex Kriegsman, dated July 30, 2025, filed herewith.

[3] Lettered exhibits refer to the exhibits attached to the Declaration of Lindsey (Reid) Skibell in Support of Defendants' Omnibus Motion *In Limine*, dated July 23, 2024 (ECF No. 173-2).

4

Murphy confirmed each of the line items in Shoreline's profit and loss statements for 2017 and 2018 that would be relevant to the calculation of lost profits attributable to Defendants' actions. (*See* Murphy Dep. 156:6–163:18 (Ex. N).) Defendants' counsel in turn questioned Murphy about the relevant expenses in detailed fashion, asking specifically about each line item expense and whether it was related to flights that were booked by SAFE. (Murphy Dep. 166:11–194:15) (Ex. O).) Defendants' claim that they were never able to explore this category of damages in discovery is pure fiction.[4]

As a result, Defendants' claims of prejudice have no basis in fact or law. Shoreline's repeated references to lost revenues as a category of damages should have alerted Defendants to the fact that Shoreline would be seeking lost profits, a connection that Collingwood made in her deposition. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 293 (2d Cir. 2006) (quoting District Court's statement that references to lost revenues in the complaint "arguably put the defendants on notice that lost profits might be sought"). Contrary to Defendants' mischaracterization of Collingwood's testimony (*see* Mot. at 5), when asked if Shoreline was seeking lost profits during her deposition on March 29, 2022, Collingwood stated that Shoreline was seeking loss of revenue but clarified that Shoreline "absolutely" had damages in the form of lost profits and referred to documents produced by Shoreline as a source of the specific amounts. (Collingwood Dep. 308:5-20 (Ex. Q).) Thus, contrary to Defendants' claims that Shoreline asserted lost profits

---

[4] These facts distinguish this case from that of *Estate of Jaquez v. Flores*, cited by Defendants, where the claim for lost income damages in a wrongful death case was not disclosed until the plaintiff submitted proposed jury instructions and verdict form and the plaintiff attempted to point to testimony under GML § 50-H to excuse their failure to disclose its intent to seek such damages. *See* 2016 WL 1060841, at *6-7 (S.D.N.Y. Mar. 17, 2016). The court there held that 50-H testimony does not share the goal of fair notice under Fed. R. Civ. P. 26. *Id.* at *7.

for the first time in its summary judgment brief (*see* Mot. at 3), Defendants were on notice, by March 2022 at the latest, that Shoreline would be seeking lost profits.[5]

And because Shoreline identified two specific documents produced in discovery, namely Shoreline's profit and loss statements for 2017 and 2018, in setting forth the computation of Shoreline's lost profit damages during Murphy's deposition, and the parties extensively questioned Murphy on the computation, a reopening of discovery is unnecessary and Defendants have suffered no prejudice, even if, for the sake of argument, Defendants had not received notice prior to the close of discovery. (*See* SAI007979-83 (Ex. 2); SAI007984-88 (Ex. 3).) Shoreline disclosed both a calculation of lost profits and identified the documents supporting that calculation, distinguishing the facts of this case from that of *Design*, cited by Defendants. *See* 469 F.3d at 295 (precluding evidence of lost profits because plaintiff had not provided sufficient discovery on basis of which lost profits could be computed).

These undisputed facts are a stark contrast to the facts of *Pittsfield Development, LLC v. City of Chicago* and *Silicon Knights, Inc. v. Epic Games, Inc.* (*See* Mot. at 6 n.4.) Even if this Court were to overlook the fact that both are district court cases outside of the Second Circuit that are not binding authority, the facts of those cases are clearly distinguishable because the plaintiffs there tried to fulfill their disclosure obligations by pointing to thousands of undifferentiated documents produced in lieu of a computation of damages. *See Pittsfield*, 2021 WL 8314423, at *10 (N.D. Ill. Nov. 15, 2021) (requiring defendant to comb through production

---

[5] The Motion also misrepresents Shoreline's January 27, 2023 letter to Judge Joan Azrack by claiming that it detailed "Shoreline's lost revenue" "without mentioning lost profits." (*See* Mot. at 3.) In reality, in its discussion of Shoreline's breach of contract damages, the letter stated, "Shoreline lost customers to Blade, had to hire new dispatchers to replace SAFE, and was forced to correct all of its advertisements to remove references to SAFE." (Ex. K at 2.) By explicitly including both decreased revenue and increased expenses, Shoreline reiterated its claim for lost profits.

of 100,000 pages to locate documents that were never specifically identified did not satisfy plaintiff's obligation to provide a damages computation); *Silicon*, 2012 WL 1596722, at *4 (E.D.N.C. May 7, 2012) (precluding evidence on plaintiff's damages where plaintiff pointed to several million pages of documents related to damages but did not disclose a computation based on such documents).

This same distinction also renders inapposite the cases within the Second Circuit cited by Defendants. *See, e.g.*, *N. Shipping Funds I, L.L.C. v. Icon Capital Corp.*, 998 F. Supp. 2d 301, 337 (S.D.N.Y. 2014) (precluding damages based on theories or calculations that were not subject to discovery); *Kodak Graphic Commc'ns Canada Co. v. E.I. Du Pont de Nemours & Co.*, 2013 WL 5739041, at *3 (W.D.N.Y. Oct. 22, 2013) (new category of damages not properly disclosed by "simply providing a mountain of documents" to opposing party); *Gould Paper Corp. v. Madisen Corp.*, 614 F. Supp. 2d 485, 490 (S.D.N.Y. 2009) (pointing to 629 pages of documents insufficient to provide a computation of damages).

Defendants had meaningful notice of Shoreline's lost profits claim, along with the methodology used to calculate those damages; Defendants suffered no prejudice; and Shoreline was not required to supplement its initial disclosures and interrogatory response. *See Sequeiros v. Latam Airlines Group, S.A.*, 2022 WL 2132675, at *1 (E.D.N.Y. May 24, 2022) (no need to supplement disclosure when witness identified during deposition; duty to supplement under Fed. R. Civ. P. 26(e)(1) should not require form over substance). Defendants' manufactured outrage at Shoreline's "newfound damages" deliberately ignores the undisputed fact that Defendants did in fact have notice of such damages no later than March 2022, nearly nine months before close of discovery. *See Emilio v. Sprint Spectrum L.P.*, 2017 WL 946333, at *5-6 (S.D.N.Y. Feb. 1,

7

2017) ("courts have found a lack of prejudice where, as here, disclosures were made while discovery was still open").[6]

This Court should see through Defendants' claim of prejudice based on a purported missed opportunity to explore whether "Defendants' alleged misconduct is responsible for every dollar of its lower profits in 2018 as compared to 2017 without any regard for alternative causes." (*See* Mot. at 7.) This causation argument is an integral part of Defendant's defense for nearly every one of Shoreline's claims, and Defendants amply explored this issue in its depositions of Collingwood, Murphy, and Mike Migliore. (*See, e.g.*, Collingwood Dep. 275:6–304:18 (Ex. 1); Murphy 51:14–55:8 (Ex. O); Migliore Dep. 96:20–101:6, Mar. 14, 2022 (Ex. 6).) And, in any case, as discussed below in Section II.C, this Court has already rejected Defendants' lack of causation argument, so Defendants may not rely on it to preclude lost profits damages.

Under these circumstances, there was no failure to disclose or supplement. But even if there were, Shoreline was substantially justified in believing that they had made known its damages theories and any such failures were harmless. *See* Fed. R. Civ. P. 37(c)(1). This Court should deny the motion to preclude lost profits and for Defendants' attorney's fees.

### B. Shoreline's lost profits constitute general damages.

---

[6] For this reason, *Point Productions A.G. v. Sony Music Entertainment, Inc.* is clearly distinguishable, and Defendants' reliance on it is misplaced. (*See* Mot. at 6.) The plaintiff in *Point* relied on a lost profit theory throughout the course of the litigation and made no mention of lost asset damages throughout fact or expert discovery or even in a brief opposing a motion to exclude lost profits. 2002 WL 31856951, at *1-2 (S.D.N.Y. Dec. 19, 2002). It was not until oral argument on the motion to exclude, shortly before the scheduled trial, that the new theory was first raised. *Id.* at *2. Similarly, *Pike Company, Inc. v. Universal Concrete Products, Inc.* is distinguishable because there, plaintiff's counsel conceded that its new damages theory was not disclosed during discovery. *See* 2022 WL 2301780, at *2 (W.D.N.Y. June 27, 2022). And this case bears no resemblance to *Spotnana, Inc. v. American Talent Agency, Inc.* where defendant never disclosed a computation of its damages for its counterclaims and "offered no explanation" for its failure to do so. *See* 2010 WL 3341837, at *1-2 (S.D.N.Y. Aug. 17, 2010).

Defendants apply the wrong standard when they seek to hold Shoreline to a certainty standard for causation and a "reasonable certainty" standard as to the amount of damages. (*See* Mot. at 12-16.) Lost profits are general, not consequential, damages when they are the "direct and probable consequence of the breach." *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007).[7] Because Shoreline seeks only what it bargained for (the payments SAFE would have paid Shoreline, minus SAFE's commission, after selling tickets to Shoreline flights), Shoreline's lost profits are general damages that flowed directly from the contract itself, and Shoreline was merely required to show a stable foundation for a reasonable estimate of lost profits. *See Biotronik A.G. v. Conor Medsystems Ireland, Ltd.*, 22 N.Y.3d 799, 808-09 (2014) (lost profits from exclusive distribution agreement were general damages because they flowed directly from the contract itself and both parties depended on product's resale for respective payments).

For general damages, the "reasonable certainty" standard refers to the <u>fact</u> of damages, not the amount, and the burden of uncertainty as to amount is on the wrongdoer. *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016). Because "doubts are generally resolved against the party in breach," a "plaintiff need only show a stable foundation for a reasonable estimate of the damages incurred as a result of the breach." *Id.* Shoreline has more than met this standard by demonstrating that, in 2018, Shoreline's revenues attributable to seaplane commuter flights decreased by $839,848.51 and Shoreline's expenses attributable to

---

[7] Defendants' attempt to distinguish *Tractebel* fails. (*See* Mot. at 12 n.6.) The court's decision there that lost profits are general damages was based not on a termination provision but because the profits lost by an energy supplier when a purchaser breached a contract are "precisely what the non-breaching party bargained for." *See* 487 F.3d at 109-110. The same is true here.

those flights increased by $770,387.99, resulting in lost profits of $1,610,236.50, based on

Shoreline's profit and loss statements and Murphy's testimony. (Pl.'s 56.1 (Ex. V) ¶¶ 47-49.)

Defendants' reliance on the cases cited on pages 11-16 of their Motion is misplaced

because those cases involved consequential damages and/or the inherently speculative task of

projecting loss of future profits for several years. *See, e.g.*, *Atias v. Sedrish*, 133 Fed. Appx. 759,

760 (2d Cir. 2005) (no reasonable certainty for lost profits "based on 15-year projection relying

on numerous assumptions"); *Millenium Expressions, Inc. v. Chauss Mktg., Ltd.*, 2007 WL

950070, at *7 (S.D.N.Y. Mar. 30, 2007) (lost profits too speculative where damages analysis

"consisted solely of averaging the sales that [plaintiff] made in the past and projecting them into

the future"); *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 238 F. Supp. 2d 604, 606-12

(S.D.N.Y. 2002) (after bench trial, declining to award plaintiff lost profits based on a five-year

revenue projection using a single quarter's revenue figures but awarding lost profits for one

year); *Kenford Co. Inc. v. County of Erie*, 67 N.Y.2d 257, 262 (1986) (absence of proof with

reasonable certainty where establishing profits from future business operations of a new facility

for a 20-year period required a "multitude of assumptions"). Here, Shoreline's lost profits

constituted general damages and, in any case, were those that were actually incurred by

Shoreline in 2018. *See Am. Fed. Group, Ltd. v. Rothenberg*, 136 F.3d 897, 913 (2d Cir. 1998)

(lost profits may be established through "direct evidence of earnings specifically diverted").

## C. Shoreline's calculation of lost profits is based on evidence establishing loss causation.

Defendants throw in a series of meritless arguments that attempt to cast doubt on

Shoreline's damages calculations. For example, they assert "myriad other reasons Shoreline's

profits could have dipped in 2018 unrelated to Defendants' alleged misdeeds." (Mot. at 14.)

What Defendants choose to ignore is that this Court has already rejected those arguments. In

10

denying dismissal of the tortious interference claim, Magistrate Judge Steven I. Locke rejected Defendants' causation arguments that were based on nothing but speculation and contradicted by the evidence. As this Court stated in its summary judgment order, "Shoreline has offered sufficient evidence for a reasonable jury to find that [at least 160] customers switched from Shoreline to Blade due to alleged interference by SAFE and Herbst." (Mem. & Order (May 30, 2025) ("SJ Order") (Ex. X) at 35.)

This Court found persuasive undisputed evidence that longtime Shoreline passengers booked with Blade based on Defendants' misrepresentations, misuse of their access to Shoreline's customer list, and targeted efforts to poach Shoreline customers for Blade. (*See* Pl.'s 56.1 (Ex. V) ¶¶ 25-26, 29, 32-35, 39-41.) Defendants (1) deliberately stalled and lied to Shoreline customers who sought to book Shoreline flights until SAFE's agreement with Blade was finalized; (2) misled Shoreline customers and improperly encouraged them to seek a refund from Shoreline; (3) abused their access to Shoreline's customer list to harm Shoreline's business; and (4) targeted Shoreline customers on behalf of Blade by exploiting inside knowledge of Shoreline's customers and business practices. (*Id.* ¶¶ 25-26, 29-41.)

The record establishes that Defendants' stalling and deceptive tactics worked, and Shoreline identified 160 longtime Shoreline customers who ended up flying with Blade instead in 2018. (*Id.* ¶¶ 40-41; BLADE 0000377-89 (Ex. 5) (May 2018 e-mails between Defendant Cynthia Herbst ("Herbst") and Shoreline customer seeking to book a Shoreline flight in which Herbst strings the customer along until SAFE's deal with Blade is finalized); *compare* SAFE00000434-70 (Ex. 8) *with* SAI003162-3233 (Ex. 11) *and* SAI007775-76 (Ex. 12); List of 160 Customers (Ex. 13).) Under these circumstances, no rational factfinder could conclude that

11

Shoreline customers left Shoreline in 2018 for any reason other than the fact that Shoreline's exclusive booking agent actively misled and poached them for a competitor.

Defendants attempt to cast Shoreline's damages as speculative by raising their own speculative and unfounded reasons why Shoreline's longtime passengers suddenly switched to Blade in 2018. The Second Circuit rejected a similar attempt in *Process*. There, the defendant (the "processor") provided back-end processing services for credit and debit card transactions. 839 F.3d at 130. Under an agreement, the plaintiff, an independent sales organization (the "ISO") sold the defendant's services to merchants. After the processor terminated the agreement, the ISO successfully persuaded some merchants to change processors. *Id.* at 131. The ISO sued the processor for breach of contract, and the processor counterclaimed based on ISO's solicitation of merchants. *Id.* at 131-32. The district court granted summary judgment for the processor on its counterclaim and held a bench trial on the issue of damages. *Id.* at 132, 141. The district court awarded damages to the processor based on the rate of attrition of merchant accounts after the ISO's solicitation, rejecting the ISO's arguments that the increased attrition rate could be attributable to something other than solicitation. *Id.* at 132. The court did so even while acknowledging that "it was unlikely that the entire increase in attrition was, as a practical matter, due to [the ISO's] actions," reasoning that doubts as to the amount of damages are resolved against the breaching party and the other factors suggested by the ISO that could have resulted in increased attrition were speculative. *Id.* at 142-43. The Second Circuit affirmed the damages calculation attributing 100% of the increased attrition to the ISO. *Id.* at 143. The same is true here. Like the ISO in *Process*, Defendants attempt to cast the blame for Shoreline's damages on "myriad other reasons" based on nothing but speculation and argue that Defendants should not be assigned "all blame" for Shoreline's "profit slump relative to the previous year." (*See* Mot. at

12

14-15.) But because Shoreline adequately established the fact of damages, any uncertainty as to the amount of damages should be resolved against Defendants.

This Court has already rejected Defendants' attempt to argue that their tortious conduct had nothing to do with the fact that over 160 customers, who flew with Shoreline year after year prior to 2018, abruptly changed course and flew with Blade instead as soon as Defendants joined forces with Blade and actively sought to poach those customers. (*See* Pl.'s 56.1 ¶¶ 40-41.) Each of the Blade features proffered by Defendants as alternative reasons why a customer may have gone with Blade existed prior to Defendants' tortious conduct, but it was not until 2018, after Defendants' poaching efforts, that Shoreline lost those customers. Because this Court found Defendants' proffered alternative causes unpersuasive, and because causation in this case is within the common knowledge and experience of laypersons, Defendants' argument that Shoreline should have retained an expert to rule out such alternatives is meritless. *See Fabozzi v. Lexington Ins. Co.*, 23 F. Supp. 3d 120, 128-31 (E.D.N.Y. 2014) (plaintiffs not required to prove causation or establish damages with expert testimony).

But, even if, for the sake of argument, profits from sales of tickets constituted consequential damages, Shoreline has established those damages with reasonable certainty. Contrary to Defendants' arguments that Shoreline's calculation was based on speculative assumptions, Shoreline's losses were those that were actually incurred by Shoreline in 2018. *See Am. Fed.*, 136 F.3d at 913 (lost profits may be established through "direct evidence of earnings specifically diverted"). The entirety of Defendants' arguments about projection of lost profits into the future simply have no relevance here. (*See* Mot. at 16.) But, even as to the calculation of future lost profits, New York law does not require absolute certainty. *See Ashland Mgmt. Inc. v. Janien*, 82 N.Y.2d 395, 403 (1993) ("The law does not require that [the loss of future profits] be

13

determined with mathematical precision. It requires only that damages be capable of measurement based upon known reliable factors without undue speculation …."). "When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be any good reason for refusing, on account of such uncertainty, any damages whatever for the breach." *See Lexington Prods. Ltd. v. B.D. Commc'ns, Inc.*, 677 F.2d 251, 253 (2d Cir. 1982). Although Defendants try to split hairs by seeking to preclude lost profits because they are sought under different legal theories, awarding damages based on the applicable facts is a job for the jury, and it is not the Court's role to preclude such damages because the amount attributable to each type of misconduct is uncertain prior to trial. *See Tractebel*, 487 F.3d at 110 ("The burden of uncertainty as to the amount of damage is upon the wrongdoer.").[8]

**D. This Court's reasonable notice finding does not foreclose Shoreline's lost profits.**

Defendants' argument that this Court's finding that the Contract did not include a requirement to provide reasonable notice of termination precludes lost profits relies entirely on an incorrect premise – that "most of Shoreline's lost profits damages are based on the end" of the booking relationship. (*See* Mot. at 11.) But that is simply not true. The hundreds of longtime Shoreline customers who booked with Blade instead in 2018 was a direct result of Defendants' failure to book seats, stalling of customers, and diverting them to Blade by improperly using their access to Shoreline's customer list and taking advantage of customer confusion. Contrary to Defendants' attempt to minimize their breaches of contract, the mailer that SAFE failed to send contained a "guaranteed reservation form and schedule for 2018" that passengers used to book

---

[8] For the same reason, Defendants' suggestion that Shoreline was obligated to "isolate" its damages attributable to Defendants' actions is meritless.

the seats on Shoreline flights. (*See* SAFE00003475 (Ex. 6).) Defendants do not – and cannot – dispute that they stalled customers seeking to book Shoreline flights until they could book them on Blade flights. (Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts in Supp. of Pl.'s Mot. for Summ. J. (Ex. 7) ¶ 26.) The 160 passengers who flew with Blade instead in 2018 are a direct result of Defendants' stalling and failure to book flights in March, April, and May, when a majority of Shoreline customers typically booked year after year. (Pl.'s 56.1 (Ex. V) ¶ 12.)

Moreover, Defendants' attempt to characterize SAFE's termination of the Contract as an "intervening cause" is meritless. "To break the legal chain, the intervening act must have been of such an extraordinary nature or so attenuated from the defendants' conduct that responsibility for the injury should not reasonably be attributed to them." *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 2016 WL 3098842, at *6 (S.D.N.Y. June 1, 2016). Defendants cannot claim that Defendants' termination of the Contract once their deal with Blade was finalized was unrelated to their efforts to divert Shoreline customers to Blade, which resulted in Shoreline's losses. The termination was but one link in the chain of causation from Defendants' breaches to Shoreline's damages and cannot be fairly characterized as an intervening cause for which Defendants are not responsible.

Finally, Defendants improperly attempt to use the motion *in limine* vehicle to have this Court decide an issue that is reserved for the jury. *See id.* at *14 ("causation is generally a jury question"). This Court has already found that Shoreline has "offered sufficient evidence for a reasonable jury to find" loss causation. Defendants cannot seek to wriggle out of that ruling through a motion *in limine*.

**E. Should this Court preclude lost profits, Shoreline should be permitted to recover its lost revenues.**

15

If this Court nevertheless precludes lost profits, Shoreline should still be entitled to seek $839,848.51 in lost revenue attributable to seaplane commuter flights in 2018. *See Thieriot v. Jaspan Schlesinger Hoffman, LLP*, 2016 WL 6088302, at *5 (E.D.N.Y. Oct. 18, 2016) (permitting plaintiffs to proceed to trial with two separate and potentially inconsistent theories of recovery). Contrary to Defendants' argument, the Second Circuit has indicated that lost revenues may be recovered under both breach of contract and breach of fiduciary duty claims. *See MVP Health Plan, Inc. v. OptumInsight, Inc.*, 765 Fed. Appx. 615, 618 (2d Cir. 2019) (discussing factors for recovering lost revenues); *see also Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 253 (S.D.N.Y. 2013) (both lost revenue and lost profits acceptable forms of recovery under New York law).

The Motion suggests that Shoreline should have amended its complaint to seek lost revenue for its breach of fiduciary duty claim because it did not use the word "revenue" in the allegations under Count IV. (*See* Mot at 11 n.5.) But Shoreline's breach of fiduciary duty claim clearly seeks damages from Defendants' diversion of Shoreline customers to Shoreline's competitors, among other things. (*See* Ex. M ¶ 160.) Defendants had ample notice that Shoreline's breach of fiduciary duty damages included those flowing from Shoreline's loss of revenue as a direct result of Defendants' actions, and that is all that is required. *See Quaker State Oil Ref. Corp. v. Kooltone, Inc.*, 649 F.2d 94, 95-96 (2d Cir. 1981) (finding that defendants "had sufficient notice of their vulnerability to an award of punitive damages" even though "plaintiff's complaint did not specifically mention punitive damages").

**III.    This Court should deny the motion to preclude disgorgement because information related to the remedy was entirely in Defendants' possession and Defendants admitted that Herbst received compensation from Blade.**

16

Shoreline's intent to seek disgorgement was disclosed during discovery and thus disgorgement should not be precluded. Shoreline disclosed in its initial disclosures that it would be seeking "[d]isgorgement from Herbst and SAFE of all monies paid to them during the period of disloyalty for violation of the faithless servant doctrine in an amount to be determined at trial." (Ex. A ¶ 3(e).) The initial disclosure requirement of a computation of damages has to do with injuries suffered by the plaintiff, which makes sense because the plaintiff has that information to disclose. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "a computation of each category of damages claimed by the disclosing party" and "materials bearing on the nature and extent of injuries suffered"). Evidence of disgorgement of the defendant's ill-gotten gains from a third party, on the other hand, is squarely in the defendant's hands. A defendant thus suffers no prejudice from a lack of computation of such disgorgement from the plaintiff. *See Edelman*, 2023 WL 4305446, at *5. In *Edelman*, the defendants sought to preclude the plaintiff from offering evidence regarding, among other things, a differential in pay between herself and that of her male counterparts. *Id.* at *4. The court there declined to do so, holding that the plaintiff had provided a good reason for her failure to provide more detail with respect to the wage differential because documents concerning them were in Defendants' possession. *Id.* at *4-5. In addition, the court reasoned that the defendants suffered no prejudice with respect to plaintiff's allegedly late disclosures because "if Defendants wanted further information about Plaintiff's calculation of those damages, it certainly had the means of obtaining it." *Id.* at *5. It strains credulity to suggest that Shoreline was somehow concealing Defendants' ill-gotten gains from Defendants and that they were surprised and prejudiced by Shoreline's inclusion of the $20,000 they received from Blade under the Consulting Agreement. Both the initial disclosures and Defendants' interrogatories sought information concerning Shoreline's damages, not other forms of relief

17

such as the equitable remedy of disgorgement. (*See* Ex. F at 16.) Thus, Shoreline was under no duty to provide a computation of Defendants' gains from their misconduct or otherwise supplement their disclosures as to disgorgement.[9]

Thus, while Defendants imply a nefarious motive by claiming that "disgorgement disappeared altogether as a category of damages" in Shoreline's interrogatory responses (*see* Mot. at 3), Defendants neglect to mention that their interrogatories sought information concerning Shoreline's damages. Specifically, Interrogatory No. 13 stated, "Identify in detail each and every specific damage to Shoreline Aviation to reach the alleged total of $10,000,000.00 in damages to Shoreline Aviation." (*See* Ex. E at 15-16; Ex. F at 16.) Because disgorgement is not a category of a plaintiff's damages but the equitable recovery of unjust gains from a defendant, Shoreline properly responded to this interrogatory with information concerning its injuries.[10]

Defendants would have this Court believe that disgorgement is not appropriate for private agency relationships and that the faithless servant doctrine applies exclusively to employees, but that is not the law. (*See* Mot. at 17-18.) *See CARCO*, 718 F.3d at 84 ("the faithless servant

---

[9] *Deque Systems Inc. v. BrowserStack, Inc.*, cited by Defendants, is distinguishable because, there, plaintiff sought to disgorge defendants' revenues based on a complex theory that could yield an amount "anywhere from $282,999 to over $30 million, relying not only on the accused product but on other unspecified products" and "a hypothetical number." *See* 2005 WL 1165865, at *6 (E.D. Va. Jan. 13, 2025). The Court based its decision to preclude based on the fact that defendant "could not merely review its own financial information to determine the damages" sought. *Id.* Here, by contrast, Shoreline seeks disgorgement of money received by Defendants under their agreements with Blade, which set amounts are set forth in those agreements and contained in Defendants' files. (*See* Ex. Z at BLADE 0008163, BLADE 0008169; SAFE00000434-70 (Ex. 8) at SAFE00000470.)

[10] The $65,522 in unearned commissions was included in Shoreline's interrogatory response because they were paid for services that were never rendered to Shoreline and therefore constituted damages to Shoreline. (*See* Pl.'s 56.1 (Ex. V) ¶¶ 20-22.) That those unearned commissions also constitute money that must be disgorged by Defendants does not somehow make improper their inclusion in a description of Shoreline's damages.

18

doctrine arises out of an agency or employment relationship"); *Samba Enters., LLC v. iMesh, Inc.*, 2009 WL 705537, at *9 (S.D.N.Y.. Mar. 19, 2009), *aff'd sub nom. Samba Enters., Ltd. v. iMesh, Inc.*, 390 Fed. Appx. 55 (2d Cir. 2010) (agent who breaches fiduciary duty not entitled to receive any compensation and must disgorge all wrongful benefits obtained by its disloyalty).[11] In fact, this Court agreed that the doctrine extends to agents who are not employees in denying summary judgment dismissal of Shoreline's faithless servant claim. (*See* SJ Order (Ex. X) at 25, 27; Judge Locke's Report & Recommendation ("R&R") (Ex. Y) at 36.) Defendants mischaracterize *F.T.C. v. Bronson Partners, LLC* by way of selective quotation. *See* 654 F.3d 359, 372 (2d Cir. 2011). That case did not limit the remedy of disgorgement to government entities. In fact, the sentence just prior to the one quoted acknowledges that private litigants may seek disgorgement. *See id.* ("Yet disgorgement – at least when sought by public agencies such as the SEC and the FTC – has several features that make it distinct from the remedies available to private litigants seeking to press common law claims.").[12]

Defendants next argue that because Shoreline did not attempt to trace the ill-gotten gains from SAFE to Herbst, it cannot seek them from Herbst. They again mischaracterize *Bronson* to support their argument that tracing is required when in fact the court held the opposite. The court there held that tracing was not required for disgorgement, distinguishing that remedy from

---

[11] In another sleight of hand, Defendants cite to *Wang v. XBB, Inc.* to point out that the court there called the faithless servant doctrine the "faithless employee doctrine." (*See* Mot. at 18.) But the court's word choice was not to suggest that the doctrine is reserved for employees but because the court found the term "servant" antiquated. *See* 2022 WL 912592, at *6 n.6 (E.D.N.Y. Mar. 29, 2022). Indeed, the *Wang* court explicitly stated that the doctrine applies to anyone "who owes a duty of fidelity to a principal." *Id.* at *6.

[12] *Access Point Medical, LLC v. Mandell*, cited by Defendants, which involved a plaintiff seeking to avoid the statute of limitations for a breach of fiduciary duty claim by calling it an equitable claim for disgorgement, has no relevance whatsoever to the facts of this case. *See* 106 A.D.3d 40, 43-44 (1st Dep't 2013).

19

constructive trust. *See id.* at 373-74. More importantly, Defendants themselves stated in their

56.1 statement that "Ms. Herbst also agreed to serve as a consultant to Blade for $5,000 a

month." (Defs.' Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 in Supp. of

their Mot. for Summ. J. (Ex. 10) ¶ 91; *see* R&R (Ex. Y) at 12.) Herbst is a party to the Asset

Purchase Agreement with Blade and explicitly acknowledged that she and SAFE were "each

receiving significant consideration in connection with the consummation of the transactions."

(*See* Ex. Z at BLADE 0008162, BLADE 0008165 § 5.1(d), BLADE 0008167; *see also* R&R at

34-35 ("because the parties agree that Herbst was a party to the Blade asset purchase agreement,

she may be held individually liable for her participation in such a breach"); *id.* at 35 ("The

parties agree that Blade paid Herbst and SAFE $175,000 for the customer list it purchased from

SAFE …."); *id.* at 41-42 ("The parties agree that Herbst and SAFE profited from their asset

purchase agreement with Blade ….").) Thus, at the very least, whether SAFE or Herbst received

the $20,000 consulting fee is a disputed issue of fact, and Defendants' own admissions sound a

death knell to their motion to preclude disgorgement against Herbst.[13] [14] [15]

---

[13] It is worth noting that, although Herbst takes great pains to distinguish herself from her company in this action, in her 2018 action against Shoreline and others (the "2018 action"), she stated in her verified complaint that Shoreline "operated their business exclusively with Plaintiff, CYNTHIA HERBST, from May 2017 to May 2018." (Verified Compl. ¶ 54, *Herbst et al. v. Tuma et al.*, Index No. 616650/2018 (Sup. Ct., Suffolk County 2018) ("*Herbst v. Tuma* compl.") (Ex. 9).)

[14] Puzzlingly, Defendants claim that "Shoreline's breach of loyalty theory … does not involve any specific transactions." (*See* Mot. at 18.) Contrary to their argument, this is indeed a "straightforward" case where an agent who owed a duty to her principal sold a customer list to a competitor and received consideration from a consulting agreement, an asset purchase agreement, and commissions from sales to those on that stolen customer list.

[15] Finally, it is disingenuous of Defendants to argue that Shoreline should be precluded from seeking disgorgement and attorney's fees because it has "never provided an explanation" as to its "refusal to provide appropriate Rule 26 disclosures relating to disgorgement and attorney's fees." (*See* Mot. at 5.) This Motion is the first time Defendants have raised this argument. As such, Shoreline never had occasion to provide an explanation.

**IV.    This Court should deny the motion to preclude Shoreline's attorney's fees because disclosure concerning them is irrelevant unless Shoreline prevails.**

This Court should deny the motion to preclude Shoreline's attorney's fees because Shoreline is not required to provide a computation of those fees unless and until Shoreline prevails in this action. *See Antolini v. McCloskey*, 335 F.R.D. 361, 363 (S.D.N.Y. 2020) (computation of attorney's fees not a required disclosure under Fed. R. Civ. P. 26(a)); *Bank v. Pentagroup Fin., LLC*, 2009 WL 1606420, at *5 n.6 (E.D.N.Y. June 9, 2009) (denying as premature motion for discovery related to plaintiff's attorney's fee claim); *DeFelice v. Am. Int'l Life Assurance Co. of New York*, 1995 WL 753892, at *1 (S.D.N.Y. Dec. 19, 1995) ("Unless the plaintiff prevails, the issue of attorney's fees will not be relevant.").

The cases cited by Defendants are either inapposite or support the denial of preclusion. For example, in *Ritchie*, the discovery related to attorney's fees had to do with plaintiffs seeking costs and fees related to their bankruptcy proceedings, which had ended more than two years prior. *See* 280 F.R.D. at 154. Here, in contrast, Shoreline is seeking attorney's fees under 18 U.S.C. § 1836(b)(3)(D) incurred in this very action, which are awarded to the prevailing party. *Ritchie* is simply irrelevant. And *Timbie v. Eli Lilly and Company* actually supports the denial of preclusion. *See* 2009 WL 10676980, at *3 (D. Conn. Oct. 16, 2009). That case involved a motion to compel the production of documents concerning plaintiff's legal fees agreement. *Id.* at *2. The court there acknowledged the lack of Second Circuit precedent and disagreement among district courts concerning whether disclosure of attorney fee information during discovery is premature. *Id.* at *3. The court then declined to impose sanctions because plaintiff was "substantially justified in arguing that attorney fee arrangements are not immediately discoverable." *Id.* Thus, even if this Court were to hold that Shoreline should have provided information as to attorney's fees, Shoreline was substantially justified in believing that such disclosure is premature at this

21

stage given the split in authority on this issue. This Court should deny the motion to preclude Shoreline's recovery of attorney's fees.[16]

**V.     This Court should deny the motion to preclude John Kelly's statements because they are not hearsay and highly probative.**

This Court should deny the motion to preclude evidence of statements by John Kelly ("Kelly"), the now deceased former president of Shoreline, for at least two independent reasons. First, Shoreline intends to offer many of his statements not for the truth of the matter asserted, causing them to fall under a hearsay exception. Where a statement is offered not for the truth of the matter asserted but to prove that it was made and the recipient failed to object, the statement does not constitute hearsay. *See* Fed. R. Evid. 801(c)(2); *U.S. v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("a statement offered to show its effect on the listener is not hearsay"). For example, when Kelly referred to the Contract as "our longstanding exclusive agreement" in an email to Herbst on April 23, 2018, she did not object to this characterization. (SAFE00000124-25 (Ex. V).) *See Atla-Medine v. Crompton Corp.*, 2001 WL 1382592, at *5 (S.D.N.Y. Nov. 7, 2001) (party bound by date limitation set forth in letter memorializing oral agreement where party failed to object). Defendants have no basis for seeking a blanket preclusion of each of Kelly's statements without regard to whether they constitute hearsay.

Second, even if some of Kelly's statements are offered for the truth of their assertions, they would fall under the residual hearsay exception based on the fact that they are (1) supported by sufficient guarantees of trustworthiness and evidence corroborating the statements and (2) more probative on the issue than any other evidence that can be obtained through reasonable

---

[16] Although Defendants cite to *Deque* for its argument that Shoreline's attorney's fees claim should be precluded, that case had nothing to do with any failure by plaintiff to compute its attorney's fees but rather plaintiff's failure to specify the amount or method for computing its lost profits or revenue disgorgement. *See* 2005 WL 1165865, at *4-7.

22

efforts. *See* Fed. R. Evid. 807(a). Contrary to Defendants' suggestion that these documents were created "in anticipation of litigation" and therefore cannot be trusted, Kelly had every reason to accurately reflect the Contract's terms to Herbst given that he was writing to the one person who was present at the time of the oral agreement and could easily have contradicted his assertion but did not. And his assertion is corroborated by other documents and Herbst's own contemporaneous statements and later admissions. Finally, given that Kelly is now deceased, his summary of the Contract's terms in 2018 are more probative of what was discussed between him and Herbst than any other evidence that can be obtained through reasonable efforts. *See U.S. v. Carneglia*, 256 F.R.D. 384, 393 (E.D.N.Y. 2009) (statements by deceased witness admissible under Fed. R. Evid. 807 because they were consistent with other documents, and witness was the only known eyewitness to the crime but was unavailable because he was deceased).[17]

In seeking to preclude Kelly's statements, Defendants are attempting to block any reference to the crucial "he said" half of the inherently "he-said/she-said" nature of evidence pertaining to oral contracts. *See Ream v. Hill*, 2018 WL 3579846, at *3 (S.D.N.Y. July 24, 2018) (terms of parties' oral agreement "comes down to a he-said/he-said dispute"). Because Kelly and Herbst were the only individuals present when the parties discussed the terms of the oral contract, and Kelly is now deceased, his statements concerning those terms are absolutely necessary evidence.

Given the high probative value of Kelly's statements in shedding light on the contractual terms agreed upon between Kelly and Herbst, they are not "substantially outweighed" by a danger of unfair prejudice, as required for exclusion of relevant evidence under Fed. R. Evid.

---

[17] *Farrell v. Air & Liquid Systems, Corporation*, cited by Defendants, is inapposite because that case had to do with the dying declaration exception to the hearsay rule under Fed. R. Civ. P. 804(b)(2). *See* 2013 WL 5549461, at *1 n.1 (E.D. Pa. Aug. 12, 2013).

23

403. *See Dupree*, 706 F.3d at 138 ("A court should consider … the availability of other means of proof in making a Rule 403 determination."). Defendants' only argument of prejudice is that Collingwood, as Kelly's widow, would be the beneficiary of any judgment for Shoreline and that jurors might be "moved by their sympathy." (*See* Mot. at 21.) That cannot be the basis for precluding Kelly's statements for at least two reasons. First, the prejudice must come from the evidence itself, not the circumstances of who stands to benefit from its inclusion. Second, by seeking to erase the legal distinction between Shoreline, a corporate entity, and Collingwood, its officer, Defendants are seeking to do the same thing that they accuse Shoreline of doing with regard to SAFE and Herbst. This Court should decline to preclude Kelly's statements.

**VI.    This Court should deny the motion to preclude evidence of the 2018 action because Defendants' sworn statements in that suit constitute party admissions relevant to Shoreline's claims.**

Although Shoreline is no longer pursuing its damages based on lost tax savings from the filing of the 2018 action, the complaint in that action is still relevant to Shoreline's claims and should not be precluded. Instead of merely seeking to preclude damages resulting from the filing of their complaint, Defendants go one step further and request the prelusion of any evidence of the "existence" of the suit entirely. Their arguments that Shoreline should not be permitted to pursue such damages do not match the breadth of their preclusion request. Because the 2018 complaint contains crucial party admissions, Shoreline should be permitted to introduce evidence of the complaint itself even if it no longer seeks damages flowing from the filing of it. *See Edelman*, 2023 WL 4305446, at *1 ("The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds.").

In the Defendants' complaint, they acknowledge the existence of the exclusive booking agreement they had with Shoreline. (*Herbst v. Tuma* compl. ¶¶ 14-15 (Ex. 9) (until May 2018,

[SAFE] utilized Shoreline as "its operator of flight services"); *id.* ¶ 54 (Shoreline "operated their business exclusively with" Herbst from May 2017 to May 2018.).) These statements are admissible as non-hearsay statements of an opposing party under Fed. R. Evid. 801(d)(2). Defendants' only argument for preclusion of all evidence regarding the 2018 action is a conclusory statement that it will "prejudice the jury against Defendants" without further explanation. (*See* Mot. at 22.) The high probative value of the admissions contained in the *Herbst v. Tuma* complaint cannot be substantially outweighed by any prejudice to Defendants even if they had set forth what prejudice could result, which they did not.

## CONCLUSION

This Court should deny the Motion because resolving issues concerning damages prior to trial is premature. But even if this Court were to consider the merits of the Motion, each of its arguments fails. The Court should deny the motion to preclude lost profits because Shoreline made knowns its claim for lost profits during discovery, was substantially justified in believing that it did not need to supplement its disclosures, and calculated its lost profits based on actual lost profits in 2018 directly tied to Defendants' misconduct. The Court should also deny the motion to preclude disgorgement because Shoreline was not obligated to disclose information held solely by Defendants and Defendants admitted that Herbst received compensation subject to disgorgement. The Court should deny the motion to preclude Kelly's statements because they are not hearsay and highly probative as to the Contract's terms. Finally, the Court should deny the motion to preclude evidence concerning the 2018 action because the complaint in that action contain highly probative admissions by Defendants as to the Contract's exclusivity.

Dated:  Sag Harbor, New York
      July 30, 2025

25

Respectfully submitted,

KRIEGSMAN PC

By: */s/  Alex Kriegsman*
    Alex Kriegsman

    279 Main Street
    Sag Harbor, NY 11963
    (631) 899-4826
    alex@kriegsmanpc.com

    *Attorneys for Plaintiff*

26